**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOUHY & TOUHY, Ltd.,<br>a professional corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ERIK H. LANGELAND and<br>ERIK H. LANGELAND, P.C.<br>a professional corporation,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

```
FILED: MAY 21, 2008
08CV2950      TC
JUDGE HOLDERMAN
MAGISTRATE JUDGE ASHMAN
```

　　　No.

## COMPLAINT

### Jurisdiction

1.　　　This court has jurisdiction under 28 USC §1332. Plaintiff is a corporation incorporated under the laws of the State of Illinois having its principal place of business in the State of Illinois.  Defendant Erik H. Langeland is a citizen of the State of New York and is a corporation incorporated under the laws of the State of New York having its principal place of business in the State of New York.   The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

### Venue

2.　　　Venue is proper in the Northern District of Illinois, as a substantial part of the relevant acts of fiduciary breach giving rise to these claims, as well as the damage sustained by the plaintiff, occurred in the Northern District of Illinois; a substantial part of the property and contracts involved are found in the Northern District of Illinois; and the execution and performance of relevant agreements were to occur in this judicial district.

1

**The Parties**

3.      That at all times mentioned herein, the plaintiff, TOUHY & TOUHY, LTD. (The Touhy firm or Touhy & Touhy, Ltd.) was a professional corporation with its principal place of business in Cook County, Illinois.  Its principals, Timothy J. Touhy and Daniel K. Touhy are licensed attorneys practicing law in the State of Illinois.

4.      That at all times mentioned herein, the defendant ERIK H. LANGELAND was a citizen of the State of New York and an attorney licensed in the state of New York. That at all times mentioned herein, the defendant ERIK H. LANGELAND, P.C., was a professional corporation incorporated in the state of New York with its principal place of business in New York. ("Langeland" refers to ERIK H. LANGELAND and ERIK H. LANGELAND, P.C.).

5.      Plaintiff does not allege that the combination of two or more persons in this case occurred between Erik H. Langeland, individually and Erik H. Langeland, P.C.  This action is brought against Langeland for tortious conduct performed by Langeland against the plaintiff for conversion, interference with prospective economic advantage, aiding and abetting a breach of fiduciary duty, Langeland's own fiduciary breach and fraud.

6.      Stephan, Zouras and StephanZouras, LLP, named in this complaint, are not made parties to this action because they cannot be made parties without depriving this court of jurisdiction. The absence of these persons will not prevent the court from providing complete relief nor impair the interests of any named or unnamed party.

**Touhy Firm Employees**

7.      On and before May 21, 2007 RYAN STEPHAN (Stephan) and JAMES ZOURAS (Zouras) were employed as attorneys for the plaintiff, Touhy & Touhy, Ltd.  Stephan had been

2

employed by the plaintiff for not less than four years and Zouras had been employed for not less than 10 years.

**Stephan and Zouras' Scheme**

8.    The Touhy firm is an Illinois Professional Corporation engaged in the practice of law in Illinois.  One of the Touhy firm's specialties is representing plaintiffs in class action and collective action matters.  The shareholders of the Touhy firm and Touhy & Touhy, Ltd. are Timothy J. Touhy and Daniel K. Touhy.  The firm's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois  60601.

9.    Stephan and Zouras are licensed attorneys, who were employed full-time up to May 21, 2007 by the Touhy firm to practice law on behalf of the Touhy firm, for which they received salaries from the Firm.  Stephan and Zouras are both residents of Cook County and citizens of Illinois.

10.    STEPHANZOURAS, LLP is an Illinois limited liability partnership formed on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave., Chicago and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago. The principals of STEPHANZOURAS, LLP. are Ryan Stephan and James Zouras.

11.    While working for the Touhy firm, Stephan and Zouras hatched a plan to stay employed with the Touhy firm while they set up their new law firm, using the Touhy firm's resources and confidential data to solicit the Touhy firm's current and prospective clients, all for the benefit of their new law firm, STEPHANZOURAS., LLP.

12.    Between November 2006 through April 2007 Langeland was aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd. and that any referral of

3

clients or cases by them were made on behalf of their principal, the plaintiff, Touhy & Touhy, Ltd.

13.    While employed by the Touhy firm, Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of the Touhy firm but without the Touhy firm principals' knowledge or authorization.   Stephan and Zouras committed one or more of the wrongful acts causing injury to the plaintiff as set forth in the Verified Third Amended Complaint and Verified Third Amended Count III, attached as Exhibits 1 and 2.  Stephan and Zouras enlisted Langeland, who assisted them in their scheme.

**Langeland's participation concerning Steven Yang**

14.    On or about November 3, 2006 Steven Yang submitted an inquiry to the Touhy firm's website, TouhyLawcom. Stephan retrieved this email and responded to Yang 's inquiry using the Touhy firm's email and phones on November 6, 2006.

15.    Stephan used the Touhy firm's email and phones to call Langeland, send Langeland a Touhy firm questionnaire and a client agreement.  In this email to  Langeland Stephan stated, "Please find attached draft sign up forms and questionnaires for Steven Yang." Both Langeland and Stephan were aware that this prospective client contacted the Touhy firm through its website.

16.    Langeland and Stephan agreed to modify the Touhy firm questionnaire by changing the name of the firm on this questionnaire from"Touhy & Touhy, Ltd." to "Erik H. Langeland, P.C." and substituting Langeland's address for the Touhy firm's address.  Langeland then sent the Touhy firm questionnaire to this prospective client which document reflected the law firm as Langeland's firm rather than the Touhy firm.

17.    On December 13, 2006 Langeland filed an action on behalf of this prospective Touhy firm client, *Yang et al v. New York Mortgage Company, LLC.*, No. 1:06-cv-14429, which case was filed in the U.S. District Court in New York.

18.    Langeland, who had acted as co-counsel in other cases with the Touhy firm as set forth herein, knew that Stephan and Zouras were Touhy firm employees and, as such, had a fiduciary duty to the Touhy firm between 2004 and thereafter.  The prospective economic relationship with the Touhy firm was created between Yang and the plaintiff's fiduciary Stephan.

19.    Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Yang. Langeland, Stephan and Zouras were all aware that this was a Touhy firm prospective client.

20.    At no time between November 21, 2006 through May 21, 2007 did Langeland have the permission of the plaintiff principals to represent Yang or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals.

21.    In fact, Langeland communicated with Stephan and Zouras through Stephan and Zouras' personal Yahoo email addresses rather than Stephan and Zouras' Touhy firm email at rstephan@touhylawcom and jzouras@touhylawcom.

### Langeland's participation concerning Steven Ferko

22.    On or about November 21, 2006 there was a valid, written contingent fee agreement for legal services between plaintiff and its client Steven Ferko which constituted a prospective economic advantage to the plaintiff.

23.    The prospective economic relationship between Ferko and the plaintiff existed in Cook County, Illinois.

5

24.    Langeland agreed with Stephan and Zouras to sign an attorney-client agreement with the Touhy firm to represent Ferko, which agreement was dated February 9, 2007 and signed by Langeland on or about March 29, 2007.

25.    By signing this agreement, Langeland knew that the Touhy firm was still entitled to 66% of the attorneys' fees from this client's claim. As co-counsel with the Touhy firm, Langeland owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

26.    Langeland agreed with Stephan and Zouras to take the attorneys' fees due the Touhy firm from this case and give $40,716.16 to Stephan and Zouras from Langeland's client trust account.

27.    Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Ferko.

28.    Langeland, Stephan and Zouras were all aware that this client was represented by the Touhy firm and that the attorneys' fees were Touhy firm property.

29.    Between November 2006 through April 2007 Langeland was aware that any attorneys' fees generated by the referral of cases from Stephan and Zouras were the property of the plaintiff, Touhy & Touhy, Ltd.  Langeland was aware that any attorneys' fees recovered as a result of the representation of the Touhy firm client Steve Ferko were the property of the property of the plaintiff, Touhy & Touhy, Ltd..

30.    Between November 2006 and April 2007 Langeland, Stephan and Zouras agreed among themselves to take monies from the Ferko settlement proceeds and conceal this fact from the Touhy firm.

31.    Langeland agreed with Stephan and Zouras to negotiate a settlement in Steve Ferko's

6

case and withhold this information from the Touhy firm.  Langeland did not communicate with the Touhy firm client Ferko directly, but communicated with Ferko through Stephan.  Langeland knew Stephan was a Touhy firm employee and knew Ferko was a Touhy firm client.

32.    Langeland  took control, dominion and ownership of the personal property of the plaintiff, Touhy & Touhy, Ltd.. specifically, attorneys' fees from the Steve Ferko action in the approximate sum of $63,750.00, which Langeland deposited in his firm trust account at Green Point Bank.

33.    Langeland paid Touhy firm attorneys fees to Stephan and Zouras from the Ferko settlement, giving each of them a check in the amount of $20,358.08 drawn on Langeland's bank, Green Point Bank, which checks were dated April 23, 2007.  Langeland wrote these checks to Stephan and Zouras in their names and indicated on the face of these checks that these monies were payment from the Ferko case.

34.    Langeland did not have permission or authorization of the Touhy firm principals to exercise ownership or control over any attorneys' fees from the Steve Ferko action by depositing these funds in his account or paying these funds to Stephan and Zouras. Langeland knew that Stephan and Zouras were not authorized to take these Touhy firm monies at the time he issued the two checks to Stephan and Zouras in their own names.  Stephan and Zouras deposited these checks in bank accounts held in their names or the names of Stephan Zouras, LLP.

**Langeland's participation concerning Gerald Bouthner**

35.    On or about February 6, 2007 Gerald Bouthner submitted an inquiry to the Touhy firm's  website, TouhyLawcom. Stephan retrieved this inquiry and responded to Bouthner from the Touhy firm's email and phones on February 6, 2007.

7

36.    Stephan called Langeland in February 2007 and then used the Touhy firm email to send Langeland a Touhy firm questionnaire and client agreement.  Both Langeland and Stephan were aware that this prospective client contacted the Touhy firm through its website.

37.    Both Langeland and Stephan modified the Touhy firm class representative agreement by adding Langeland's name to the Touhy & Touhy, Ltd. agreement and having the modified agreement signed by Bouthner.

38.    Langeland, as co-counsel under this agreement, owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

39.    In or about March and April 2007 Langeland filed an appearance on behalf of this prospective Touhy firm client, *Bouthner et al v. Amtrust*, which case was filed in the U.S. District Court in Georgia.  Langeland, who had acted as co-counsel in other cases with the Touhy firm, knew that Stephan and Zouras had concealed their actions involving Bouthner from the Touhy firm principals in violation of their  fiduciary duty to the Touhy firm.

40.    Both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp.,*  07 CV 0566, in Federal Court in the Northern District of Georgia, in their own names, naming the Touhy firm as their principal.  The prospective economic relationship was created between Bouthner and the plaintiff's fiduciary, Stephan. In doing so, they bypassed Touhy firm procedures that require all cases in which the Touhy firm is representing a client to be entered promptly in the firm's computer system and a paper file and docket created.  Stephan and Zouras also failed to follow Touhy firm procedures that require attorneys opening new matters to prepare firm open file memos and to docket the case on the Firm's computer calendar system, so that the firm can monitor its cases.

8

41.     Langeland, Stephan and Zouras were all aware that this client had signed an agreement with the Touhy firm and that Stephan and Zouras were acting as fiduciaries of the Touhy firm at the time the agreement was signed and to May 21, 2007.

42.     At no time did Langeland have the permission of the Touhy firm principals to represent Bouthner or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals, that he had signed an agreement with Bouthner, signed a co-counsel agreement with counsel in Georgia or that he intended to act as co-counsel for the purpose of assisting Stephan and Zouras in committing fiduciary breaches.

**Langeland's participation concerning other fiduciary breaches**

43.     Not only was Langeland aware of Stephan and Zouras's fiduciary breaches in Ferko, Bouthner and Yang, but Langeland also assisted Stephan and Zouras in these wrongful acts by allowing them to convert Touhy firm funds in Ferko.  Langeland also aided and abetted Stephan and Zouras in their scheme in the cases of Jameel Shabazz v Morgan Funding, Marc Borowsky v. IBM, Colford/Wright v. H&R Block and other cases.  Langeland, Stephan and Zouras had reached an understanding among themselves to divide fees under an agreement in which each Langeland, Stephan and Zouras would receive one-third of the fees in the IBM overtime cases, Yang v. NYMC and Shabazz v Morgan Funding. Langeland furthered these fiduciary breaches by communicating with Stephan and Zouras by Yahoo email; modifying Touhy firm forms and contracts, concealing his representation in these cases, agreeing to file pro hac vice motions in IBM, Yang and Shabazz.

44.     During this time period, Langeland agreed with Stephan and Zouras, and, in fact,

9

provided substantial assistance to Stephan and Zouras in a number of cases, which cases or clients had been concealed from the Touhy firm by Langeland, Stephan and Zouras, including Borowsky v. IBM; Yang v. NYMC and Shabazz v Morgan Funding.

45.    The communication among Langeland, Stephan and Zouras disclosed that Langeland had acted in combination with Stephan or Zouras, or both, for the purpose of accomplishing an unlawful purpose, including conversion and fiduciary breach.  Langeland, Stephan and Zouras committed these acts of conversion, fiduciary breach and fraud in furtherance of their agreement to advance their common scheme.  For example, on February 15, 2007 Stephan used his personal Yahoo account to email Langeland concerning the Borowsky case, telling Langeland that "JZ and I will handle all the work on the Touhy end."  In this email, Stephan clarified that there was an agreement among Langeland, Stephan and Zouras, telling Langeland that "No matter what, I suggest that the triumvirate (EL; JZ; RS) captain the ship and keep the pressure on Lampe."

46.    Langeland was attempting to conceal the actions of Stephan and Zouras from the Touhy firm, as well as conceal Langeland's own actions.  On February 20, 2007 Stephan used his personal Yahoo account to email Langeland and state "Erik, please respond to the emails JZ and I sent you regarding the proposed agreements on WFI and our "global agreement." Langeland sent Stephan an email,  in reply, concerning the Borowsky matter, stating "As for the split, does it make sense to get an agreement simply between me and McInerney?"  It was Langeland's intention to conceal the participation of Stephan and Zouras by making an agreement with McInerney that did not disclose that Stephan and Zouras stood to profit from it.

47.    Between 2006 and May 2007 Langeland attempted to conceal his actions from the

Touhy firm principals and conceal the actions of Stephan and Zouras by sending emails to Stephan and Zouras at their Yahoo addresses. Langeland, who was involved in cases with the Touhy firm and Touhy firm principal Daniel K. Touhy as co-counsel, was aware that Stephan and Zouras used Touhylaw email addresses in these cases. Langeland was always aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd. and that any referral of clients or cases was made on behalf of their principal, the plaintiff, Touhy & Touhy, Ltd.

48.    Langeland intentionally avoided sending any communications to the Touhy firm principals or Stephan and Zouras at the Touhylaw email. Langeland had been communicating with Daniel K. Touhy, Stephan and Zouras using their Touhylaw email addresses since 2004. As of May 2007 Langeland had sent Stephan and Zouras hundreds of emails to them at their Touhylaw email addresses, only using their Yahoo addresses when Langeland was attempting to conceal matters from the Touhy firm principals.

49.    Langeland aided Stephan in January 2007 in Stephan's attempt to secretly subscribe to LegalMatch.com, without the consent or knowledge of the Touhy firm. Langeland agreed with Stephan to price LegalMatch subscriptions on the eastern seaboard as part of the global agreement. Stephan did appropriate a LegalMatch.com subscription which was opened in 2006 and paid for by the Touhy firm, which account was returned to the Touhy firm by order of the Circuit Court of Cook County in February 2008.

50.    Langeland played an active role in Stephan and Zouras's overall scheme and tortious activity, which scheme was in progress at least from 2006 through May 21, 2007 and thereafter. Langeland knowingly and substantially assisted Stephan and Zouras in committing the fiduciary

breaches set forth in Exhibits 1 and 2. Langeland's assistance came in the form of agreements and overt acts of concealment calculated to keep these matters secret from the Touhy firm principals. To avoid disclosure of Stephan, Zouras and Langeland's acts of conversion and breaches of fiduciary duty to the Touhy firm principals, Langeland acted as a conduit to make direct payment of Touhy firm monies to Stephan and Zouras.  Langeland attempted to conceal his actions from the Touhy firm principals after May 2007, refusing to provide the Touhy firm principals with emails, checks or disbursement statements involving Stephan and Zouras unless the Touhy firm released Langeland from liability.

51.     That the existence of the prospective economic relationships aforesaid imposed a duty on ERIK H. LANGELAND and ERIK H. LANGELAND, P.C and Stephan and Zouras not to interfere with the plaintiff's prospective economic advantage nor interfere with the relationship between the plaintiff and prospective clients or attempt to assist Stephan and Zouras for the purpose of competing with the plaintiff's law firm.

52.     By the acts and agreements described herein, Langeland combined with Stephan, or Zouras or both Stephan and Zouras, for the purpose of accomplishing, by concerted action, conversion, breach of fiduciary duty, interference with prospective economic advantage and fraud. Langeland, by his own acts, converted Touhy firm funds, breached his fiduciary duty to the Touhy firm, interfered with the firm's prospective economic advantage, and committed fraud.

53.     That as a direct and proximate result of one or more of the foregoing acts of Langeland, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

54.    The defendants' pecuniary gain was a significant motive for the solicitation of the plaintiff's client and the action aforesaid.

55.    That all of the acts of Langeland aforesaid were committed without lawful justification or consent of the plaintiff and were committed knowingly, intentionally and with the malicious intent to convert the property of the plaintiff to their own use, permanently deprive the plaintiff of its property, prospective clients and honest services of its employees Stephan and Zouras.

56.    Langeland, Stephan and Zouras made other agreements with each other involving WFI derivative cases, Equity One, and a case against IBM in California.  Langeland agreed to provide Stephan case materials from Yang v. NYMC, Shabazz v Morgan Funding, Marc Borowsky v. IBM and Ferko to further this scheme.  Langeland, Stephan and Zouras agreed to arrange a meeting together which was scheduled in February or March 2007 to accomplish their goal of concealing cases and clients from the Touhy firm and arranging to have the Touhy firm discharged by these clients and hire Langeland, Stephan and Zouras.

**Langeland's acts of Fraud and Misrepresentation while Fiduciary of Touhy Firm**

57.    Langeland had acted as co-counsel in other cases with the Touhy firm from 2004 to May 21, 2007 pursuant to written co-counsel agreements or as c-counsel in which the Touhy firm and Langeland  represented client jointly.  Among these cases were *Casale v. Provident Bank and Home 1-2-3 Corporation*, No. 04-2006; *Armstrong v. Weichert*, 05-cv-3120; *Billman v. National City Bank*, 1:06cv138, and *Chemi v. Champion Mortgage*, No. 2:05-cv-238.  The existence of these fiduciary relationships imposed a duty on Langeland to disclose any dealings with Stephan Zouras, or clients and disclose any misconduct by the Touhy firm's employees, division of attorneys' fees from Touhy firm cases, or Langeland own fiduciary breaches to the Touhy firm principals.

58.    The Touhy firm principals did not possess information sufficient to determine Langeland's participation in Touhy firm cases involving Ferko, Yang, and Bouthner. This lack of knowledge of the Touhy firm principals was due in large part to Langeland's assistance and own actions in concealing these cases and the actions of Stephan, Zouras and himself from the Touhy firm as described in paragraphs 30 through 34 and 43 through 50.

59.    Langeland actively concealed from the Touhy firm principals the communications he was having with Stephan and Zouras using their Yahoo addresses, his execution of a co-counsel agreement and appearance in Bouthner, his 'global agreement' with Stephan and Zouras, participation and conversion of the Ferko attorneys' fees as described in paragraphs 29 to 34.

60.    Langeland, by his words and acts, misled the Touhy firm principals by one or more of the following:

A.  In July and August 2007 told the Touhy firm principals that he had not participated in the Ferko deception, telling the Touhy firm principals that he believed the Ferko attorneys' fees were the property of the Touhy firm although Langeland had already disbursed money to Stephan and Zouras;

B.  In July and August 2007 told the Touhy firm principals that he had not reached any agreement with Stephan and Zouras concerning Borowsky, Yang and Shabazz when in fact he had;

C.  In July and August 2007 told the Touhy firm principals that he had not executed any agreement involving Gerald Bouthner, when, in fact, Langeland had executed an agreement on March 14, 2007, which agreement had already been executed by Stephan on March 8, 2007 as agent and fiduciary of the Touhy firm;

D.  Did not disclose to the Touhy firm principals that he had drafted or approved an agreement in which the attorneys' fees from Ferko would be paid directly to Langeland;

61.    At no time did he disclose to the Touhy firm principals that he had filed an action on behalf of Steven Yang or that he knew Yang was a Touhy firm website inquiry;

62.    Did not disclose to the Touhy firm principals that in December 2006 he had changed Touhy firm forms which Steven Yang completed and returned to Langeland for the purpose of Langeland representing Yang.

63.    In July and August 2007 withheld information from the Touhy firm principals that he discussed or agreed with Stephan and Zouras to send them the case numbers on Shabazz and received 'general letters' from Stephan to send out on these cases.

64.    In July and August 2007 withheld information from the Touhy firm principals that he had executed an agreement on March 29, 2007 in which Langeland was to receive 33% from Ferko;

65.    Did not disclose to the Touhy firm principals that in February 2007 he had prepared, or agreed to provide Stephan and Zouras with pro hac vice appearances which they would file in IBM, Yang and Shabazz;

66.    Did not disclose to the Touhy firm principals that in February 2007 he was scheduling a meeting with Stephan and Zouras in Miami to "hash out our ideas for the future."

67.    At no time did Langeland disclose to the Touhy firm principals that he was sending Stephan copies of pleadings in NYMC, IBM, Ferko, Alyssa York, Shabazz, and H&R Block to Stephan's Yahoo email;

68.    At no time, up to the present, did Langeland disclose to the Touhy firm principals

15

that he, Stephan and Zouras had reduced the amount of recoverable fees owed the Touhy firm by at least $15,000;

69.    At no time did Langeland disclose to the Touhy firm principals that he had received or sent a demand letter on Ferko which Stephan had sent to Langeland in December 2006 from Stephan's Yahoo email.

70.    It was Langeland's intent, by these acts of concealment, misrepresentations or omissions by silence by Langeland, a fiduciary, to prevent the Touhy firm principals from learning of the acts of fiduciary breach described herein.

71.    The Touhy firm and its principals relied on Langeland's statements and omission and therefore took no action to recoup the Ferko attorneys' fees or take action to prevent the continuing fiduciary breaches of Stephan, Zouras and Langeland.

72.    The Touhy firm and its principals relied on Langeland's acts of concealment, misrepresentations and omissions by silence in connection with the cases and conduct described in this complaint to their detriment, thereby sustaining damage based on such reliance as set forth herein.

73.    As a direct and proximate result of Langeland's misrepresentations, actions and omissions   the Touhy firm has incurred one or more of the following revenue, losses and consequential damages:

74.    Attorneys' fees recovered or generated by IBM, Ferko, Borowsky Alyssa York, Shabazz, Yang, Bouthner, H&R Block and other cases or prospective clients;

16

75.     Cost of computer technicians and consultants, forensic testing Touhy firm computers and installation of recovery programs for the purpose of identifying emails and data which were deleted or removed concerning Ferko, Yang, Borowsky, Shabazz, Bouthner and other cases concealed from the Touhy firm.

76.     Cost of forensic computer services to restore concealed and deleted data including word processing documents and emails;

77.     Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of Langeland, Stephan and Zouras.

78.     Attorneys' fees and court costs incurred by Plaintiff for the institution of legal proceedings to obtain injunctive relief, including impounding hardware containing Touhy firm data;

79.     The revenue and goodwill lost by the Touhy firm as a result of the fraud, fiduciary breaches and interference with prospective economic advantage in which Langeland participated.

WHEREFORE, the plaintiffs demand judgment against the defendants, ERIK H. LANGELAND and ERIK H. LANGELAND, P.C., jointly and severally, for compensatory and punitive damages and costs of this suit.

**Jury Demand**

Plaintiff demands a trial by jury of any issue triable of right by a jury by filing this demand which is indorsed upon the plaintiff's complaint.


Date:   May 21, 2008                              Respectfully submitted,


                                                 /s/E. Steven Yonover
                                                 E. Steven Yonover
                                                 161 North Clark Street
                                                 Suite 2210
                                                 Chicago, Illinois 60601
                                                 (312) 236-9493
                                                 (847) 205-0022

                                                 Attorney for Plaintiff

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. 07 CH 13552 |
| | ) |
| RYAN F. STEPHAN, JAMES B. ZOURAS and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) |
| | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF FILING

TO:    Bradley K. Staubus
       134 N. LaSalle Street
       Suite 500
       Chicago, Illinois  60602

Please take notice that on December 5, 2007, the attached VERIFIED THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF were filed with the Clerk of the Circuit Court of Cook County at the Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois.

_____
One of the Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

I, the undersigned, certify that a copy of the foregoing notice and attached were served upon the above-named attorney(s) of record on this 5th day of December, 2007, by:  [] hand-delivery; [] facsimile; [X] email and/or [X] by placing a copy in pre-paid envelope and depositing the same in the U.S. Mail.

_____

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 5TH DAY OF
DECEMBER, 2007.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Pamela D. Kilby
Notary Public, State of Illinois
My Commission Exp. 04/21/2009

**Plaintiff Exhibt 1_000001**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 North Clark Street, Suite 2230
Chicago, Illinois  60601
(312) 849-2020
Attorney No.  42263

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street
Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Atty No.  22696

**Plaintiff Exhibt 1_000002**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **Case No. 07 CH 13552** |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) |
| | ) |
| Defendants. | ) |

## <u>VERIFIED THIRD AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), by its undersigned attorneys, with this action for injunctive and other relief against Defendants Ryan F. Stephan, James B. Zouras and Stephan & Zouras, LLP ("STEPHANZOURAS"), and in support thereof, alleges as follows:

### <u>THE PARTIES</u>

1.     Plaintiff Touhy is an Illinois Professional Corporation engaged in the practice of law in Illinois. One of Touhy's specialties is representing plaintiffs in class action and collective action matters. The shareholders of Touhy and Touhy, Ltd. are Timothy Touhy and Daniel Touhy. Touhy's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois 60601.

2.     Defendants Stephan and Zouras are licensed attorneys, who were employed full-time up to May 21, 2007 by Touhy to practice law on behalf of Touhy, for which they received salaries from the Firm. Stephan currently resides at 1701 N. Damen, Unit #304, Chicago, and

has worked for the Firm for approximately four years.  Zouras currently resides at 431 S.

Dearborn, Unit 1001, Chicago and has worked for the Firm for approximately ten years.

       3.     Defendant STEPHANZOURAS is an Illinois limited liability partnership formed

on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave.,

Chicago and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago.  On information

and belief, since the formation of STEPHANZOURAS, Defendants Stephan and Zouras have

been partners and agents of STEPHANZOURAS, acting on their own behalf and on

STEPHANZOURAS's behalf with respect the action alleged herein.

### VENUE

       4.     Venue is proper in the Circuit pursuant to 735 ILCS 5/2-101 because the

transactions out of which these causes of action arose occurred in Cook County.

       5.     Venue is proper in Chancery Court because the Plaintiff Touhy seeks injunctive

relief.

### DEFENDANTS' SURREPTITIOUS ACTIVITIES AND THEFT OF CONFIDENTIAL DATA

       6.     At some point during between 2005 and May 2007, Defendants Stephan and

Zouras decided to leave Touhy's employment, start their own law firm and solicit Touhy firm

clients and contacts.   In furtherance of these intentions, Stephan and Zouras established

Defendant STEPHANZOURAS to compete with Touhy.

       7.     While working for the Touhy firm, Defendants Stephan and Zouras hatched a

plan to stay employed with Touhy while they set up their new law firm, in order to use Touhy's

resources and confidential data and solicit Touhy's current and prospective clients, all for the

benefit of their new law practice, STEPHANZOURAS.

**Plaintiff Exhibt 1_000004**

8.      While employed by Touhy, Defendants Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of Touhy but without Touhy's knowledge or authorization.  For example, on April 27, 2007, both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp.*,  07 CV 0566, in Federal Court in the Northern District of Georgia, in their own and *Touhy's name*.  In doing so, they bypassed Firm procedures that require all cases in which the Firm is representing a client to be entered promptly in the Firm's computer system and a paper file and docket created.  Defendants Stephan and Zouras also failed to follow Firm procedures that require attorneys opening new matters to prepare Firm open file memos and to docket the case on the Firm's computer calendar system, so that the Firm can monitor its cases.

9.      Dan Touhy learned about the Defendants' illicit representation of Bouthner when the Firm received correspondence from the clerk of the court of the Northern District of Georgia concerning the Defendants motions for admission *pro hac vice*.  Subsequent to the receipt of the unauthorized filings, Dan Touhy asked Defendant Zouras if he had heard of the "Bouthner" case; Defendant Zouras stated that he had not, in an attempt to conceal his surreptitious representation of Bouthner.

10.     On information and belief, Defendants Stephan and Zouras were introduced to the clients and prospective clients that they have secretly solicited by virtue of their employment with Touhy.  For example, on October 1, 2006, a prospective client named Stephen Ferko executed two separate Firm "Client Representation Agreements", wherein he agreed to be represented by Touhy in a class action and in a second, individual claim involving a dispute with his employer. The Defendant Stephan was aware of this second claim and was overseeing it.  A

3

**Plaintiff Exhibt 1_000005**

file for Mr. Ferko's individual claim was never opened up on the Firm's system, nor was a paper file created or the matter docketed with the Firm.

11.    Touhy's financial data is kept in a Quicken software program on the Firm's server.  Access to this confidential data is limited to shareholders Tim Touhy, Dan Touhy and Dan's secretary, Sandy Robinson.  Access is permitted only for specific case related print-outs or information.  On or about April 12, 2007, Defendant Zouras accessed Touhy's secure client financial accounts on its computer system from Ms. Robinson and instructions on how to print "cost and expense" reports from the Firm accounts.  Zouras obtained this information on the pretense that he wanted to print the cost and expense report for the "Michaels v. Dynaprop" case, a matter that Zouras was working on for the Firm.  Because Defendant Zouras made the request at the end of the day Ms. Robinson was exiting the offices and gave him the password for the limited purpose of printing the Michaels cost and expense report.

12.    Mr. Zouras violated Ms. Robinson's trust and used the password to access the account to print out confidential client expense data for at least 10 matters that Touhy attorneys, including Defendants Stephan and Zouras, have been working on.  He did so without authorization from either the Firm or the respective clients.  He did not print out the Michaels' cost and expense report.

13.    As evidenced above, from 2005 to May 2007 Defendants Stephan and Zouras, while employed by Touhy, have used Touhy resources and confidential information to compete directly with Touhy.  Touhy discovered the Defendants' duplicity prior to May 21, 2007, and its investigation is ongoing; the Firm anticipates uncovering numerous other examples of the Defendants misappropriating Firm resources to solicit Firm clients and compete directly with the

4

**Plaintiff Exhibt 1_000006**

Firm and other fiduciary breaches, all while Defendants Stephan and Zouras were employed by

the Firm and drawing a salary from the Firm.  The Defendants actions include:

A.  Intercepting mail, faxes and documents delivered to the Touhy firm offices before these pleadings, correspondence and data could be entered in the firm files and data base

B.  Copying confidential file data without the consent of the firm or the client onto an external hard drive and copying this data onto defendants' laptop and office server

C.  Planning and orchestrating an ongoing to plan to limit or deprive Touhy firm employees from accessing or performing case work on clients and cases defendants intended to solicit from the Touhy firm.

D.  Using Touhy firm computers, internet and on Touhy firm time conducted mapquest searches and legal research as a means of competing with the Touhy firm prior to defendants' termination

E.  Falsifying reasons that defendants could not perform work on assigned firm cases in order to advance their own economic interest

F.  Attempting to reach understandings with Touhy firm co-counsel on cases which defendants had concealed from the Touhy firm intended to solicit from the Touhy firm

G.  Engaged in secret communications with Erik Langeland, Ken Levinson, John Tostrud, Hector Vargas, Mary Stecyna, William Slover, Jules Smith, Craig Fitzgerald and Michael Jibben for the purpose of referring, litigating or settling cases without the Touhy firm's knowledge.

H.  Moved into the suite of their competing firm, Stephanzouras LLP, at 205 North Michigan on Touhy firm time and intended to work in their suite on firm time during May 2007

I.  Modifying Touhy firm forms identifying Erik Langeland as co-counsel in order to divert Touhy firm client Gerald Bouthner to Langeland and conceal this fact from the Touhy firm.

14.     Touhy has an ongoing investigation of the Defendants' malfeasance and fiduciary

violations.  The Firm retained an IT consultant to conduct a forensic analysis of the Firm's

computers and server to determine the extent of the Defendants' misappropriation of the Firm's

and its clients' confidential data, and to secure the data on the computers against further theft.

Plaintiff Exhibt 1_000007

15.    The IT consultant has found that, between May 15 and May 21, 2007, Defendants Zouras and Stephan downloaded onto separate and removable storage discs or external hard drives thousands of documents belonging to the Firm, including but not limited to case files, excel spread sheets with client names, addresses and emails, office forms, pleadings and correspondence in cases, co-counsel names and addresses of numerous other documents in the Firm's possession.  Zouras and Stephan took this information and copied it onto a laptop and server at the offices of STEPHANZOURAS on May 20, 2007.

16.    Defendants Stephan and Zouras concealed cases and clients, concealed a settlement of Touhy firm clients David Darwin, Steven Ferko, Jules Smith and engaged in self-dealing by using internet sites to solicit clients, including Touhy & Touhy, Legal Match and Find Law.  When Touhy learned of these improper actions the Defendants denied or concealed them.

## COUNT I
### Breach of Fiduciary Duty
### (Against Stephan and Zouras)

1.    Plaintiff Touhy, as and for paragraph 1 of Count I, re-allege paragraphs 1-16 as though fully set forth herein.

2.    As part of their responsibilities during the time they were employed by Touhy, Defendants Stephan and Zouras owed the Touhy firm and its clients a fiduciary duty of loyalty and good faith.

3.    As described more fully above, Defendants Stephan and Zouras breached their fiduciary duties by soliciting for their own benefit and the benefit of Defendant STEPHANZOURAS current and prospective Touhy clients with the intent of establishing an attorney-client relationship with these individuals and persuading these clients to discharge the Touhy firm and hire STEPHANZOURAS.

6

Plaintiff Exhibt 1_000008

4.    As described more fully herein, Defendants breached their fiduciary duty by using Touhy's name and resources in their solicitation of Touhy clients, without informing Touhy of their actions or obtaining authorization for their actions, not disclosing business appointments, competing with the Touhy firm and self-dealing.

5.    As described more fully herein, Defendants Stephan and Zouras further breached their fiduciary duties toward Touhy by taking confidential data from Touhy, with the intent of assisting their efforts to interfere with the Touhy firm prospective economic expectancy with these clients and bring Touhy clients with them to STEPHANZOURAS.  This conduct included one or more of the following acts or omissions:

A.    Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals on one or more occasions by engaging in one of more of the acts alleged herein.

B.    Subscribed to LegalMatch in April 2006 while they were employees and fiduciaries of the Touhy firm.

C.    Subscribed to LegalMatch in February 2007 while they were employees and fiduciaries of the Touhy firm.

D.    Secretly signed a subscription to LegalMatch for their own economic benefit on or about February 10, 2007.

E.    Communicating with LegalMatch  in October and November 2006 to expand the subscription to LegalMatch without the knowledge or consent of the Touhy firm.

F.    Appropriating the account even though the Touhy firm reimbursed Stephan for all costs incurred in connection with the Legal Match internet service.

G.    Accessing the Touhy firm LegalMatch account before and after the entry of the TRO in this case.

H.    Changing the password to the account preventing the Touhy firm from accessing its account.

I.    On April 24, 2007 Stephan sent Jacobo Rodriguez at LegalMatch from his Yahoo

7

**Plaintiff Exhibt 1_000009**

account rstephan123@yahoo.com an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

J.    Stephan and Zouras operated the LegalMatch account while employees and fiduciaries of the Touhy firm for their own economic benefit on and before May 21, 2007.

6.    Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

7.    Defendants Stephan and Zouras, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained in breach of their fiduciary duties.

8.    For the reasons stated above, there is a likelihood that Touhy will prevail on the merits of this action.

9.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

10.    The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

8

**Plaintiff Exhibt 1_000010**

B.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a
Permanent Injunction, against Defendants, enjoining them from withdrawing transferring or
disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which
Plaintiff has an interest;

C.      Entry of a Preliminary Injunction and, upon final dispositions, entry of a
Permanent Injunction, against Defendants, directing that they turnover all property, whether real,
personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not
limited to, client information and confidential Firm information and any copies of the same to
Plaintiff, including the return and restoration of all computer data files that Defendants destroyed
or removed from Touhy's computers and server:

D.      That a judgment be entered in favor of Touhy, and against Defendants, for
compensatory damages in an amount to be proved at trial;

E.      That a judgment be entered in favor of Plaintiff, and against Defendants for
punitive damages in an amount to be proved at trial;

F.      Such other and additional relief as this Court may deem appropriate.

**COUNT II**
**Tortious Interference with Prospective Business Advantage**
**(All Defendants)**

1.      Plaintiff Touhy, as and for paragraph 1 of Count II, re-allege paragraphs 1-16 as
though fully set forth herein.

2.      Plaintiff Touhy had a valid business expectancy of representing the clients that
Defendants solicited while Touhy firm employees.  The Defendants caused these clients to
discharge the Touhy firm as their attorneys and hire the Defendants.

9

**Plaintiff Exhibt 1_000011**

3.    As described more fully above, Defendants have purposefully interfered with that expectancy by soliciting and concealing these clients with the intent to bring them to STEPHANZOURAS.  Prior to May 21, 2007 Stephan and Zouras placed their own individual interests above that of the Touhy firm or its principals on one or more occasions by referring cases or taking fees that were due the Touhy firm or opportunities of the Touhy firm including one or more of the following: Jules Smith, Borowsky v IBM; Bouthner v Amtrust; Hector Vargas; Mary Stecyna; Yang v NYMC; Shabazz; Jones and Marrs v Casey's General Store; William Slover; Tracy Kobel; and David Darwin.

4.    At the time of these actions, the Defendants were employed by the Touhy firm and its fiduciaries and had no legal right to interfere with Touhy's business expectation. Notwithstanding this fiduciary duty, the defendants committed one or more of the following acts:

    A.  Stephan created a "To Do" list in which he intended to copy dockets, contact prospective plaintiffs and sign up plaintiffs.

    B.  Stephan planned to have Touhy & Touhy fired by Schuering in the case Genebacher v. DTI and hire the firm of Stephan Zouras.

    C.  While on Touhy firm time and computers, Stephan drafted substitutions of attorneys in cases he intended to solicit.

    D.  Executed co-counsel agreements with Erik Langeland and Andrew Coffman on Bouthner and concealed this fact from the Touhy firm.

    E.  Stephan diverted Touhy firm emails from his Touhylaw email to his Yahoo email account and deleted the Touhylaw emails.

    F.  Stephan planned and was executing his plan to "finalize" and reach agreements with other attorneys to act as co-counsel on Touhy firm cases including Casey's and WFI spin-offs.

    G.  Intended to add Touhy firm clients to Stephan's list of referred case, including Chemi, Huebner and Stuart.

    H.  Concealed and took no action on pending Touhy firm cases and clients, intending to contact these individuals after leaving the Touhy firm, including

Plaintiff Exhibt 1_000012

Mary Stecyna, *Rak v. Performance Management*, Jason Goldstein, Bouthner, Chabrier and Bochicchio.

I. On May 3, 2007 Zouras prepared and subsequently mailed at least 13 letters to potential class members in the case *Chabrier v. WFI* for the purpose of soliciting these individuals and having them hire the defendants.

5.      Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

6.      Defendants, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained by interfering with Touhy's valid business expectation.

7.      Based on the above, there is a likelihood that Touhy will prevail on the merits of this action.

8.      Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

9.      The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

**Plaintiff Exhibt 1_000013**

B.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a

Permanent Injunction, against Defendants, enjoining him from withdrawing transferring or

disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which

Plaintiff has an interest;

C.      Entry of a Preliminary Injunction and, upon final disposition, entry of a

Permanent Injunction, against Defendants, directing that they turnover all property, whether real,

personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not

limited to, confidential client and Firm information and any copies of the same to Plaintiff,

including the return and restoration of all computer data files that Defendants destroyed or

removed from Touhy's computers and servers;

D.      That a judgment be entered in favor of Touhy, and against Defendants, for

compensatory damages in an amount to be proved at trial;

E.      That a judgment be entered in favor of Plaintiff, and against Defendants for

punitive damages in an amount to be proved at trial;

F.      Such other and additional relief as this Court may deem appropriate.

## COUNT III
### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

1.      Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16

as though fully set forth herein.

2.      At all times relevant to this Complaint, there was in existence a certain statute, to-

wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA

provides, in relevant part, as follows:

12

**Plaintiff Exhibt 1_000014**

Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …

18 U.S.C. §1030 (a)(5)(A)(iii).

by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
18 U.S.C. § 1030 (a)(5)(B).

loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;…
18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030 (a)

the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means…a computer which is used in interstate or foreign commerce or communication….
18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or

13

**Plaintiff Exhibt 1_000015**

> (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.
>
> 18 U.S.C. §1030(g) (emphasis added).

3.     Touhy firm computers contain electronic files which files contain data regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania, California and Georgia.  Touhy firm computers are also used for e-mail communications throughout the United States and are "protected computers" as that term is defined by the CFAA.  The use or misuse of this data affects interstate commerce.

4.     Defendants intentionally accessed the Touhy firm computers and email system and confidential client and Firm information without authorization prior to May 21, 2007.

5.     As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures.  The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish new security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000.

6.     As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information unavailable.

7.     As set forth herein, Defendants misappropriated passwords and misdirected confidential information to their personal email accounts, thereby completely eliminating Touhy firm access to this information.  This caused the Touhy firm a loss of availability and access to these business documents, client information and data as alleged herein.  Certain of these data

**Plaintiff Exhibt 1_000016**

cannot be retrieved, thus causing damage as defined by the CFAA, as alleged in paragraphs 10 to 36.

8.     Defendant's intentional access of a protected computer without authorization impaired the availability of Touhy firm client and firm data because the quarantine of computers and establishment of corrective actions were necessary to correct virus threats, assess the amount of information misappropriated, and reestablish security which resulted in the Touhy firm's inability to use its computers and access its data, thus causing damage as defined by the CFAA as alleged in paragraphs 10 to 36.

9.     Defendants have used and continue to wrongfully use the confidential client and firm information from the computer system of the Touhy firm.  The Defendants have continued their wrongful use of confidential client and firm information which has caused the Touhy firm irretrievable and complete loss of the data and files concerned, causing damage as defined by the CFAA and alleged in paragraphs 10 to 36.

10.     On May 21, 2007, May 18, 2007, May 17, 2007 and prior to these dates, the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, rstephan@touhylaw.com to Stephan's personal Yahoo account rstephan1234@yahoo.com and then deleted these Touhy firm emails from the Touhy firm email system as set forth in paragraphs 11 to 25 below.

11.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

15

**Plaintiff Exhibt 1_000017**

12.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

13.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

14.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

15.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

16.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

17.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

18.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

**Plaintiff Exhibt 1_000018**

19.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

20.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

21.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

22.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

23.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: WFI Colorado,   May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

24.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

25.     The defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to stephan1234@yahoo.com, subject: BOCHICCHIO et al v.

17

**Plaintiff Exhibt 1_000019**

EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

26.     Through May 21, 2007 and prior thereto, Stephan deleted Touhy firm emails which emails contained client personal contact and update information from the Touhy firm email system involving one or more of the firm clients or parties' counsel as set forth in paragraphs A to U below.

A.     Jennifer Stuart

B.     John Huebner

C.     Gerald Bouthner

D.     Opal Charbrier

E.     Donny Janevski

F.     Steve Turner

G.     Jack Manley

H.     Marian Blidaru

I.     Jason Bochicchio

J.     Frank Pidoto

K.     Brian Gagliardi

L.     Anthony Casale

M.     Craig Altieri

N.     Christopher Chemi

O.     Mary Foster

P.     Scott Standel

Q.     Brandon Farina

**Plaintiff Exhibt 1_000020**

R.    Andrew Coffman

S.    Ken Levinson

T.    Erik Langeland

U.    WFI Colorado, containing not less than 10 individuals who were potential

plaintiffs or witnesses on or about May 21, 2007.

27.    On May 21, 2007 and for months prior to this date, Stephan deleted Touhy firm

emails from the Touhy firm email system involving communications concerning the settlement

and disbursement of monies of Touhy firm cases and clients as set forth in paragraphs A to D

below.

A.    David Darwin

B.    Ken Levinson

C.    Jules Smith

D.    Steven Ferko

28.    On May 21, 2007 and for months prior to this date, Stephan deleted electronic

files and data from the Touhy firm computer system which files contained Touhy firm client and

case information and contacts for the purpose of making this data unavailable to the Touhy firm

which clients and cases are as set forth in paragraphs A to E below.

A.    Borowsky v IBM

B.    Steven Yang NYMC

C.    Jones v. Casey's General Store

D.    Gerald Bouthner v. Amtrust

E.    Shabazz v. Morgan Funding

19

**Plaintiff Exhibt 1_000021**

29    On May 21, 2007 and prior to this date, Stephan and Zouras deleted data from the Touhy firm computers or the Touhy firm email containing data relating to one or more of the following Legal Match contacts for the purpose of making this data unavailable to the Touhy firm which clients and cases are as set forth in paragraphs A to U below.

A.    Davin Cole

B.    Peter Conrad

C.    Lafayette Davis

D.    Odeh Fanasheh

E.    Craig Fitzgerald

F.    Michael Jibben

G.    Kirk Freundt

H.    Tiffany Green

I.    Veola Hankle

J.    Paula Hardwick

K.    Octavia Hernandez

L.    Joseph Jergl

M.    Tracy Kobel

N.    Morad Laichev

O.    Brian Lambert

P.    Donna Lingafelt

Q.    Erma Lowe

R.    William Slover

S.    Gregory Waring

20

**Plaintiff Exhibt 1_000022**

      T.     George Wright

      U.     Elicia Zimmerman

30.     Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of making these firm computers and the data contained thereon unavailable to the Touhy firm.

31.     Through May 21, 2007 and for months prior to this date, Stephan deleted Touhy firm emails from the Touhy firm email system involving correspondence and emails sent to the Touhy firm through FindLaw and the Touhy and Touhy, Ltd. website involving one or more of the cases and clients as set forth in paragraphs A and B below.

      A.     Gerald Bouthner

      B.     Mary Stecyna

32.     Prior to May 21, 2007 Stephan concealed the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.

33.     Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.

34.     Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm including the data on the cases and clients set forth in paragraphs A to G below.

      A.     Malaika Coleman

      B.     Ken Levinson

**Plaintiff Exhibt 1_000023**

C.    Jules Smith

D.    Steven Ferko

E.    Gerald Bouthner

F.    Erik Langeland

G.    Craig Fitzgerald

35.    As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

A.    Expenditure of time and money conducting a damage assessment of the firm computers and laptops;

B.    Retrieving deleted files and data which were rendered unavailable by defendants' actions;

C.    Retrieving deleted emails which were rendered inaccessible by defendants' actions;

D.    Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

E.    Expenditure of money, expert fees and attorneys' fees in restoring retrievable data from the firm computers and laptops;

F.    Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

G.    Expenditure of money, expert fees and attorneys' fees in retrieving deleted or inaccessible emails and similar data from the firm email and website system;

22

**Plaintiff Exhibt 1_000024**

H.    Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

36.    Touhy has no adequate remedy at law.  Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

37.    By their conduct, Defendants have demonstrated their willingness to continue to engage in acts that violate the CFAA.  The injury to Touhy is immediate and irreparable.

38.    Defendants, unless restrained, will continue to engage in conduct that is alleged herein.

39.    For the reasons described above, there is a likelihood that Touhy will prevail on the merits of this action.

40.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No injury to Defendants would result from an order requiring them to comport his actions with the law.

41.    The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would accomplish the objectives of the CFAA.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy respectfully requests that this Court grant the following relief:

23

**Plaintiff Exhibt 1_000025**

A.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from engaging in acts and practices in violation of the CFAA;

B.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Touhy or in which Touhy has an interest;

C.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from withdrawing, transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

D.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, directing that they turnover all Plaintiff's property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information, confidential Firm information, and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computer and server;

E.    That a judgment be entered in favor of Plaintiff, and against Defendants, for compensatory  punitive damages in an amount in excess of $50,000;

F.    An order awarding Plaintiff its costs and attorneys' fees; and

G.    Such other and additional relief as this Court may deem appropriate.

**Plaintiff Exhibt 1_000026**

## COUNT IV
## Conversion and Constructive Trust Steven Ferko
## (All Defendants)

1.      Plaintiff Touhy, re-alleges as and for paragraph 1 of Count IV, paragraphs 1-16 as though fully set forth herein.

2.      Stephan and Zouras were employees of the Touhy firm during 2006 and up to and including May 21, 2007.   As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of the Touhy firm, and owe Touhy a fiduciary duty of loyalty and good faith.   The acts of the defendants alleged herein constitute breaches of their fiduciary duty to the Touhy firm.

3.      That on or before May 21, 2007 Steven Ferko was a client of the law firm Touhy & Touhy, Ltd.

4.      That on or before May 21, 2007 Steven Ferko had signed an Attorney-Client Agreement with the law firm Touhy & Touhy, Ltd.,

5.      Prior to May 21, 2007 Zouras referred the Ferko case to attorney Erik Langeland.

6.      That at no time prior to May 21, 2007 did Zouras disclose to Timothy J. Touhy or Daniel K. Touhy that he had received a portion of the monies paid as attorneys' fees from Erik Langeland as a result of settlement of Steven Ferko's claim.

7.      That during April 2007 Zouras was aware that Steven Ferko's case against his employer was settled pursuant to a confidential settlement agreement.

8.      Prior to April 30, 2007 Zouras received a check from attorney Erik Langeland which represented attorney's fees paid as part of the settlement of the Steven Ferko claim.

9.      The check Zouras received from Erik Langeland was made payable to Zouras in his own name.

**Plaintiff Exhibt 1_000027**

10.    Zouras did not deposit the check from attorney Erik Langeland from the proceeds of the Ferko case into a client fund account.

11.    Zouras did not deposit the check from attorney Erik Langeland from the proceeds of the Ferko case into a Touhy firm client fund account or transfer these funds to the Touhy firm at any time.

12.    Zouras deposited the check from Erik Langeland into Zouras' personal bank account.

13.    That in no time prior to May 21, 2007 did Zouras have authorization from Timothy J. Touhy or Daniel K. Touhy to accept a portion of the monies paid as attorneys' fees from the Steven Ferko settlement in his own name.

14.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko.

15.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko by virtue of its attorney-client agreement with Ferko in the amount of not less than $61,074.24.

16.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Steven Ferko in the amount of not less than $61,074.24.

17.    Stephan received $20,358.08 from the Ferko settlement proceeds in an account in his own name.

18.    Stephan deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account his own name at Private Bank between April 20, 2007 to May 6, 2007.

Plaintiff Exhibt 1_000028

19.    Upon information and belief, Stephan deposited the check for $20,358.08 received from Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Harris Bank between April 20, 2007 to May 6, 2007.

20.    Upon information and belief, Stephan deposited the check for $20,358.08 received from Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Private Bank between April 20, 2007 to May 6, 2007.

21.    Zouras received $20,358.08 from the Ferko settlement proceeds in his own name.

22.    Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name at LaSalle Bank between April 20, 2007 to May 6, 2007.

23.    Upon information and belief, Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at LaSalle Bank between April 20, 2007 to May 6, 2007.

24.    Upon information and belief, Zouras deposited the check for $20,358.08 received from Erik Langeland from the Ferko settlement proceeds in an account in his own name or an account in the name of STEPHANZOURAS, LLP at Harris Bank between April 20, 2007 to May 6, 2007.

25.    Stephan and Zouras exercised wrongful control and dominion over attorneys' fees in the case of Steven Ferko without authorization of the Touhy firm by depositing these monies in  bank accounts held in their own names.

27

**Plaintiff Exhibt 1_000029**

26.    The monies from the case of Steven Ferko were, and are, the property of the Touhy firm. Dominion and control of these funds were obtained by the defendants during the time period before May 21, 2007 and while they were fiduciaries of the Touhy firm.

27.    The Touhy firm has demanded the defendants to return these monies. Stephan and Zouras have refused to return these monies to the Touhy firm despite these demands.

28.    Between March 26-27, 2007 through May 21, 2007 it was it was Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,358.08.00 Stephan and Zouras each received from the Ferko settlement proceeds.

29.    From May 21, 2007 to the present it is it was Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,358.08.00 Stephan and Zouras each received from the Ferko settlement proceeds.

WHEREFORE plaintiff prays the imposition of a constructive trust on that portion of the funds from the Steven Ferko settlement that constitute attorney's fees, an order of Court directing defendants, and all those who have possession of the subject funds and all those acting in concert with defendants, to return those attorney's fees, in their entirety, to plaintiff, all costs incurred in pursuing this litigation, and for any other relief this Honorable Court deems appropriate.

## COUNT V
### Conversion and Constructive Trust Jules Smith
### (All Defendants)

1.    Plaintiff Touhy, re-alleges as and for paragraph 1 of Count V, paragraphs 1-16 as though fully set forth herein.

28

**Plaintiff Exhibt 1_000030**

2.	Stephan and Zouras were employees of the Touhy firm during 2006 and up to and including May 21, 2007.  As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of the Touhy firm, and owe Touhy a fiduciary duty of loyalty and good faith.  The acts of the defendants alleged herein constitute breaches of their fiduciary duty to the Touhy firm.

3.	That on or before May 21, 2007 Jules Smith was a client of the law firm Touhy & Touhy, Ltd.

4.	That on or before May 21, 2007 Jules Smith had signed an Attorney-Client Agreement with the law firm Touhy & Touhy, Ltd.,

5.	Prior to May 21, 2007  Zouras referred the Smith case to attorney Ken Levinson.

6.	That at no time prior to May 21, 2007 did  Zouras disclose to Timothy J. Touhy or Daniel K. Touhy that he had received a portion of the monies paid as attorneys' fees from Ken Levinson as a result of settlement of Jules Smith's claim.

7.	That during April 2007 Zouras was aware that Jules Smith's case against his employer was settled pursuant to a confidential settlement agreement.

8.	Prior to April 30, 2007 Zouras received a check from attorney Ken Levinson which represented attorney's fees paid as part of the settlement of the Jules Smith claim.

9.	The check  Zouras received from Ken Levinson was made payable to  Zouras in his own name.

10.	 Zouras did not deposit the check from attorney Ken Levinson from the proceeds of the Smith case into a client fund account.

**Plaintiff Exhibt 1_000031**

11.    Zouras did not deposit the check from attorney Ken Levinson from the proceeds of the Smith case into a Touhy firm client fund account or transfer these funds to the Touhy firm at any time.

12.    Zouras deposited the check from Ken Levinson into Zouras' personal bank account.

13.    That in no time prior to May 21, 2007 did Zouras have authorization from Timothy J. Touhy or Daniel K. Touhy to accept a portion of the monies paid as attorneys' fees from the Jules Smith settlement in his own name.

14.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith.

15.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith by virtue of its attorney-client agreement with Smith in the amount of not less than $27,000.00

16.    The Touhy firm had an unconditional right to immediate possession of funds and attorneys' fees in the case of Jules Smith in the amount of not less than $27,000.00.

17.    Stephan received $20,000.00 from the Smith settlement proceeds in an account in his own name.

18.    Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account his own name at Private Bank between March 26-27, 2007.

19.    Upon information and belief, Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in the name of STEPHANZOURAS, LLP at Harris Bank between March 26-27, 2007.

Plaintiff Exhibt 1_000032

20.    Upon information and belief, Stephan deposited the check for $20,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name of the name of STEPHANZOURAS, LLP.

21.    Zouras received $7,000.00 from the Smith settlement proceeds in his own name.

22.    Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name at LaSalle Bank between March 26-27, 2007.

23.    Upon information and belief, Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in the name of STEPHANZOURAS, LLP at Harris Bank between March 26-27, 2007.

24.    Upon information and belief, Zouras deposited the check for $7,000.00 received from Ken Levinson from the Smith settlement proceeds in an account in his own name of the name of STEPHANZOURAS, LLP.

25.    Stephan and Zouras exercised wrongful control and dominion over attorneys' fees in the case of Jules Smith without authorization of the Touhy firm by depositing these monies in bank accounts held in their own names.

26.    The monies from the case of Jules Smith were, and are, the property of the Touhy firm.  Dominion and control of these funds were obtained by the defendants during the time period before May 21, 2007 and while they were fiduciaries of the Touhy firm.

27.    The Touhy firm has demanded the defendants to return these monies.

28.    Stephan and Zouras have refused to return these monies to the Touhy firm despite these demands.

**Plaintiff Exhibt 1_000033**

29.    Between March 26-27, 2007 through May 21, 2007 it is, and was, Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,000.00 Stephan received and the $7,000.00 Zouras received from the Smith settlement proceeds.

30.    From May 21, 2007 to the present it is, and was, Zouras and Stephan's intent to permanently deprive the Touhy firm of the $20,000.00 Stephan received and the $7,000.00 Zouras received from the Smith settlement proceeds.

WHEREFORE plaintiff prays the imposition of a constructive trust on that portion of the funds from the Jules Smith settlement that constitute attorney's fees, an order of Court directing defendants, and all those who have possession of the subject funds and all those acting in concert with defendants, to return those attorney's fees, in their entirety, to plaintiff, all costs incurred in pursuing this litigation, and for any other relief this Honorable Court deems appropriate.

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.


Respectfully submitted,


One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street
Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Atty No.  22696

Michael O'Rourke
O'Rourke Katten & Moody
161 N. Clark St.
Chicago, IL 60601
312-849-2020
Attorney Code: 42263

32

**Plaintiff Exhibt 1_000034**

### **VERIFICATION**

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the Verified Third Amended Complaint and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.



TIMOTHY J. TOUHY

**Plaintiff Exhibt 1_000035**

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 07 CH 13552 |
| RYAN F. STEPHAN, JAMES B. ZOURAS and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) ) ) ) | |
| Defendants. | ) | |

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the

Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the

aforementioned document and that the same are true and correct, except as to matters herein

stated to be on information and belief and as to such matters I certify as aforesaid that I verily

believe the same to be true.

_____
DANIEL K. TOUHY

**Plaintiff Exhibt 1_000036**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **TOUHY and TOUHY, LTD., an Illinois Professional Corporation,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 07 CH 13552** |
| **RYAN F. STEPHAN,  JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership,** | ) |
| | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## VERIFIED THIRD AMENDED COUNT III

### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), and in support of its Verified Third Amended Count III alleges as follows:

1.      Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16 of Count I as though fully set forth herein.

2.      At all times relevant to this Complaint, there was in existence a certain statute, to-wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …18 U.S.C. §1030 (a)(5)(A)(iii).
>
> by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
> 8 U.S.C. § 1030 (a)(5)(B).
>
> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only,

1

**Plaintiff Exhibit 2_000001**

loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;…18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.18 U.S.C. § 1030

(a)the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means…a computer which is used in interstate or foreign commerce or communication…. 18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages. 18 U.S.C. §1030(g) (emphasis added).

3.    The Touhy firm computers contain electronic files which files contain data

regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania,

California and Georgia.   Touhy firm computers are also used for e-mail communications

throughout the United States and are "protected computers" as that term is defined by the CFAA.

The use or misuse of this data affects interstate commerce.

4.    Defendants intentionally accessed the Touhy firm computers and email system

and confidential client and firm information without authorization prior to May 21, 2007.

2

**Plaintiff Exhibit 2_000002**

5.    As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures. The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000 as more fully described herein.

6.    As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information permanently unavailable as set forth in paragraphs 7 to 22 and 50 to 57.

7.    While employed by the Touhy firm Defendants misappropriated passwords and sent firm data to their personal email accounts. Certain of these data cannot be retrieved, rendering such data permanently unavailable and causing damage as defined by the CFAA.

8.    The various Touhy firm computer hard drives on its system were given letter designations. Individual desktop hard drives were designated as drive "C"; the office network server drive was designated as drive "F" and the individual desktop DVD/CD drives were designated as drive "D".

9.    Removable storage media or external hard drives which were connected to the Touhy firm computer system, would receive drive designations of "G", "H" or other sequential letters.

10.    Any drive bearing the designation "G" drive on a Touhy firm individual desktop computer is a removable storage media connected to an individual desktop.

3

**Plaintiff Exhibit 2_000003**

11.    During various days in May 2007, the "G" drive designations on Stephan and Zouras's Touhy firm individual desktop computers referred to a Western Digital removable storage media external hard drive that Defendants had connected to their individual desktop computers by a USB port.

12.    The defendants had obtained this Western Digital external hard drive ("WD external drive") and connected it to the Touhy firm computer system without the knowledge or consent of the Touhy firm principals.

13.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files at their homes.

14.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files on defendants' personal computers or the computers of non-employees of the Touhy firm.

15.    On May 18, 2007 Defendants received a delivery of computers purchased from CDW consisting of four HP desktop computers and on HP laptop computer.

16.    Other than the WD external drive,  and on information and belief, Stephan used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

17.    Other than the WD external drive, Zouras used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

4

**Plaintiff Exhibit 2_000004**

18.     On and before May 19, 2007 Stephan created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

19.     On and before May 19, 2007 Zouras created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

20.     The documents, files and folders set forth in paragraphs lajds through lajd;jf and contained on Exhibit 1 were data being created, modified or stored on a storage media designated as the "G" drive which media was connected to the Touhy firm desktop used by Stephan on or before May 21, 2007.

21.     At the time of Stephan's departure from the Touhy firm on or about May 21, 2007, no storage media was connected to Stephan or Zouras' Touhy firm desktop computers nor was this data saved in paper form or electronic form on any other Touhy firm electronic media.

22.     On or before May 21, 2007 both Stephan and Zouras had connected and then removed one or more of these electronic media storage devices containing Touhy firm data thereby making one or more of these data permanently unavailable to the Touhy firm.

**Use of Protected Computers by Defendants without Authorization**

23.     Stephan and Zouras's authorization to access, or use, the Touhy firm computers and internet system was revoked by committing one or more of the fiduciary breaches set forth in paragraph 24 to 47. Stephan's fiduciary breach revoked any authorized access to the Touhy firm computers and internet system from April 2006 and thereafter.

5

**Plaintiff Exhibit 2_000005**

24.     Between April 2006 and February 2008 Stephan committed a fiduciary breach by accepting reimbursement for the LegalMatch subscription cost, and then treating the subscription as Stephan's personal LegalMatch account.

25.     On or about December 12, 2006, January 24, 2007 and January 29, 2007 Stephan breached his authorized access to the Touhy firm  computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm prospective client Steven Yang without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

26.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland and Stephan representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

27.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland to reach an agreement' concerning Langeland and Stephan representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

28.     On or about December 7, 2006, January 30, 2007, February 20, 2007, March 5, 2007, March 9, 2007, March 14, 2007, March 27, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

**Plaintiff Exhibit 2_000006**

rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

29.     On or about March 29, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using the Touhy firm system to access his personal Yahoo account at rstephan123@yahoocom and communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Gerald Bouthner without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

30.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

31.     On or about January 29, 2007 and January 24, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Jameel Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

32.     On and after November 28, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

7

**Plaintiff Exhibit 2_000007**

33.     On January 31, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to contact LegalMatch by email in which email Stephan stated "That $22,000 is a big # right now. I am also going to have to sell this to Jim Zouras". Neither Stephan nor Zouras ever disclosed this communication to the Touhy firm principals while employed by the Touhy firm.

34.     On and after November 3, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by failing to disclose to the Touhy firm principals that he had received a Touhy & Touhy, Ltd. website communication from Steven Yang, had opened a file on November 7, 2006 and signed a firm contract with Yang.

35.     On or about November 7, 2006 Stephan breached his authorized access to the Touhy firm computers by creating or storing data on Stephan's Touhy firm computer desktop or on non-firm storage media concerning Steven Yang and not disclosing the existence of this matter to the Touhy firm principals

36.     On or about December 12, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning representation of Steven Yang by Ryan Stephan and James Zouras and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

37.     That one or more of the documents listed in Exhibits 1 and 2 were made permanently unavailable because these emails were deleted by Stephan from the Touhy firm computers. Despite attempts to recover these emails by employing various electronic software recovery programs this data is permanently unavailable to the Plaintiff and not recoverable by accessing Stephan's desktop, the Touhylaw email system or by employment of data recovery software or technical service assistance.

8

**Plaintiff Exhibit 2_000008**

38.    On and before May 21, 2007 Zouras breached his fiduciary duty by using Touhy firm computers and internet to conduct mapquest searches and legal research as a means of improving the ability of Defendants to contact Touhy firm clients to hire Defendants after Defendants left Touhy firm employment.

39.    On or about February 20, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland, Stephan and Zouras representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

40.    On February 20, 2007, January 30, 2007 and thereafter, Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland to reach an agreement' concerning Langeland and Zouras representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

41.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland concerning Langeland and Zouras representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

42.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

9

**Plaintiff Exhibit 2_000009**

jzouras@yahoo.com to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

43.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

44.    On or about January 24, 2007 Zouras breached his authorized access to the Touhy firm  computers and internet system by communicating with Erik Langeland concerning Steven Yang v NYMC and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

45.    On May 21, 2007 and prior to this date, Stephan forwarded Touhy firm emails from the Touhy firm email system to his personal Yahoo account involving communications concerning Touhy firm cases, clients and other counsel as set forth on Exhibit 1 attached hereto.

46.    On May 21, 2007 and prior to this date, Stephan did not disclose to the Touhy firm principals that email information had been received at Touhylaw concerning one or more of the individuals set forth on Exhibit 3 attached hereto.

47.    On and after November 28, 2006 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

10

**Plaintiff Exhibit 2_000010**

## Data that is Permanently Unavailable

48.     Certain security software was installed on the Touhy firm computer server network before May 21, 2007.  This security software recorded the computer activity on the Touhy firm desktop computers used by Stephan and Zouras.

49.     The security software recorded screenshots which depict some of the files, folders and documents created, modified, saved or stored on Stephan's and Zouras' Touhy firm computer desktop from the computer event register as set forth in Exhibit 1.

50.     Plaintiff has been able to identify some of the Touhy firm data created, modified, saved or stored on Stephan and Zouras's Touhy firm computer desktops from the computer event registers as set forth in Exhibit 1.  Although these file names, dates and path names have been identified, these data cannot be retrieved and are permanently unavailable because of the removal of the storage media by Defendants.

51.     That one or more of the files, folders, documents or data listed are permanently unavailable because the external drives which had been connected by Defendants to the Touhy firm computers were removed by them.

52.     In excess of 400 files or folders were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer identified on Exhibit 1 attached hereto were created, modified, stored or saved on a hard drive or other media by Stephan on or before May 21, 2007.

53.     The files, folders or documents identified on Exhibit 1 attached hereto were created, modified, stored or saved on Stephan's Touhy firm desktop computer as being created or stored by defendants on or about the dates following each file or folder as set forth on Exhibit 3 attached hereto.

11

**Plaintiff Exhibit 2_000011**

54.    Zouras used the Touhy firm computer system to create, modify, store or save numerous client "Election Forms" and letters to Touhy firm clients which data Zouras stored on an external drive.   On and before May 21, 2007 Zouras created these forms and letters for delivery to one or more of the Touhy firm clients listed on Exhibit 2.

55.    One or more of the following files, folders or documents were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer on or before May 21, 2007:

a)    A0039255 G:/Setup/2 Class Cases/3 Active/Casey's General Store

b)    A0039257 G:/Setup/2 Class Cases/3 Active/Casey's General Store

c)    A0039284 G:/Setup/2 Class Cases/3 Active/Casey's General Store

d)    A0039285 G:/Setup/2 Class Cases/3 Active/Casey's General Store

e)    A0039286 G:/Setup/2 Class Cases/3 Active/Casey's General Store

One of more of these files and folders were removed from the Touhy firm computer system. Despite multiple retrieval efforts these data are permanently unavailable.

**Unrecoverable Data which were Deleted**

56.    In excess of 19,000 documents, files or folders were deleted by Stephan from his Touhy firm desktop on or before May 21, 2007.   Although recovery software has retrieved millions of data bytes, there are 19,839 documents, files and folders which, although recovered, cannot be opened or accessed due to corruption, overwriting or other electronic impediment preventing the Touhy firm from accessing and reviewing these data.

57.    Stephan and Zouras removed one or more of these electronic media storage devices containing Touhy firm data or, on information and belief, stored these data on a web

12

**Plaintiff Exhibit 2_000012**

based storage media thereby making one or more of these data permanently unavailable to the Touhy firm.

58.    As a direct and proximate result of the acts of the defendants described herein, one or more of these data are permanently unavailable to the Touhy firm.

## PLAINTIFF'S LOSS UNDER THE CFAA

### Loss – Directing Touhylaw emails to Yahoo and Deletion of Emails

59.    After Stephan forwarded these emails he deleted one or more of them from the TouhyLaw email system.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering these data as set forth below.

60.    While employed by the Touhy firm Stephan received email inquiries through the Touhy & Touhy website at Touhylawcom from the following individuals through the Touhy firm server, computer and internet system concerning cases, clients, counsel or other individuals including Steven Yang; Gerald Bouthner; Casey's General Store; Mary Stecyna; Hector Vargas; David Darwin.

61.    While employed by the Touhy firm Stephan used Touhy firm computers and internet to communicate with the following individuals concerning representation of these individuals which contact had been made through LegalMatch and Findlaw:

a) Mary Stecyna;

b) Hector Vargas;

c) David Darwin;

d) William Slover;

e) Christopher Manning; and

13

**Plaintiff Exhibit 2_000013**

f) Tracy Kobel.

62.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Jules Smith case.

63.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Steve Ferko case.

64.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the David Darwin case.

65.    Defendants used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to commit one or more of the following acts:

a)    Engaged in communications with Erik Langeland, Ken Levinson, John Tostrud and other clients, counsel and individuals.

b)    Agreeing to send Touhy firm cases and fees in Darwin and Smith from the Touhy firm to other counsel.

c)    Agreeing with Erik Langeland to take attorney's fee of approximately $63,750 from the Ferko case and divide these monies.

14

**Plaintiff Exhibit 2_000014**

d)      Receiving emails delivered to the Touhy firm email addresses and failing to have pleadings, correspondence and data from being entered in the firm files and database.

e)      Copying Touhy firm data without the consent of the firm or the client onto an external hard drive and copying these data onto defendants' laptop and office server on or about May 19 and 20, 2007.

f)      Deleted emails and data from the Touhy firm computer network in order to prevent the Touhy firm from accessing or performing case work on clients and cases defendants intended to have discharge the Touhy firm.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

66.    On and before May 21, 2007 Stephan and Zouras used Touhylaw email and computers to provide other attorneys with Touhy firm client or case information or firm data for the purpose of assisting Touhy firm competitors by referring these matters to other attorneys involving one or more of the following:

a)      David Darwin;

b)      Craig Fitzgerald;

c)      Michael Jibben;

d)      William Slover;

e)      Steven Yang;

f)      Steven Ferko;

g)      Gerald Bouthner;

h)      Kim Jones; and

i)      Kim Marrs.

15

**Plaintiff Exhibit 2_000015**

67.  On and before May 21, 2007 Defendants received emails at their personal Yahoo accounts concerning the Darwin case, a LegalMatch client. Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

68.  On and before May 21, 2007 Stephan stored data relating to the LegalMatch account on a separate secure server to prevent the Touhy firm from accessing this information and to avoid disclosing information to the Touhy firm.

69.  On and before May 21, 2007 Stephan used his Yahoo account to contact Julie Reynolds at LegalMatch from his Yahoo account stephan123@yahoo.com which was sent by Stephan from the Touhy firm offices at 161 N. Clark Street, Suite 2210 and from Touhy firm computers on one or more of the following dates: on November 28, 2006, February 4, 2007, February 7, 2007, February 8, 2007, February 10, 2007, February 12, 2007, February 27, 2007, April 12, 2007, April 24, 2007, May 1, 2007.

70.  On and before May 21, 2007 Stephan used his Yahoo account at rstephan123@yahoocom to send Zouras copies of his communications with Legalmatch at jzouras@yahoocom on April 4, 2007, April 17, 2007 and other dates. On April 24, 2007 Stephan sent Jacobo Rodriguez at LegalMatch from his Yahoo account rstephan123@yahoocom an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

71.  On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: JMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

72.  On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to rstephan123@yahoocom, subject:

Plaintiff Exhibit 2_000016

WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

73.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

74.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

75.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

76.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

77.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

**Plaintiff Exhibit 2_000017**

78.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

79.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

80.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

81.    On and before May 21, 2007  the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

82.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

83.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject:

**Plaintiff Exhibit 2_000018**

WFI Colorado, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

84.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

85.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

86.     Although some or all of these emails in paragraphs 69 through 85 may not be permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

87.     On May 21, 2007 and for months prior to this date, Stephan and Zouras saved electronic files and data on a separate drive or drives which contained Touhy firm client, case information and contacts.  Defendants use of this drive prevented Touhy firm principals from learning of one or more the following clients, cases and other counsel:

       a)      Borowsky v IBM

       b)      Steven Yang NYMC

       c)      Jones v. Casey's General Store

       d)      Gerald Bouthner v. Amtrust

       e)      Shabazz v. Morgan Funding.

**Plaintiff Exhibit 2_000019**

88.    Between April 2006 and February 2008 Stephan denied the Touhy firm access to data relating to one or more of the following Legal Match contacts, which clients and individuals are as set forth below.

      a)    Davin Cole

      b)    Peter Conrad

      c)    Lafayette Davis

      d)    Odeh Fanasheh

      e)    Craig Fitzgerald

      f)    Michael Jibben

      g)    Kirk Freundt

      h)    Tiffany Green

      i)    Veola Hankle

      j)    Paula Hardwick

      k)    Octavia Hernandez

      l)    Joseph Jergl

      m)    Tracy Kobel

      n)    Morad Laichev

      o)    Brian Lambert

      p)    Donna Lingafelt

      q)    Erma Lowe

      r)    William Slover

      s)    Gregory Waring

      t)    George Wright

**Plaintiff Exhibit 2_000020**

u)    Elicia Zimmerman

89.    Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of denying the Touhy firm access to these firm computers and the data contained thereon.  Neither Stephan nor Zouras ever disclosed these passwords to the Touhy firm principals.

90.    Prior to May 21, 2007 Stephan did not disclose the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.  Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account thereby preventing the Touhy firm from accessing that account.

91.    Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm.

**Touhy Firm Financial Losses**

92.  As a direct and proximate result of the acts of the defendants described herein, the Touhy firm has incurred one or more of the following costs, losses or consequential damages under Section 1030(e)(10):

a)    Cost of computer technicians and consultants to quarantine the Stephan and Zouras firm desktop computers; Cost of computer technicians and consultants to quarantine two lap top computers used by one or more of the Defendants at the Touhy firm;

b)    Cost of computer technicians and consultants to test the Stephan and Zouras computers to run various recovery programs for the purpose of identifying the data which was deleted or inaccessible;

**Plaintiff Exhibit 2_000021**

c)    Cost of computer technicians and consultants to restore the deleted data including word processing documents and emails;

d)    Cost of security investigators to open, access, review and restore thousands of documents and files which were deleted or hidden from the Touhy firm desktop computers used by Stephan and Zouras for the purpose of restoring these data and information to its condition prior to Defendants' actions;

e)    Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of the Defendants;

f)    Attorneys' fees and court costs incurred by Plaintiff for the institution of this action and obtaining injunctive relief, including impounding the hardware containing Touhy firm data;

g)    The costs of services rendered by Forensicon for the impoundment and testing of the hardware containing Touhy firm data;

h)    Attorneys' fees, court costs, court reporter transcripts and time expended by Touhy firm personnel in litigating the Rule to Show Cause filed against Defendants in connection with the recovery of the Touhy firm Legal Match account;

i)    The revenue lost as a result of Defendants denying the Touhy firm access to its Legal Match account after May 21, 2007;

j)    The revenue lost by the Touhy firm as a result of revenue lost in connection with attorneys' fees in the cases Steven Ferko, Jules Smith, David Darwin, Christopher Manning, John Huebner and other Touhy firm clients.

22

**Plaintiff Exhibit 2_000022**

k)     Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

l)     Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

m)     Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

93.    These losses and consequential damages exceed $5,000.00. As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

94.    Touhy has no adequate remedy at law. Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions. Those actions have and will in the future continue to harm Touhy's business relationships. As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

95.    Due to overwriting, corruption or removal of media, Touhy firm data accessed or used by Ryan Stephan at the Touhy firm cannot be accessed or reviewed as these data are corrupt and indecipherable.

96.    In excess of 90% of the recovered Word, Word Perfect and text documents from these computers are indecipherable. Only a small percentage of these data are accessible and able to be reviewed.

**Plaintiff Exhibit 2_000023**

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.

Respectfully submitted,

_____
One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Attorney No.  22696

Michael O'Rourke
O'Rourke & Moody
161 N. Clark Street, Suite 2230
Chicago, IL 60601
312-849-2020
Attorney No.  44216

**Plaintiff Exhibit 2_000024**

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

TIMOTHY J. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.

**Plaintiff Exhibit 2_000025**

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

_____
DANIEL K. TOUHY

**Plaintiff Exhibit 2_000026**

**'Recent Documents' on Stephan desktop which are unavailable due to removal of storage device**

1       Amtrust potentials.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

2       Bouthner et al. v. Amtrust Mortgage Corporation was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

3       Brandon Farina was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM.

4       Brian Gagliardi was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:28 PM

5       CaseLists was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 3/20/2007 10:10 AM

6       CaseLists (2)  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:40 PM

7       ElectionForm.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 5:32 PM

8       ElectionFormCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:24 PM

9       ElectionFormChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:32 PM


PLAINTIFF'S EXHIBIT

Plaintiff Exhibit 2_000027

10      ElectionFormErlandson.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:08 PM

11      ElectionFormJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:20 PM

12      ElectionFormLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:49 PM

13      ElectionFormPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:43 PM

14      email list.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 10:47 AM

15      Email.NewContactInfo.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   3/14/2007 6:06 PM

16      FormClient Letter.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:31 PM

17      FormClient LetterCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:25 PM

18      FormClient LetterGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 4:28 PM

**Plaintiff Exhibit 2_000028**

19      FormClient LetterJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:43 PM

20      FormClient LetterLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:29 PM

21      FormClient LetterPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

22      FormClientEmail.doc  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM

23      FormClientEmailChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:12 PM

24      FormClientEmailGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:04 PM

25      FormClientEmailJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

26      FormClientEmailLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:40 PM

27      FormClientEmailPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:45 PM

28      FormCorrespondencereTransfer was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:56 PM

29      Master List of Outside Referrals.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about5/8/2007 9:41 AM

30      MasterEmailList.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about4/21/2007 9:46 AM

31      sz_busicard.pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/4/2007 10:09 AM

32      sz_busicard[1].pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/3/2007 2:58 PM

33      sz_busicardFINAL[1].pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:24 PM

34      sz_logo.gif was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/6/2007 2:58 PM

35      ._sz_letterhead.dot was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 4/4/2007 5:37 PM

**Plaintiff Exhibit 2_000030**

a) Raphael and Magdalena DeLapaz;

b) Joel Rak;

c) Scott Baldwein;

d) Ryan James;

e) James Chiapetta;

f) Eric Graf;

g) Brian Brennan

h) Raymond Barlow,

i) Thomas Little;

j) William Delaney;

k) Horafi, Inc.;

l) Leon Livergood estate;

m) Christopher Manning;

n) Juana Melendez;

o) Alicia O'Connell;

p) Charese Patton;

q) James Peterson;

r) Peter Schram;

s) Angela Stachowiak

t) Nasser Tavakoly



PLAINTIFF'S EXHIBIT 2

**Plaintiff Exhibit 2_000031**





PLAINTIFF'S
EXHIBIT
3