IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOUHY & TOUHY, Ltd.,<br>a professional corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ERIK H. LANGELAND and<br>ERIK H. LANGELAND, P.C.<br>a professional corporation,<br><br>    Defendants. | No.  08 cv 2950<br><br>Judge Holderman<br><br>Magistrate Judge Ashman |

## AMENDED COMPLAINT

### Jurisdiction

1. This court has jurisdiction under 28 USC §1332. Plaintiff is a corporation incorporated under the laws of the State of Illinois having its principal place of business in the State of Illinois. Defendant Erik H. Langeland is a citizen of the State of New York and is a corporation incorporated under the laws of the State of New York having its principal place of business in the State of New York. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

### Venue

2. Venue is proper in the Northern District of Illinois, as a substantial part of the relevant acts of fiduciary breach giving rise to these claims, as well as the damage sustained by the plaintiff, occurred in the Northern District of Illinois; a substantial part of the property and contracts involved are found in the Northern District of Illinois; and the execution and performance of relevant agreements were to occur in this judicial district.

## The Parties

3.      That at all times mentioned herein, the plaintiff, TOUHY & TOUHY, LTD. (The Touhy firm or Touhy & Touhy, Ltd.) was a professional corporation with its principal place of business in Cook County, Illinois. Its principals, Timothy J. Touhy and Daniel K. Touhy are licensed attorneys practicing law in the State of Illinois.

4.      That at all times mentioned herein, the defendant ERIK H. LANGELAND was a citizen of the State of New York and an attorney licensed in the state of New York. That at all times mentioned herein, the defendant ERIK H. LANGELAND, P.C., was a professional corporation incorporated in the state of New York with its principal place of business in New York. ("Langeland" refers to ERIK H. LANGELAND and ERIK H. LANGELAND, P.C.).

5.      Plaintiff does not allege that the combination of two or more persons in this case occurred between Erik H. Langeland, individually and Erik H. Langeland, P.C. This action is brought against Langeland for tortious conduct performed by Langeland against the plaintiff for conversion, interference with prospective economic advantage, aiding and abetting a breach of fiduciary duty, Langeland's own fiduciary breach and fraud.

6.      Stephan, Zouras and StephanZouras, LLP, who are referred to in this complaint, are not made parties to this action because they cannot be made parties without depriving this court of diversity jurisdiction. The absence of these persons will not prevent the court from providing complete relief nor impair the interests of any named or unnamed party.

7.      At all times before May 21, 2007 Erik Langeland was aware that RYAN STEPHAN (Stephan) and JAMES ZOURAS (Zouras) were employed as attorneys for the plaintiff, Touhy & Touhy, Ltd.

8. Between November 2006 through April 2007 Langeland, who had acted as co-counsel in other cases with the Touhy firm, was aware that Stephan and Zouras were agents and fiduciaries of the plaintiff, Touhy & Touhy, Ltd., and that any referral of clients or cases by them were made on behalf of their principal, Touhy & Touhy, Ltd.

9. Between 2004 to 2006 Langeland's email communications with the Touhy firm principals and its employees concerning Touhy firm cases and clients had been through the touhylawcom email addresses.

10. Between November 2006 through April 2007 Langeland was aware that any attorneys' fees generated by the referral of cases from Touhy firm employees were the property of the plaintiff, Touhy & Touhy, Ltd.

### Count I
### Interference with Prospective Economic Advantage and Fiduciary Breach
### Steven Yang

11. Plaintiff realleges paragraphs 7 to 10 as part of Count I.

12. On or about November 3, 2006 Steven Yang submitted an inquiry to the Touhy firm's website, TouhyLawcom. Langeland obtained this privileged prospective client information and Touhy firm client forms on or about November 6, 2006.

13. Langeland was aware that this prospective client contacted the Touhy firm through its website and had consulted with a Touhy firm attorney. Langeland received the sign up forms from a Touhy firm employee.

14. Langeland was aware the prospective economic relationship with the Touhy firm was created between Yang and an attorney of the Touhy firm.

15. Langeland modified the Touhy firm questionnaire by changing the name of the firm on this questionnaire from "Touhy & Touhy, Ltd." to "Erik H. Langeland, P.C." and substituting Langeland's address for the Touhy firm's address. Langeland then sent the Touhy firm questionnaire to this prospective client which document reflected the law firm as Langeland's firm rather than the Touhy firm.

16. On December 13, 2006 Langeland filed an action on behalf of this prospective Touhy firm client, *Yang et al v. New York Mortgage Company, LLC.*, No. 1:06-cv-14429, which case was filed in the U.S. District Court in New York.

17. Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Yang and was aware that this was a Touhy firm prospective client.

18. At no time between November 21, 2006 through May 21, 2007 did Langeland have the permission of the plaintiff principals to represent Yang or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals.

19. Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

20. That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

## Count II
### Interference with Prospective Economic Advantage Fiduciary Breach
### Ferko

21. On or about November 21, 2006 there was an attorney-client relationship and a valid, written contingent fee agreement for legal services between plaintiff and its client Steven Ferko which constituted a prospective economic advantage to the plaintiff.

22. Between November 2006 through April 2007 Langeland was aware of the existence of the agreement and the prospective economic advantage between the plaintiff and Ferko.

23. Langeland was aware that this client was represented by the Touhy firm and that any attorneys' fees recovered were Touhy firm property.

24. The prospective economic relationship between Ferko and the plaintiff existed in Cook County, Illinois.

25. As co-counsel with the Touhy firm on cases since 2004, Langeland owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing. At all times, Langeland was aware that any attorneys' fees recovered as a result of the representation of the Touhy firm client Steve Ferko were the property of the property of the plaintiff, Touhy & Touhy, Ltd.

26. Langeland signed an attorney-client agreement with one of the attorneys of the Touhy firm to represent Ferko, which agreement was dated February 9, 2007 and signed by Langeland on or about March 29, 2007.

27. At the time Langeland signed this contract it was his intent to pay any attorney fees recovered to himself and other attorneys, but not pay the Touhy firm.

28.     By signing this agreement, Langeland nevertheless knew that the Touhy firm was still entitled to 66% of the attorneys' fees from this client's claim.

29.     On or about April 23, 2007 Langeland received approximately $60,000 in attorneys' fees due the Touhy firm from this case and gave $40,716.16 to attorneys not parties to the contract or attorneys for the client.

30.     Langeland knew Ferko was a Touhy firm client and knew at the time he signed the contract on March 29, 2007 that the case was being settled.  Langeland had performed little or no services and had little or no communications with the Touhy firm client Ferko directly.

31.     Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

32.     That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

**Count III**
**Conversion**
**Ferko**

33.     Plaintiff alleges paragraphs 7 to 10 and paragraphs 21 to 32 as part of this Count. Langeland took control, dominion and ownership of the personal property of the plaintiff, Touhy & Touhy, Ltd.  Specifically, attorneys' fees from the Steve Ferko action in the approximate sum of $63,750.00, which Langeland deposited in his firm trust account at Green Point Bank.

34.     Langeland paid Touhy firm attorneys fees to attorneys who did not represent Ferko giving each of them a check in the amount of $20,358.08 drawn on Langeland's bank, Green Point Bank, which checks were dated April 23, 2007.  Langeland wrote these checks to Stephan and

Zouras in their names and indicated on the face of these checks that these monies were payment from the Ferko case. These monies were the property of the Touhy firm.

35. Langeland did not have permission or authorization of the Touhy firm principals to exercise ownership or control over any attorneys' fees from the Steve Ferko action and Langeland knew that the Touhy firm had not authorized disbursement of these monies at the time Langeland issued $60,000 in checks to himself and others.

36. That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

## Count IV
### Interference with Prospective Economic Advantage Fiduciary Breach
### Gerald Bouthner

37. On or about February 6, 2007 Gerald Bouthner submitted an inquiry to the Touhy firm's website, TouhyLawcom.

38. The prospective economic relationship was created between Bouthner and the plaintiffs in Cook County, Illinois.

39. Langeland was aware at that time that this prospective client contacted the Touhy firm through its website and had consulted with a Touhy firm attorney. Langeland received an email from the Touhy firm with a Touhy firm questionnaire and client agreement.

40. Langeland modified the Touhy firm class representative agreement, adding Langeland's name to the Touhy & Touhy, Ltd. agreement and having the modified agreement signed by Bouthner.

41. Langeland was aware that this client had signed an agreement with the Touhy firm.

42. Langeland, as co-counsel under this agreement and other co-counsel agreements with the Touhy firm owed a fiduciary duty to the Touhy firm of honesty, good faith and fair dealing.

43. In or about March and April 2007 Langeland filed an appearance on behalf of this prospective Touhy firm client, *Bouthner et al v. Amtrust*, which case was filed in the U.S. District Court in Georgia. Langeland concealed his actions involving Bouthner from the Touhy firm principals in violation of his fiduciary duty to the Touhy firm.

44. At no time did Langeland have the permission of the Touhy firm principals to represent Bouthner or act on behalf of the plaintiff Touhy & Touhy, Ltd., nor did Langeland disclose his involvement in this case to the Touhy firm principals or disclose that he had signed an agreement with Bouthner or signed a co-counsel agreement with counsel in Georgia.

45. Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

46. That as a direct and proximate result of one or more of the foregoing acts of Langeland as set forth in this Count, the plaintiff was deprived of its property and right to monies and otherwise injured as described herein.

**Count V**
**Langeland's Fraud and Fiduciary Breach while Fiduciary of the Touhy Firm**

47. Plaintiff realleges paragraphs 7 to 10 and Counts I to IV as part of Count V. Langeland had acted as co-counsel in other cases with the Touhy firm from 2004 to May 21, 2007 pursuant to written co-counsel agreements or as c-counsel in which the Touhy firm and Langeland represented clients jointly. Among these cases were *Casale v. Provident Bank and*

8

*Home 1-2-3 Corporation*, No. 04-2006; *Armstrong v. Weichert*, 05-cv-3120; *Billman v. National City Bank*, 1:06cv138, and *Chemi v. Champion Mortgage*, No. 2:05-cv-238.  The existence of these fiduciary relationships imposed a duty on Langeland to disclose any self-dealings and disclose any misconduct by the Touhy firm's employees, division of attorneys' fees from Touhy firm cases, or Langeland's own fiduciary breaches to the Touhy firm principals.

48.     The Touhy firm principals did not possess information sufficient to determine Langeland's participation in Touhy firm cases involving Ferko, Yang, and Bouthner.  This lack of knowledge of the Touhy firm principals was due in large part to Langeland's own actions in concealing these cases from the Touhy firm as described in Counts I to V.

49.     Langeland actively concealed from the Touhy firm principals communications he was having concerning these cases by using his Yahoo email address, not disclosing that he had executed a co-counsel, client agreement and appearance in Bouthner, and converted the Ferko attorneys' fees as described in Counts II, III and IV.

50.     Between November 2006 and April 2007 Langeland intended to take monies from the Ferko settlement proceeds and conceal this fact from the Touhy firm.

51.     During this period Langeland was negotiating a settlement in Steve Ferko's case and withholding this information from the Touhy firm principals.

52.     Langeland also concealed other cases involving Equity One, case materials from Yang v. NYMC, Shabazz v Morgan Funding, Marc Borowsky v. IBM and Steven Ferko.

53.     Langeland's actions misleading the Touhy firm principals included:

A.  In July and August 2007 told the Touhy firm principals that he believed the Ferko attorneys' fees were the property of the Touhy firm although Langeland had already disbursed

9

money to himself and attorneys other than the Touhy firm.

B. In July and August 2007 told the Touhy firm principals that he had not executed any agreement involving Gerald Bouthner, when, in fact, Langeland had executed an agreement on March 14, 2007,

C. Did not disclose to the Touhy firm principals that he had drafted or approved an agreement in which the attorneys' fees from Ferko would be paid directly to Langeland.

D. At no time did he disclose to the Touhy firm principals that he had filed an action on behalf of Steven Yang or that he knew Yang was a Touhy firm website inquiry and prospective firm client.

E. Did not disclose to the Touhy firm principals that in December 2006 he had changed Touhy firm forms which Steven Yang completed and returned to Langeland for the purpose of Langeland representing Yang.

F. In July and August 2007 withheld information from the Touhy firm principals that he had executed an agreement on March 29, 2007 in which Langeland was to receive 33% from Ferko.

G. At no time did Langeland disclose to the plaintiff's principals that he had reduced the amount of recoverable fees owed the Touhy firm in Ferko by at least $15,000 or have its permission to do so.

H. At no time did Langeland disclose to the Touhy firm principals that he had received or sent a demand letter on Ferko

54. It was Langeland's intent, by these acts of concealment, misrepresentations or omissions by silence by him to prevent the Touhy firm principals from learning of the acts of

fiduciary breach described herein.

55. The Touhy firm and its principals relied on Langeland's statements and omissions and therefore took no action to recoup the Ferko attorneys' fees or take action to prevent the continuing fiduciary breaches of Langeland.

56. The Touhy firm and its principals relied on Langeland's acts of concealment, misrepresentations and omissions by silence in connection with the cases and conduct described in this complaint to their detriment, thereby sustaining damage based on such reliance as set forth herein.

57. As a direct and proximate result of Langeland's misrepresentations, actions and omissions the Touhy firm has incurred loss revenue and damages, including attorneys' fees recovered or generated by IBM, Ferko, Borowsky, Shabazz, Yang, Bouthner, H&R Block and other cases or prospective clients, revenue and goodwill lost by the Touhy.

58. Langeland's pecuniary gain was a significant motive for the solicitation of the plaintiff's client and his actions aforesaid.

59. That all of the acts of Langeland aforesaid were committed without lawful justification or consent of the plaintiff and were committed knowingly, intentionally and with the malicious intent to convert the property of the plaintiff to his own use, permanently deprive the plaintiff of its property, prospective clients and honest services of its employees.

WHEREFORE, the plaintiffs demand judgment under Counts I through V against the defendants, ERIK H. LANGELAND and ERIK H. LANGELAND, P.C., jointly and severally, for compensatory and punitive damages and costs of this suit.

**Jury Demand**

Plaintiff demands a trial by jury of any issue triable of right by a jury by filing this demand which is indorsed upon the plaintiff's complaint.

Date:   June 26, 2008                                        Respectfully submitted,


                                                             /s/E. Steven Yonover
                                                             E. Steven Yonover
                                                             55 West Wacker Drive
                                                             14th Floor
                                                             Chicago, Illinois 60601
                                                             (312) 236-9493
                                                             (847) 205-0022

                                                             Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

      I, the undersigned, certify that a copy of the foregoing **AMENDED COMPLAINT** was served on the following individuals, via electronic mail and/or ordinary U.S. mail, postage prepaid, this 26th day of June, 2008.

Kimberly E. Rients Blair
Tyler Mertes
Gordon & Rees, LLP
1 North Franklin Street, 1800
Chicago, Illinois 60606

                              /s/E. Steven Yonover
                              E. Steven Yonover
                              One of the Attorneys for Plaintiff

E. Steven Yonover
55 West Wacker Drive
14th Floor
Chicago, Illinois 60601
(312) 236-9493
(847) 205-0022