**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOUHY & TOUHY, Ltd., a professional corporation, | ) ) ) ) |
| Plaintiff, | ) Case No.  08 CV 2950 ) |
| vs. | ) Judge Holderman ) |
| ERIK H. LANGELAND and ERIK H. LANGLAND, P.C. a professional corporation, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Erik H. Langeland and Erik H. Langeland, P.C., by and through their undersigned attorneys, for their Memorandum in Support of The Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(7) and 12(b)(1), state as follows:

**I.      INTRODUCTION**

Plaintiff's Amended Complaint is an attempt to plead around the obvious absence of indispensable parties to this Action.  Plaintiff's original complaint was fraught with allegations that this matter against Erik Langeland arises out of the lawsuit filed by Touhy & Touhy, Ltd. against Ryan Stephan and James Zouras, former attorneys of Touhy & Touhy, and their current firm StephanZouras, LLP in The Circuit Court of Cook County, Illinois in the case captioned *Touhy & Touhy, Ltd. v. Ryan Stephan, et al.*, Case No. 2007 CH 013552 (the "Cook County Action").  Specifically, as outlined in Paragraphs 8 through 13 of the original Complaint in this action, Touhy & Touhy alleged that Stephan and Zouras were former attorneys with Touhy & Touhy who allegedly "hatched a plan to stay employed with the Touhy firm while they set up their new law firm, using the Touhy firm's resources and confidential data to solicit the Touhy firm's current and prospective clients, all for the benefit of their new law firm, StephanZouras, LLP… [and] secretly solicited and represented clients, purportedly on behalf of the Touhy firm

but without the Touhy firm principals' knowledge or authorization." *See* Compl. at ¶11. As specifically noted in the Complaint, these allegations form the basis, *inter alia*, of Touhy & Touhy's claims in the Cook County Action.

In response to Mr. Langeland's first Motion to Dismiss, Plaintiff alleged that Stephan and Zouras were not indispensable parties to this litigation because Plaintiff's were asserting separate torts by Mr. Langeland unconnected to the alleged liability of Messrs. Stephan and Zouras. The Court disagreed but allowed Plaintiff the opportunity to re-plead its complaint to the extent it had independent counts against Langeland. Plaintiff's filed its Amended Complaint simply omitting specific references to Messrs. Stephan and Zouras, without changing any of the alleged causes of action against Mr. Langeland. The vague references to Messrs. Stephan and Zouras as "a Touhy firm employee" or "a Touhy firm attorney" does not diminish the need for Stephan an Zouras in this litigation. In short, despite the attempt to rectify the problems with the failure to join indispensable parties, the Amended Complaint continues to rely on the alleged wrongful conduct of Stephan and Zouras.

For example, Paragraph 5 of the Amended Complaint continues to assert that "This action is brought against Langland (*sic*) for tortious conduct performed by Langeland against the plaintiff for conversion, interference with prospective economic advantage, aiding and abetting a breach of fiduciary duty, Langeland's own fiduciary breach of and fraud." These causes of action as against Langeland, cannot be determined without the presence of Stephan and Zouras and to do so would be highly prejudicial to Langeland. For example, to find Langeland liable for aiding and abetting Stephan and Zouras' breach of fiduciary duty without first determining whether Stephan and/or Zouras in fact breach any duty would be inequitable. For those reasons, this Court should dismiss Plaintiff's Action pursuant to FRCP 12(b)(7).

In addition, Plaintiff complains of Mr. Langeland's conduct with respect to three lawsuits for which the Touhy firm claims it has been damaged. The amount in controversy as a result of

those fee arrangements, however, does not reach the $75,000 jurisdictional demand. *See* affidavit of Erik Langeland attached hereto as Exhibit A.

## II.     **FACTUAL BACKGROUND**

The Amended Complaint asserts that on and before May 21, 2007 Stephan and Zouras were employed as attorneys with Touhy & Touhy, Ltd. *See* Amend. Compl. at ¶7. Touhy & Touhy accuses Langeland of becoming involved with respect three clients -- Steven Yang, Steven Ferko and Gerald Bouthner. *See* Amend. Compl. at ¶¶11-46. With respect to the allegations concerning Steven Yang, the Amended Complaint alleges that Langeland filed an action in New York on behalf of Mr. Yang after being sent the file and/or client contact by "a Touhy firm attorney." *See* Amend. Compl. at ¶¶13-16. Touhy & Touhy admits that Langeland acted as co-counsel in other cases with the Touhy firm. *See* Amend. Compl. at ¶47. But Touhy & Touhy asserts that, despite being sent the file by "a Touhy firm attorney," Langeland did not have permission of the Touhy & Touhy principals to act on behalf of Touhy & Touhy and did not disclose his involvement in the Yang case to the Touhy firm principals. *See* Compl. at ¶18. The Yang case has not settled and no attorney fees have been paid to Mr. Langeland or any other attorney for Yang. *See* Langeland Aff. at ¶2. Thus, Plaintiff is yet to suffer any harm and may not suffer any harm as a result of the conduct in the Yang matter.

With respect to the allegations concerning Steven Ferko, the Amended Complaint alleges that Langeland "signed an attorney-client agreement with one of the attorneys of the Touhy firm to represent Ferko." *See* Amend. Compl. at ¶24-25. It further alleges that Langeland failed to pay the money in accordance with the agreement by paying funds directly to "attorneys not parties to the contract or attorneys for the client." *See* Amend. Compl. at ¶29.

With respect to the allegations concerning Gerald Bouthner, the Amended Complaint alleges that Bouthner contacted the Touhy firm and "Langeland received an email from the Touhy firm with a Touhy questionnaire and client agreement." *See* Amend. Compl. ¶ 39. The Amended Complaint further asserts that Langeland was designated co-counsel under the agreement with the Touhy firm. *See* Amend. Compl. ¶ 42. It alleges that Langeland, despite

3

being co-counsel for Bouthner under an agreement with the Touhy firm, did not have permission of the Touhy firm principals to represent Bouthner or act on behalf of Touhy & Touhy. *See* Amend. Compl. at ¶44. The Bouthner case, moreover, resulted in $0 being paid to the attorneys and therefore the Touhy firm did not suffer damages as a result of any of the alleged conduct of Langeland. *See* Langeland Aff. At ¶4.

The Amended Complaint cannot be analyzed in a vacuum. As noted by the initial Complaint and the exhibits attached thereto, Touhy & Touhy is engaged in heated litigation against Stephan and Zouras in Cook County stemming from allegations by Touhy & Touhy that Stephan and Zouras schemed to establish a new firm and solicit Touhy clients. *See* Cook County Verified Complaint at ¶7, attached hereto as Exhibit B. The Cook County Court has prohibited Touhy & Touhy from issuing subpoenas in that case, because of discovery abuses, which may explain why it has brought this case against Langeland.[1]

The Cook County Verified Complaint also contains a multitude of allegations regarding the three lawsuits at issue in this litigation, namely Yang, Bouthner and Ferko. This litigation seeks to hold Mr. Langeland responsible for the alleged conduct of Stephan and Zouras as set forth in the Cook County Verified Complaint. Specifically, the Cook County Verified Complaint contains the following allegations regarding the Bouthner case:

> 8.    While employed by Touhy, Defendants Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of Touhy but without Touhy's knowledge or authorization. For example, on April 27, 2007, both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp*, 07 CV 0566, in Federal Court in the North District of Georgia in their own *and Touhy's name*. In doing so, they bypassed Firm procedures that require all cases in which the Firm is representing a client  to be promptly into the Firm's computer system and assigned a matter number. Defendants Stephan and Zouras also failed to follow Firm procedures that require attorneys opening new maters to prepare Firm paper files and to docket the case on the Firm's computer calendar system, so that the Firm can monitor its cases.

*See* Cook County Verified Complaint at ¶8. However, the Amended Complaint in this litigation

---

[1]    On July 20, 2007 and July 25, 2007, Judge Pantle entered orders in the Cook County Action prohibiting the parties from taking discovery of third parties without leave of court. A copy of the orders are attached as Exhibit E.

seeks to hold Mr. Langeland responsible for his representation of Bouthner in conjunction with the Touhy firm, even though the verified allegations of the Cook County action state that Stephan and Zouras represented Bouthner without Touhy's knowledge.

Similarly, the Cook County Verified Complaint contains allegations regarding Stephan and Zouras's wrongful conduct in connection with the Ferko case. Specifically, the Cook County Verified Complaint states:

> 10. On information and belief, Defendants Stephan and Zouras were introduced to the clients and prospective clients that they have secretly solicited by virtue of their employment with Touhy. For example, on October 1, 2006, a prospective client named Stephen Ferko filled out a Firm new client intake form. Mr. Ferko subsequently executed a Firm "Client Representation Agreement', wherein he agreed to be represented by Touhy in a dispute with his employer, and sent this form to Defendant Stephan. A new matter for Mr. Ferko was never opened up on the Firm's system, nor was a paper file created or the matter docketed with the Firm.

*See* Cook County Verified Complaint at ¶10. Again, despite the verified allegations against Stephan and Zouras that those employees circumvented the Touhy procedures and committed wrongful acts with respect to the Ferko case, this litigation seeks to hold Mr. Langeland responsible for his representation of Ferko in conjunction with the Touhy firm.

Importantly, Plaintiff's Verified Third Amended Count III (Corrected), attached hereto as Exhibit C, contains fourteen paragraphs of allegations relating to email communications between Stephen and/or Zouras and Erik Langeland with respect to Mr. Langeland's representations of "Touhy" clients, , which Stephan and Zouras allegedly never communicated to Touhy & Touhy. The Amended Complaint in this litigation seeks to hold Erik Langeland responsible for the alleged breaches of fiduciary duty of Stephan and Zouras as a result of their alleged concealment of information from the Touhy Firm.

It should also be noted that Stephan and Zouras filed a Verified Counterclaim against Touhy & Touhy seeking a determination, *inter alia*, that Touhy & Touhy acted in bad faith in their failure to pay Stephan and Zouras while employees of Touhy & Touhy in connection with some of the matters referenced in the Amended Complaint herein. *See* copies of the Verified

Counterclaim and Verified Amended Counterclaim attached hereto as Exhibit D. Thus, if Stephan and Zouras are successful in their counterclaims against Touhy & Touhy and/or successfully defend against the claims of Touhy & Touhy in the Cook County Action, the Touhy firm's claims against Erik Langeland will not be actionable.

In short, Plaintiff is seeking to hold Langeland responsible for tortious interference with economic advantage and breach of fiduciary duty based solely on the alleged wrongful acts of Stephan and Zouras in circumventing their employer. Moreover, if Stephan and Zouras are successful in the Cook County Action, it is difficult to understand how Mr. Langeland could have breached any fiduciary duties, interfered with economic advantage or converted any alleged sums if Messrs. Stephan and Zouras are not found to have engaged in any wrongful conduct. As such, Stephan and Zouras are necessary, indispensable parties to this action. It is therefore necessary that the claims against Stephan and Zouras be resolved before and/or in conjunction with the claims asserted against Langeland herein.

## III.  ARGUMENT

### A.  This Case Should Be Dismissed Pursuant to FRCP 19 for Failure to Join the Indispensable Parties of Stephan and Zouras.

Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether a missing party is necessary within the meaning of FRCP 19. *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir.1999). A review of the factual allegations of this Complaint and the allegations of the verified complaints in the Cook County reveal that Stephan and Zouras are indispensable parties under FRCP 19.

Pursuant to FRCP19, a court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. See Fed.R.Civ.P. 12(b)(7); *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123-24 (2d Cir.1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a)(1) provides, in relevant part:

A person who is subject to service of process and whose joinder will not deprive

the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a).

If a party is necessary, but joinder would divest the court of jurisdiction, the court must consider whether dismissal is warranted under Rule 19(b), that is, whether the suit can proceed "in equity and good conscience" without the necessary party. See Fed.R.Civ.P. 19(b); *Assoc. Dry Goods, 920 F.2d at 1124*. In determining whether a party is indispensable, a court should consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b); *see Seneca Nation of Indians v. New York*, 383 F.3d 45, 48 (2d Cir.2004). The party moving for dismissal for failure to join an indispensable party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 494 (S.D.N.Y.2002) (*quoting Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir.1994)).

Touhy & Touhy assert Stephan, Zouras and Stephan Zouras, LLP "are not made parties to this action because they cannot be made parties without depriving this court of jurisdiction." *See* Amend. Compl. at ¶5. The Complaint also erroneously contends that the "absence of these persons will not prevent the court from providing complete relief nor impair the interest of any named or unnamed party." *See* Amend. Compl. at ¶6. Quite the contrary, a judgment entered in this action without the presence of Stephan and Zouras and Stephen will be highly prejudicial to Langeland. Stephan and Zouras, moreover, would in essence be tried *in absentia*.

The Amended Complaint continues to seek a determination that Mr. Langeland aided and abetted Stephan and Zouras' breach of fiduciary duty. *See* Amend. Compl. at ¶5. A finding that Mr. Langeland aided and abetted Stephan and Zouras's breach of fiduciary duty without a finding that Stephan and Zouras breached their fiduciary duty will be prejudicial to Langeland. Similarly, a judgment against Langeland for tortious interference with prospective economic advantage would be prejudicial without the presence of Stephan and Zouras because it has not been established that Stephan and Zouras interfered in any way with their (former) employer's business. Any judgment without the presence of Stephan and Zouras as defendants will be inadequate and will force Mr. Langeland to present proof of Mr. Zouras and Mr. Stephan's conduct without the benefit of those alleged tortfeasors as co-defendants in the litigation.

The Cook County Verified Complaints, attached hereto as Exhibits B and C, establish that Touhy & Touhy has asserted all necessary allegations against Stephan and Zouras in the Cook County Action that are needed to fully and completely adjudicate claims against Langeland. Moreover, as described above, all three of the transactions at issue, Yang, Ferko and Bouthner, are also at issue in the Cook County Complaint. In anticipation of Touhy & Touhy's argument that it will have no adequate remedy if the matter is dismissed, it is worth noting that the Cook County Action has been on file for more than a year and no attempts were made to join Langeland in that action.

Simply put, under FRCP 19 Touhy & Touhy cannot proceed against Langeland in the absence of the necessary and indispensable parties of Stephan and Zouras. The Amended Complaint in Paragraph 5 acknowledges the relevance and necessity of Stephan and Zouras to the resolution of the claim. The prejudice that will be caused to Langeland by forcing him to proceed and defending against claims without the presence of the parties alleged to have breached that duty far outweighs the Plaintiff's preference for federal court. As such, the matter should be dismissed pursuant to FRCP 12(b)(7) for failure to join necessary and indispensable parties pursuant to FRCP Rule 19(b).

**B.    The Damages Allegedly at Issue Fail to Meet the $75,000 Jurisdictional Required Amount.**

Plaintiff seeks damages against Erik Langeland as a result of his alleged wrongful conduct in connection with three lawsuits in which he allegedly acted as co-counsel with the Touhy firm – *Yang, et al. v. New York Mortgage Company, LLC*, 1:06-CV-14429 in the U.S. District Court in New York; *Bouthner v. Amtrust Mortgage Corp.,* 97 CV 0566 in the U.S. District Court for the Northern District of Georgia; and the Ferko matter.

As established by the affidavit of Erik Langeland attached hereto as Exhibit A, the Yang case has not resulted in a judgment and thus the Touhy firm is not damaged from a failure to pay the Touhy firm. In addition, the Bouthner case has been dismissed because the defendant is insolvent, resulting in the recovery of $0. Thus, the Touhy firm is not entitled to anything. Last, the only specific damages alleged in the Amended Complaint are the alleged wrongfully paid the $40,716.16 allegedly due to the Touhy firm that Mr. Langeland allegedly paid directly to Stephan and Zouras. This amount has purportedly been paid to the Touhy's by Stephan and Zouras in the Cook County litigation. Even assuming that Plaintiff has not recovered the $40,716.16 in that action, Plaintiff has failed to meet the jurisdictional minimum. Therefore, pursuant to FRCP 12(b)(1), this Court should dismiss Plaintiff's complaint.

In response to a Rule 12(b)(1) motion, the Plaintiff is required to establish the amount in controversy with competent proof-i.e., "proof to a reasonable probability that jurisdiction exists." *See, e.g., Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir.2001). Absent a controlling ad damnum clause in a complaint, the plaintiff must show by a preponderance of the evidence that the stakes are at least $75,000. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, (1936) ("[W]here [jurisdictional facts] are not ... challenged, the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence."); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

While it is unclear whether the Plaintiff suffered any damages as a result of Mr. Langeland's conduct in connection with the Yang, Bouthner and Ferko matters, Plaintiff's prayer for punitive damages does not insulate it from a 12(b)(1) motion to dismiss. *See Anthony v. Security Pacific Financial Serv., Inc.*, 75 F.3d 311, 315 (7th Cir.1996) ("[w]hen a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely."). Because Plaintiff is not damaged by the alleged conduct of Mr. Langeland, its anticipated claim of punitive damages to meet the jurisdictional amount should not foreclose dismissal.

## III.    **CONCLUSION**

WHEREFORE, Defendants Erik H. Langeland and Erik H. Langeland, P.C. respectfully request that this Court dismiss this action with prejudice under FRCP 12(b)(7) and FRCP 12(b)(1) and provide any other relief to the Defendants this Court deems necessary.

Respectfully submitted,

By: _____
Attorneys for Defendants
ERIK H. LANGELAND and ERIK H.
LANGELAND, P.C.


Kimberly E. Rients Blair
Gordon & Rees LLP
One North Franklin
Suite 1800
Chicago, Illinois  60606
(312) 565-1400

EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| TOUHY & TOUHY, Ltd., a professional corporation, | ) ) ) |
| Plaintiff, | ) ) Case No. 08 CV 2950 |
| vs. | ) ) Judge Holderman |
| ERIK H. LANGELAND and ERIK H. LANGLAND, P.C. a professional corporation, | ) ) ) |
| Defendants. | ) ) |

## AFFIDAVIT OF ERIK H. LANGELAND

I, Erik H. Langeland, after being duly sworn state as follows:

1.    My name is Erik H. Langeland and I am an attorney licensed to practice in the States of New York and Massachusetts and I am the principal of Erik H. Langeland, P.C.

2.    I am an attorney representing the Plaintiff in the action captioned *Yang, et al. v. New York Mortgage Company, LLC*, Case No. 1:06-cv-14429 pending in the United States District Court for the Northern District of New York (the "Yang Action"). To date, no final settlement or judgment has been entered in the Yang Action and no attorneys' fees have been paid in connection with the Yang Action.

3.    I was an attorney representing Stephen Ferko in his action against Equity One. The Ferko case settled resulting in an attorney fee of $63,750. From that amount, I paid Ryan Stephan and James Zouras $40,716.16.

4.    I was an attorney representing Gerald Bouthner in the case captioned *Bouthner, et al. v. Amtrust*, in the United States District Court for the Northern District of Georgia. The Bouthner case was dismissed with no payment to the class and no attorney fees being paid as the defendant is insolvent.

Erik H. Langeland

Subscribed and sworn to before me this
10th day of July, 2008.

Notary Public

MARIA BIELESZ
Notary Public, State of New York
No. 02BI5023021
Qualified in New York County
Commission Expires January 24, 20 12

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION
INJUNCTION/TEMPORARY RESTRAINING ORDER

| | | |
|---|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) ) ) | **07CH13552** |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) ) ) ) | |
| Defendants. | ) ) | Jury |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff, Touhy and Touhy, Ltd. ("Touhy" or the "Firm"), by its undersigned attorneys, with this action for injunctive and other relief against Defendants Ryan F. Stephan, James B. Zouras, and Stephan & Zouras, LLP ("S&Z"), and in support thereof, alleges as follows:

### THE PARTIES

1.    Plaintiff Touhy is an Illinois Professional Corporation engaged in the practice of law in Illinois. One of Touhy's specialties is representing plaintiffs in class action and collective action matters. The shareholders of Touhy and Touhy Ltd. are Timothy Touhy and Daniel Touhy. Touhy's offices are located at 161 North Clark, Suite 2210, Chicago, Illinois, 60601.

2.    Defendants Stephan and Zouras are licensed Illinois attorneys employed full-time by Touhy to practice law on behalf of Touhy, for which they receive salaries from the Firm.

Stephan currently resides at 1701 N. Damen, Unit #304, Chicago, and has worked for the Firm for approximately four years. Zouras currently resides at 431 S. Dearborn, Unit 1001, Chicago and has worked for the Firm for approximately ten years.

3.    Defendant S&Z is an Illinois limited liability partnership formed on March 14, 2007 for the purpose of practicing law, with offices at 205 North Michigan Ave, Chicago, and with a registered agent at 431 S. Dearborn, Unit 1001, Chicago. On information and belief, since the formation of S&Z, Defendants Stephan and Zouras have been partners and agents of S&Z, acting on their own behalf and on S&Z's behalf with respect to the action alleged herein.

## VENUE

4.    Venue is proper in this Circuit pursuant to 735 ILCS 5/2-101 because the transactions out of which these causes of action arose occurred in Cook County.

5.    Venue is proper in Chancery Court because Plaintiff Touhy seeks injunctive relief.

## DEFENDANTS' SURREPTITIOUS ACTIVITIES
## AND THEFT OF CONFIDENTIAL DATA

6.    At some point in the past several months, Defendants Stephan and Zouras decided to leave Touhy's employment and start their own law firm. In furtherance of these intentions, Stephan and Zouras established Defendant S&Z to compete with Touhy.

7.    After deciding to leave the employment of Touhy, Defendants Stephan and Zouras hatched a plan to stay employed with Touhy while they set up their new law firm, in order to use Touhy's resources and confidential data and solicit Touhy's current and prospective clients, all for the benefit of their new law practice, S&Z.

8.    While employed by Touhy, Defendants Stephan and Zouras secretly solicited and represented clients, purportedly on behalf of Touhy but without Touhy's knowledge or

2

authorization. For example, on April 27, 2007, both Stephan and Zouras filed papers in the matter of *Bouthner v. Amtrust Mortgage Corp.*, 07 CV 0566, in Federal Court in the Northern District of Georgia, in their own *and Touhy's name*. In doing so, they bypassed Firm procedures that require all cases in which the Firm is representing a client to be entered promptly into the Firm's computer system and assigned a matter number. Defendants Stephan and Zouras also failed to follow Firm procedures that require attorneys opening new matters to prepare Firm paper files and to docket the case on the Firm's computer calendar system, so that the Firm can monitor its cases.

9.    Dan Touhy recently learned about the Defendants' illicit representation of Bouthner when the Firm received correspondence from the clerk of the court of the Northern District of Georgia stating that the Defendants motions for admission *pro hac vice* had been granted. Upon receipt of the unauthorized filings, Dan Touhy asked Defendant Zouras if he had heard of the "Bouthner" case; Defendant Zouras stated that he had not, in an attempt to conceal his surreptitious representation of Bouthner.

10.    On information and belief, Defendants Stephan and Zouras were introduced to the clients and prospective clients that they have secretly solicited by virtue of their employment with Touhy. For example, on October 1, 2006, a prospective client named Stephen Ferko filled out a Firm new client intake form. Mr. Ferko subsequently executed a Firm "Client Representation Agreement", wherein he agreed to be represented by Touhy in a dispute with his employer, and sent this form to Defendant Stephan. A new matter for Mr. Ferko was never opened up on the Firm's system, nor was a paper file created or the matter docketed with the Firm.

11.    Touhy's financial data is kept in a Quicken software program on the Firm's server. Access to this confidential data is limited to shareholders Tim Touhy, Dan Touhy, and Dan's secretary, Sandy Robinson.   On or about April 12, 2007, Defendant Zouras obtained the password to access Touhy's secure client financial accounts on its computer system from Ms. Robinson and instructions on how to print "cost and expense" reports from the Firm accounts. Zouras obtained this information on the pretense that he wanted to print the cost and expense report for the "Michaels v. Dynaprop" case, a matter that Zouras was working on for the Firm. Because Defendant Zouras made the request at the end of the day as Ms. Robinson was exiting the offices she gave him the password for the limited purpose of printing the Michaels cost and expense report.

12.    Mr. Zouras violated Ms. Robinson's trust and used this password to print out confidential client expense data for at least 10 matters that Touhy attorneys, including Defendants Stephan and Zouras, have been working on.  He did so without authorization from either the Firm or the respective clients.  He did not print out the Michael's cost and expense report.

13.    As evidenced above, for the past several months Defendants Stephan and Zouras, while employed by Touhy, have used Touhy resources and confidential information to compete directly with Touhy.   Touhy only recently discovered the Defendants' duplicity, and its investigation continues; the Firm anticipates finding numerous other examples of the Defendants misappropriating Firm resources to solicit Firm clients and compete directly with the Firm, all while Defendants Stephan and Zouras were employed by the Firm and drawing a salary from the Firm.

14.    Touhy is in the process of investigating the Defendants' malfeasance. The Firm recently retained an IT consultant to conduct a forensic analysis of the Firm's computers and server to determine the extent of the Defendants' misappropriation of the Firm's and its client's confidential data, and to secure the data on the computers against further theft.

15.    The IT consultant has found that, between May 15 and May 21, 2007, Defendants Zouras and Stephan downloaded onto separate and removable storage discs or external hard drives thousands of documents belonging to the Firm, including but not limited to case files, excel spread sheets with client names, addresses and emails, office forms, pleadings and correspondence in cases, co-counsel names and addresses and numerous other documents in the Firm's possession.    Upon information and belief, Zouras and Stephan have taken this information and secreted it at their homes or the offices of S&Z.

16.    Defendants Stephan and Zouras have never informed Touhy of their intention to leave Touhy's employment. Touhy only learned of these intentions recently, when the Defendants improper actions described above came to light.

<div align="center">

**COUNT I**
**Breach of Fiduciary Duty**
**(Against Stephan and Zouras)**

</div>

17.    Plaintiff Touhy, as and for paragraph 17 of Count I, re-allege paragraphs 1-16 as though fully set forth herein.

18.    As part of their responsibilities as attorneys employed by Touhy, Defendants Stephan and Zouras solicit and represent clients on behalf of and jointly with Touhy, and owe Touhy a fiduciary duty of loyalty and good faith.

19.    As described more fully above, Defendants Stephan and Zouras breached their fiduciary duties by soliciting for their own benefit and the benefit of Defendant S&Z current and

<div align="center">5</div>

prospective Touhy clients with the intent of establishing an attorney-client relationship and then bringing these clients with them to S&Z.

20.    As described more fully above, Defendants breached their fiduciary duty by using Touhy's name and resources in their solicitation of Touhy clients, without informing Touhy of their actions or obtaining authorization for their actions.

21.    As described more fully above, Defendants Stephan and Zouras further breached their fiduciary duties toward Touhy by taking confidential data from Touhy, with the intent of assisting their efforts to bring Touhy clients with them to S&Z.

22.    Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

23.    Defendants Stephan and Zouras, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained in breach of their fiduciary duties.

24.    For the reasons stated above, there is a likelihood that Touhy will prevail on the merits of this action.

25.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted. No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

26.    The granting of an injunction will not disserve the public interest. Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

B.     Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from withdrawing transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

C.     Entry of a Preliminary Injunction and, upon final disposition, entry of a Permanent Injunction, against Defendants, directing that they turnover all property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information and confidential Firm information and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computers and server;

D.     That a judgment be entered in favor of Touhy, and against Defendants, for compensatory damages in an amount to be proved at trial;

E.     That a judgment be entered in favor of Plaintiff, and against Defendants for punitive damages in an amount to be proved at trial;

F.     Such other and additional relief as this Court may deem appropriate.

**COUNT II**
**Tortious Interference with Prospective Business Advantage**
**(All Defendants)**

27.     Plaintiff Touhy, as and for paragraph 27 of Count II, re-allege paragraphs 1-16 as though fully set forth herein.

28.     Plaintiff Touhy had a valid business expectancy of representing the clients that Defendants are now secretly representing and/or soliciting.

29.     As described more fully above, Defendants have purposefully interfered with that expectancy by soliciting and representing these clients with the intent to bring them to S&Z.

30.     Defendants have not resigned from Touhy, and are currently employed by Touhy, and have had no legal right to interfere with Touhy's business expectation.

31.     Touhy has been and continues to be injured by these actions, the full extent of which is presently unknown but which includes the loss of current and prospective clients and confidential client and Firm information.

32.     Defendants, unless enjoined, will continue to engage in the conduct that is alleged herein, including but not limited to using the confidential client and Firm information they obtained by interfering with Touhy's valid business expectation.

33.     Based on the above, there is a likelihood that Touhy will prevail on the merits of this action

34.     Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No legitimate injury to Defendants would result from an order requiring them to comport their actions with the law.

35.     The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would deter others from engaging in this kind of outrageous conduct.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy, respectfully requests that the Court grant the following relief:

A.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

B.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, against Defendants, enjoining him from withdrawing transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

C.    Entry of a Preliminary Injunction and, upon final disposition, entry of a Permanent Injunction, against Defendants, directing that they turnover all property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, confidential client and Firm information and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computers and server;

D.    That a judgment be entered in favor of Touhy, and against Defendants, for compensatory damages in an amount to be proved at trial;

E.    That a judgment be entered in favor of Plaintiff, and against Defendants for punitive damages in an amount to be proved at trial;

F.    Such other and additional relief as this Court may deem appropriate.

## COUNT III
## Violation of the Computer Fraud and Abuse Act
## (All Defendants)

36.     Plaintiff Touhy, as and for paragraph 36 of Count III, re-allege paragraphs 1- 16 as though fully set forth herein.

37.     At all times relevant to this Complaint, there was in existence a certain statute, to-wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*    The CFAA provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …

> 18 U.S.C. §1030 (a)(5)(A)(iii).

> by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
> 18 U.S.C. § 1030 (a)(5)(B).

> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;…
> 18 U.S.C. §1030 (a)(5)(B)(i).

> shall be punished as provided in subsection (c) of this section.

> 18 U.S.C. § 1030 (a)

> the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
> 18 U.S.C. §1030 (e)(1).

> the term "protected computer" means…a computer which is used in interstate or foreign commerce or communication….
> 18 U.S.C. §1030(e)(2)(B).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.
18 U.S.C. §1030(g) (emphasis added).

38.    Touhy's computers and Quicken electronic files contain data regarding clients and pending cases throughout the United States, and the use or misuse of this data affects interstate commerce. Touhy's computers are also used for e-mal communications throughout the United States.

39.    Defendants intentionally accessed Touhy's computers and confidential client and Firm information that is a protected computer as that term is defined by the CFAA.

40.    Defendants' conduct had forced Touhy to quarantine its computers and hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants and establish new security for the computers, which has impaired Touhy's ability to use its computers and cost Touhy more than $5,000.

41.    At the time of the filing of this complaint, Defendants have used and continue to wrongfully use the confidential client and Firm information from the computer system of Touhy (their present employer) to compete with Touhy.

42.    As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief.

43.    Touhy has no adequate remedy at law. Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered

11

as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

44.    By his continuing conduct, Defendants have demonstrated his willingness to continue to engage in acts that violate the CFAA.  The injury to Touhy is immediate and irreparable.

45.    Defendants, unless restrained, will continue to engage in conduct that is alleged herein.

46.    For the reasons described above, there is a likelihood that Touhy will prevail on the merits of this action.

47.    Should this Court grant injunctive relief to Touhy, the burden on Defendants would be slight compared to the injury to Touhy if it were not granted.  No injury to Defendants would result from an order requiring them to comport his actions with the law.

48.    The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would accomplish the objectives of the CFAA.

WHEREFORE, for all the foregoing reasons, Plaintiff Touhy respectfully requests that this Court grant the following relief:

A.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from engaging in acts and practices in violation of the CFAA;

B.    Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants,

enjoining them from destroying or disposing of any books, records or accounts or of any property, whether real, personal or mixed, owned by Touhy or in which Touhy has an interest;

C.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, enjoining them from withdrawing, transferring or disposing of any property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest;

D.      Entry of a Preliminary Injunction, and, upon final disposition, entry of a Permanent Injunction, pursuant to Section (g) of the CFAA, against Defendants, directing that they turnover all Plaintiff's property, whether real, personal or mixed, owned by Plaintiff or in which Plaintiff has an interest, including, but not limited to, client information, confidential Firm information, and any copies of the same to Plaintiff, including the return and restoration of all computer data files that Defendants destroyed or removed from Touhy's computer and server;

E.      That a judgment be entered in favor of Plaintiff, and against Defendants, for compensatory damages in an amount presently unknown to Plaintiff to be proved at trial;

F.      An order awarding Plaintiff its costs and attorneys' fees; and

G.      Such other and additional relief as this Court may deem appropriate.

PLAINTIFF TOUHY AND TOUHY LTD. DEMANDS A JURY TRIAL ON ALL MATTERS SO TRIABLE

Respectfully submitted,

TOUHY & TOUHY LTD

By: _____

One of Its Attorneys

William K. Kane
John M. O'Bryan
LOVELLS LLP
330 North Wabash Ave.
Suite 1900
Chicago, Illinois 60611
312-832-4400
Firm#32893

Michael V. Casey
Varga, Berger, Ledsky, Hayes
& Casey
224 South Michigan Ave.
Suite 350
Chicago, Illinois 60604
312-342-9400
Firm#33916

14

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) Case No. |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the Verified Complaint and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

DANIEL K. TOUHY

# EXHIBIT C

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RYAN F. STEPHAN,  JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 07 CH 13552<br>)<br>)<br>)<br>)<br>) |

## VERIFIED THIRD AMENDED COUNT III
### *CORRECTED*

### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), and in support of its Verified Third Amended Count III alleges as follows:

1.    Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16 of Count I as though fully set forth herein.

2.    At all times relevant to this Complaint, there was in existence a certain statute, to-wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …18 U.S.C. §1030 (a)(5)(A)(iii).
>
> by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
> 8 U.S.C. § 1030 (a)(5)(B).
>
> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only,

1

loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;...18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.18 U.S.C. § 1030

(a)the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means...a computer which is used in interstate or foreign commerce or communication.... 18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages. 18 U.S.C. §1030(g) (emphasis added).

3.      The Touhy firm computers contain electronic files which files contain data regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania, California and Georgia.   Touhy firm computers are also used for e-mail communications throughout the United States and are "protected computers" as that term is defined by the CFAA. The use or misuse of this data affects interstate commerce.

4.      Defendants intentionally accessed the Touhy firm computers and email system and confidential client and Firm information without authorization prior to May 21, 2007.

5.     As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures.  The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000 as more fully described herein.

6.     As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information permanently unavailable as set forth in paragraphs 7 to 22 and 50 to 57.

7.     While employed by the Touhy firm Defendants misappropriated passwords and sent firm data to their personal email accounts.  Certain of these data cannot be retrieved, rendering such data permanently unavailable and causing damage as defined by the CFAA.

8.     The various Touhy firm computer hard drives on its system were given letter designations. Individual desktop hard drives were designated as drive "C"; the office network server drive was designated as drive "F" and the individual desktop DVD/CD drives were designated as drive "D".

9.     Removable storage media or external hard drives which were connected to the Touhy firm computer system, would receive drive designations of "G", "H" or other sequential letters.

10.     Any drive bearing the designation "G" drive on a Touhy firm individual desktop computer is a removable storage media connected to an individual desktop.

11.    During various days in May 2007, the "G" drive designations on Stephan and Zouras's Touhy firm individual desktop computers referred to a Western Digital removable storage media external hard drive that Defendants had connected to their individual desktop computers by a USB port.

12.    The defendants had obtained this Western Digital external hard drive ("WD external drive") and connected it to the Touhy firm computer system without the knowledge or consent of the Touhy firm principals.

13.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files at their homes.

14.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files on defendants' personal computers or the computers of non-employees of the Touhy firm.

15.    On May 18, 2007 Defendants received a delivery of computers purchased from CDW consisting of four HP desktop computers and on HP laptop computer.

16.    Other than the WD external drive, and on information and belief, Stephan used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

17.    Other than the WD external drive, Zouras used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

4

18.    On and before May 19, 2007 Stephan created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

19.    On and before May 19, 2007 Zouras created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

20.    The documents, files and folders set forth in paragraphs lajds through lajd;jf and contained on Exhibit 1 were data being created, modified or stored on a storage media designated as the "G" drive which media was connected to the Touhy firm desktop used by Stephan on or before May 21, 2007.

21.    At the time of Stephan's departure from the Touhy firm on or about May 21, 2007, no storage media was connected to Stephan or Zouras' Touhy firm desktop computers nor was this data saved in paper form or electronic form on any other Touhy firm electronic media.

22.    On or before May 21, 2007 both Stephan and Zouras had connected and then removed one or more of these electronic media storage devices containing Touhy firm data thereby making one or more of these data permanently unavailable to the Touhy firm.

**Use of Protected Computers by Defendants without Authorization**

23.    Stephan and Zouras's authorization to access, or use, the Touhy firm computers and internet system was revoked by committing one or more of the fiduciary breaches set forth in paragraph 24 to 47.  Stephan's fiduciary breach revoked any authorized access to the Touhy firm computers and internet system from April 2006 and thereafter.

24.    Between April 2006 and February 2008 Stephan committed a fiduciary breach by accepting reimbursement for the LegalMatch subscription cost, and then treating the subscription as Stephan's personal LegalMatch account.

25.    On or about December 12, 2006, January 24, 2007 and January 29, 2007 Stephan breached his authorized access to the Touhy firm  computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm prospective client Steven Yang without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

26.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland and Stephan representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

27.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with Erik Langeland to reach an agreement' concerning Langeland and Stephan representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

28.    On or about December 7, 2006, January 30, 2007, February 20, 2007, March 5, 2007, March 9, 2007, March 14, 2007, March 27, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

rstephan1234@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

29.    On or about March 29, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using the Touhy firm system to access his personal Yahoo account at rstephan1234@yahoocom and communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Gerald Bouthner without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

30.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

31.    On or about January 29, 2007 and January 24, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Jameel Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

32.    On and after November 28, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to communicate with LegalMatch to obtain a subscription to

LegalMatch without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

33.     On January 31, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan1234@yahoocom to contact LegalMatch by email in which email Stephan stated "That $22,000 is a big # right now.  I am also going to have to sell this to Jim Zouras".  Neither Stephan nor Zouras ever disclosed this communication to the Touhy firm principals while employed by the Touhy firm.

34.     On and after November 3, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by failing to disclose to the Touhy firm principals that he had received a Touhy & Touhy, Ltd. website communication from Steven Yang, had opened a file on November 7, 2006 and signed a firm contract with Yang.

35.     On or about November 7, 2006 Stephan breached his authorized access to the Touhy firm  computers by creating or storing data on Stephan's Touhy firm computer desktop or on non-firm storage media concerning Steven Yang and not disclosing the existence of this matter to the Touhy firm principals

36.     On or about December 12, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning representation of Steven Yang by Ryan Stephan and James Zouras and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

37.     That one or more of the documents listed in Exhibits 1 and 2 were made permanently unavailable because these emails were deleted by Stephan from the Touhy firm computers.  Despite attempts to recover these emails by employing various electronic software recovery programs this data is permanently unavailable to the Plaintiff and not recoverable by

accessing Stephan's desktop, the Touhylaw email system or by employment of data recovery software or technical service assistance.

38.    On and before May 21, 2007 Zouras breached his fiduciary duty by using Touhy firm computers and internet to conduct mapquest searches and legal research as a means of improving the ability of Defendants to contact Touhy firm clients to hire Defendants after Defendants left Touhy firm employment.

39.    On or about February 20, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland, Stephan and Zouras representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

40.    On February 20, 2007, January 30, 2007 and thereafter, Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland to reach an agreement' concerning Langeland and Zouras representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

41.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland concerning Langeland and Zouras representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

42.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

43.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

44.    On or about January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning Steven Yang v NYMC and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

45.    On May 21, 2007 and prior to this date, Stephan forwarded Touhy firm emails from the Touhy firm email system to his personal Yahoo account involving communications concerning Touhy firm cases, clients and other counsel as set forth on Exhibit 1 attached hereto.

46.    On May 21, 2007 and prior to this date, Stephan did not disclose to the Touhy firm principals that email information had been received at Touhylaw concerning one or more of the individuals set forth on Exhibit 3 attached hereto.

47.    On and after November 28, 2006 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

jzouras@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

## Data that is Permanently Unavailable

48.    Certain security software was installed on the Touhy firm computer server network before May 21, 2007. This security software recorded the computer activity on the Touhy firm desktop computers used by Stephan and Zouras.

49.    The security software recorded screenshots which depict some of the files, folders and documents created, modified, saved or stored on Stephan's and Zouras' Touhy firm computer desktop from the computer event register as set forth in Exhibit 1.

50.    Plaintiff has been able to identify some of the Touhy firm data created, modified, saved or stored on Stephan and Zouras's Touhy firm computer desktops from the computer event registers as set forth in Exhibit 1. Although these file names, dates and path names have been identified, these data cannot be retrieved and are permanently unavailable because of the removal of the storage media by Defendants.

51.    That one or more of the files, folders, documents or data listed are permanently unavailable because the external drives which had been connected by Defendants to the Touhy firm computers were removed by them.

52.    In excess of 400 files or folders were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer identified on Exhibit 1 attached hereto were created, modified, stored or saved on a hard drive or other media by Stephan on or before May 21, 2007.

53.    The files, folders or documents identified on Exhibit 1 attached hereto were created, modified, stored or saved on Stephan's Touhy firm desktop computer as being created or stored by defendants on or about the dates following each file or folder as set forth on Exhibit 3 attached hereto.

54.    Zouras used the Touhy firm computer system to create, modify, store or save numerous client "Election Forms" and letters to Touhy firm clients which data Zouras stored on an external drive.  On and before May 21, 2007 Zouras created these forms and letters for delivery to one or more of the Touhy firm clients listed on Exhibit 2.

55.    One or more of the following files, folders or documents were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer on or before May 21, 2007:

a)    A0039255 G:/Setup/2 Class Cases/3 Active/Casey's General Store

b)    A0039257 G:/Setup/2 Class Cases/3 Active/Casey's General Store

c)    A0039284 G:/Setup/2 Class Cases/3 Active/Casey's General Store

d)    A0039285 G:/Setup/2 Class Cases/3 Active/Casey's General Store

e)    A0039286 G:/Setup/2 Class Cases/3 Active/Casey's General Store

One of more of these files and folders were removed from the Touhy firm computer system. Despite multiple retrieval efforts these data are permanently unavailable.

**Unrecoverable Data which were Deleted**

56.    In excess of 19,000 documents, files or folders were deleted by Stephan from his Touhy firm desktop on or before May 21, 2007.  Although recovery software has retrieved millions of data bytes, there are 19,839 documents, files and folders which, although recovered,

cannot be opened or accessed due to corruption, overwriting or other electronic impediment preventing the Touhy firm from accessing and reviewing these data.

57.    Stephan and Zouras removed one or more of these electronic media storage devices containing Touhy firm data or, on information and belief, stored these data on a web based storage media thereby making one or more of these data permanently unavailable to the Touhy firm.

58.    As a direct and proximate result of the acts of the defendants described herein, one or more of these data are permanently unavailable to the Touhy firm.

## PLAINTIFF'S LOSS UNDER THE CFAA

### Loss – Directing Touhylaw emails to Yahoo and Deletion of Emails

59.    After Stephan forwarded these emails he deleted one or more of them from the TouhyLaw email system.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering these data as set forth below.

60.    While employed by the Touhy firm Stephan received email inquiries through the Touhy & Touhy website at Touhylawcom from the following individuals through the Touhy firm server, computer and internet system concerning cases, clients, counsel or other individuals including Steven Yang; Gerald Bouthner; Casey's General Store; Mary Stecyna; Hector Vargas; David Darwin.

61.    While employed by the Touhy firm Stephan used Touhy firm computers and internet to communicate with the following individuals concerning representation of these individuals which contact had been made through LegalMatch and Findlaw:

  a) Mary Stecyna;

b) Hector Vargas;

c) David Darwin;

d) William Slover;

e) Christopher Manning; and

f) Tracy Kobel.

62.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan1234@yahoocom and jzouras@yahoocom to communicate between themselves and other attorneys in connection with the settlement of the Jules Smith case.

63.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan1234@yahoocom and jzouras@yahoocom to communicate between themselves and other attorneys in connection with the settlement of the Steve Ferko case.

64.    Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan1234@yahoocom and jzouras@yahoocom to communicate between themselves and other attorneys in connection with the settlement of the David Darwin case.

65.    Defendants used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan1234@yahoocom and jzouras@yahoocom to commit one or more of the following acts:

a)    Engaged in communications with Erik Langeland, Ken Levinson, John Tostrud and other clients, counsel and individuals.

b)    Agreeing to send Touhy firm cases and fees in Darwin and Smith from the Touhy firm to other counsel.

c)    Agreeing with Erik Langeland to take attorney's fee of approximately $63,750 from the Ferko case and divide these monies.

d)    Receiving emails delivered to the Touhy firm email addresses and failing to have pleadings, correspondence and data from being entered in the firm files and database.

e)    Copying Touhy firm data without the consent of the firm or the client onto an external hard drive and copying these data onto defendants' laptop and office server on or about May 19 and 20, 2007.

f)    Deleted emails and data from the Touhy firm computer network in order to prevent the Touhy firm from accessing or performing case work on clients and cases defendants intended to have discharge the Touhy firm.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

66.    On and before May 21, 2007 Stephan and Zouras used Touhylaw email and computers to provide other attorneys with Touhy firm client or case information or firm data for the purpose of assisting Touhy firm competitors by referring these matters to other attorneys involving one or more of the following:

a)    David Darwin;

b)    Craig Fitzgerald;

c)    Michael Jibben;

15

d)    William Slover;

e)    Steven Yang;

f)    Steven Ferko;

g)    Gerald Bouthner;

h)    Kim Jones; and

i)    Kim Marrs.

67.  On and before May 21, 2007 Defendants received emails at their personal Yahoo accounts concerning the Darwin case, a LegalMatch client. Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

68.    On and before May 21, 2007 Stephan stored data relating to the LegalMatch account on a separate secure server to prevent the Touhy firm from accessing this information and to avoid disclosing information to the Touhy firm.

69.  On and before May 21, 2007 Stephan used his Yahoo account to contact Julie Reynolds at LegalMatch from his Yahoo account stephan1234@yahoocom which was sent by Stephan from the Touhy firm offices at 161 N. Clark Street, Suite 2210 and from Touhy firm computers on one or more of the following dates: on November 28, 2006, February 4, 2007, February 7, 2007, February 8, 2007, February 10, 2007, February 12, 2007, February 27, 2007, April 12, 2007, April 24, 2007, May 1, 2007.

70.    On and before May 21, 2007 Stephan used his Yahoo account at rstephan1234@yahoocom to send Zouras copies of his communications with Legalmatch at jzouras@yahoocom on April 4, 2007, April 17, 2007 and other dates. On April 24, 2007 Stephan

sent Jacobo Rodriguez at LegalMatch from his Yahoo account rstephan1234@yahoocom an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

71.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

72.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

73.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

74.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

75.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

76.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject:

Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

77.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

78.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

79.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

80.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

81.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

18

82.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

83.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: WFI Colorado, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

84.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

85.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan1234@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

86.     Although some or all of these emails in paragraphs 69 through 85 may not be permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

87.     On May 21, 2007 and for months prior to this date, Stephan and Zouras saved electronic files and data on a separate drive or drives which contained Touhy firm client, case information and contacts.  Defendants use of this drive prevented Touhy firm principals from learning of one or more the following clients, cases and other counsel:

a)     Borowsky v IBM

    b)     Steven Yang NYMC

    c)     Jones v. Casey's General Store

    d)     Gerald Bouthner v. Amtrust

    e)     Shabazz v. Morgan Funding.

88.     Between April 2006 and February 2008 Stephan denied the Touhy firm access to data relating to one or more of the following Legal Match contacts, which clients and individuals are as set forth below.

    a)     Davin Cole

    b)     Peter Conrad

    c)     Lafayette Davis

    d)     Odeh Fanasheh

    e)     Craig Fitzgerald

    f)     Michael Jibben

    g)     Kirk Freundt

    h)     Tiffany Green

    i)     Veola Hankle

    j)     Paula Hardwick

    k)     Octavia Hernandez

    l)     Joseph Jergl

    m)    Tracy Kobel

    n)     Morad Laichev

    o)     Brian Lambert

    p)     Donna Lingafelt

q)     Erma Lowe

r)     William Slover

s)     Gregory Waring

t)     George Wright

u)     Elicia Zimmerman

89.     Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of denying the Touhy firm access to these firm computers and the data contained thereon.  Neither Stephan nor Zouras ever disclosed these passwords to the Touhy firm principals.

90.     Prior to May 21, 2007 Stephan did not disclose the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.  Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account thereby preventing the Touhy firm from accessing that account.

91.     Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm.

**Touhy Firm Financial Losses**

92.  As a direct and proximate result of the acts of the defendants described herein, the Touhy firm has incurred one or more of the following costs, losses or consequential damages under Section 1030(e)(10):

a)   Cost of computer technicians and consultants to quarantine the Stephan and Zouras firm desktop computers; Cost of computer technicians and consultants to quarantine two lap top computers used by one or more of the Defendants at the Touhy firm;

b)   Cost of computer technicians and consultants to test the Stephan and Zouras computers to run various recovery programs for the purpose of identifying the data which was deleted or inaccessible;

c)   Cost of computer technicians and consultants to restore the deleted data including word processing documents and emails;

d)   Cost of security investigators to open, access, review and restore thousands of documents and files which were deleted or hidden from the Touhy firm desktop computers used by Stephan and Zouras for the purpose of restoring these data and information to its condition prior to Defendants' actions;

e)   Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of the Defendants;

f)   Attorneys' fees and court costs incurred by Plaintiff for the institution of this action and obtaining injunctive relief, including impounding the hardware containing Touhy firm data;

g)   The costs of services rendered by Forensicon for the impoundment and testing of the hardware containing Touhy firm data;

h)   Attorneys' fees, court costs, court reporter transcripts and time expended by Touhy firm personnel in litigating the Rule to Show Cause filed against Defendants in connection with the recovery of the Touhy firm Legal Match account;

i)     The revenue lost as a result of Defendants denying the Touhy firm access to its Legal Match account after May 21, 2007;

j)     The revenue lost by the Touhy firm as a result of revenue lost in connection with attorneys' fees in the cases Steven Ferko, Jules Smith, David Darwin, Christopher Manning, John Huebner and other Touhy firm clients.

k)     Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

l)     Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

m)     Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

93.     These losses and consequential damages exceed $5,000.00.  As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

94.     Touhy has no adequate remedy at law.  Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

95.     Due to overwriting, corruption or removal of media, Touhy firm data accessed or used by Ryan Stephan at the Touhy firm cannot be accessed or reviewed as these data are corrupt and indecipherable.

96.     In excess of 90% of the recovered Word, Word Perfect and text documents from these computers are indecipherable.  Only a small percentage of these data are accessible and able to be reviewed.

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.

Respectfully submitted,

_____
One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Attorney No.  22696

Michael O'Rourke
O'Rourke & Moody
161 N. Clark Street, Suite 2230
Chicago, IL 60601
312-849-2020
Attorney No.  44216

24

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

TIMOTHY J. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the

Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the

THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein

stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe

the same to be true.

DANIEL K. TOUHY

**'Recent Documents' on Stephan desktop which are unavailable due to removal of storage device**

1    Amtrust potentials.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

2    Bouthner et al, v. Amtrust Mortgage Corporation was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

3    Brandon Farina was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM.

4    Brian Gagliardi was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:28 PM

5    CaseLists was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 3/20/2007 10:10 AM

6    CaseLists (2)  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:40 PM

7    ElectionForm.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 5:32 PM

8    ElectionFormCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:21 PM

9    ElectionFormChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system,



PLAINTIFF'S
EXHIBIT

10     ElectionFormErlandson.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:08 PM

11     ElectionFormJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:20 PM

12     ElectionFormLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:49 PM

13     ElectionFormPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:43 PM

14     email list.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 10:47 AM

15     Email.NewContactInfo.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   3/14/2007 6:06 PM

16     FormClient Letter.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:31 PM

17     FormClient LetterCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:25 PM

18     FormClient LetterIngham.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 5:12 PM

19     FormClient LetterJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:43 PM

20     FormClient LetterLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:29 PM

21     FormClient LetterPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

22     FormClientEmail.doc  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM

23     FormClientEmailChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:12 PM

24     FormClientEmailGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:04 PM

25     FormClientEmailJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

26     FormClientEmailLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:40 PM

27     FormClientEmailPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:45 PM

28    FormCorrespondencereTransfer was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:56 PM

29    Master List of Outside Referrals.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about5/8/2007 9:41 AM

30    MasterEmailList.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about4/21/2007 9:46 AM

31    sz_busicard.pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/4/2007 10:09 AM

32    sz_busicard[1].pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/3/2007 2:58 PM

33    sz_busicardFINAL[1].pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:24 PM

34    sz_logo.gif was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/6/2007 2:58 PM

35    _sz_letterhead.dot was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:11 PM

a) Raphael and Magdalena DeLapaz;

b) Joel Rak;

c) Scott Baldwein;

d) Ryan James;

e) James Chiapetta;

f) Eric Graf;

g) Brian Brennan

h) Raymond Barlow,

i) Thomas Little;

j) William Delaney;

k) Horafi, Inc.;

l) Leon Livergood estate;

m) Christopher Manning;

n) Juana Melendez;

o) Alicia O'Connell;

p) Charese Patton;

q) James Peterson;

r) Peter Schram;

s) Angela Stachowiak

t) Nasser Tavakoly


PLAINTIFF'S EXHIBIT
2





PLAINTIFF'S
EXHIBIT
3

**IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION**

TOUHY & TOUHY, LTD., an Illinois Professional )
Corporation, )
)
                <u>Plaintiff,</u> )
)
      v. )      **Case No. 07 CH 13552**
)
RYAN F. STEPHAN, JAMES B. ZOURAS and )
STEPHAN & ZOURAS, LLP, an Illinois )
Limited Liability Partnership, )
)
                **Defendants.** )

## <u>NOTICE OF FILING</u>

TO:     Bradley K. Staubus
          Esposito & Staubus
          134 N. LaSalle Street, Suite 500
          Chicago, Illinois  60602

       Please take notice that on May 15, 2008 the attached VERIFIED THIRD AMENDED
COUNT III *CORRECTED* was filed with the Clerk of the Circuit Court of Cook County at the
Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois.

                                  _____
                                    One of the Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

       I, the undersigned, certify that a copy of the foregoing notice and attached were served
upon the above-named attorney(s) of record on this 15th day of May, 2008, by:  [] hand-delivery;
[] facsimile; and/or; [] email [x] by placing a copy in pre-paid envelope and depositing the same
in the U.S. Mail.

                                    _____

Michael J. O'Rourke                   Robert Orman
Myles O'Rourke                       Law Offices of Robert Orman
O'Rourke & Moody                  One North LaSalle Street
161 North Clark Street, Suite 2230       Suite 1775
Chicago, Illinois  60601               Chicago, Illinois 60602
(312) 849-2020                        (312) 372-0515
Attorney No.  44216              Atty No.  22696

# EXHIBIT D

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION
INJUNCTION/TEMPORARY RESTRAINING ORDER

| | | |
|---|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 CH 13552 |
| RYAN F. STEPHAN, JAMES B. ZOURAS, And STEPHAN ZOURAS, LLP, an Illinois Limited Liability Partnership. | ) ) ) | |
| Defendants. | ) ) ) | |
| RYAN F. STEPHAN and JAMES B. ZOURAS, STEPHAN ZOURAS LLP | ) ) ) | |
| Counter-Plaintiffs | ) ) | |
| v. | ) ) | |
| TOUHY & TOUHY LTD., an Illinois Professional Corporation, TIMOTHY J. TOUHY and DANIEL K. TOUHY, Individually | ) ) ) ) | |
| Counter-Defendants | ) | |

## VERIFIED COUNTERCLAIM AT LAW

Defendants/Counter-Plaintiffs James B. Zouras Ryan F. Stephan (hereinafter referred to individually as "Zouras" or "Stephan" and collectively as "Counter-Plaintiffs") and Stephan Zouras LLP ("Stephan Zouras LLP") file this Counterclaim against Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy (hereinafter referred to as "Counter-Defendants")

1.    Zouras is an attorney licensed to practice law in the State of Illinois since 1995.

2.    Stephan is an attorney licensed to practice law in the State of Illinois since 2000.

3.    Up until Mary 21, 2007, Counter-Plaintiffs were attorneys employed by Counter-Defendant Touhy & Touhy, Ltd., a Illinois Professional Corporation engaged in the practice of law in Illinois (hereinafter "the Touhy firm").

4.    Timothy J. Touhy and Daniel K. Touhy are the sole shareholders of Touhy & Touhy Ltd.

5.    On or about December 17, 2004, Counter-Plaintiffs and Counter-Defendants entered into an agreement for the purpose of dividing attorneys' fees recovered on class action cases ("Class Action Agreement").    A true and correct copy of the Class Action Agreement attached and incorporated hereto as Exhibit A.

6.    Among other things, the Class Action Agreement provides that Counter-Plaintiffs are together to receive 40% of the attorneys' fees on any class or collective action cases referred by Zouras or Stephan to the Touhy Firm.

### COUNT I: BREACH OF CONTRACT
### (*Reinsmith v. Castlepoint* Case)

7.    On June 6, 2005 the case of *Reinsmith et.al. v. Castlepoint* 05-CV-11168 (U.S. Dist Ct. Mass.) ("*Reinsmith*") was filed.   The *Reinsmith* case was a collective class action.

8.    The Touhy firm, through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Paul Reinsmith and Kevin Dinsdale, in the *Reinsmith* lawsuit.

9.    Reinsmith and Dinsdale were referred to the Touhy firm by Stephan or alternatively, these individuals were referred to Stephan by another attorney or person who in turn referred them to the Touhy firm.

10.    On December 20, 2006, a Joint Stipulation for Settlement was filed with the Court stipulating to the settlement of the case as well as an attorneys' fee award and costs in the amount of $225,000.00.  These fees were to be split with co-counsel Erik Langeland.

2

11.    Soon thereafter, the Touhy firm received the attorneys' fees in the amount $225,000.00 which were deposited into the Touhy firm client trust fund account. A portion of these funds were paid to co-counsel Erik Langeland.

12.    Upon information and belief, there is approximately $190,000.00 remaining after payment to co-counsel Erik Langeland.

13.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

14.    Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

15.    Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused to pay the amounts due, all to Counter-Plaintiffs' damage.

16.    Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT II: ACCOUNTING
### (*Reinsmith v. Castlepoint*)

17.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

18.    There is a need for an accounting to determine the exact amount of funds received by the Touhy firm from the *Reinsmith* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

19.    Without a proper accounting the amounts owed to Counter-Plaintiffs cannot be properly determined.

3

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Reinsmith* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT III: BREACH OF FIDUCIARY DUTY
### (*Reinsmith v. Castlepoint*)

20.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

21.    There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Reinsmith*.

22.    There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Reinsmith* case.

23.    Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

24.    There existed a right to joint control and management of the property used in the enterprise.

25.    There was an agreement for the sharing in the profit and losses incurred in the joint venture.

26.    Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Reinsmith* case.

4

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

### COUNT IV: BREACH OF CONTRACT
#### (*Billman v. National City, et al.*)

27.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6 above as if fully set forth herein.

28.     On March 13, 2006 the case of *Billman et. al. v. National City Bank* (06-CV-138 (U.S. Dist Ct. S.D. Ohio) ("*Billman*") was filed.   The *Billman* case was a class action.

29.     The Touhy firm through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Marcia Billman, Kristen Brown, Tracey Casarcia and Chantay Horton, in the *Billman* lawsuit.

30.     Billman, Brown, Casarcia and Horton were referred to the Touhy firm by Stephan and Zouras or alternatively, these individuals were referred to Stephan and Zouras by another attorney or person who in turn referred them to the Touhy firm.

31.     On December 15, 2006, an Order of Dismissal with Prejudice was entered because the parties had reached a settlement.  The actual terms of the settlement are confidential and therefore any attorneys' fees paid are also confidential.

32.     Soon thereafter, the Touhy firm received certain attorneys' fees in an amount which remains confidential under the settlement agreement which were deposited into the Touhy firm client trust fund account.  A portion of these funds were paid to co-counsel Erik Langeland.

33.     Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

34.    Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

35.    Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused to pay the amounts due, all to Counter-Plaintiffs' damage.

36.    Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT V: ACCOUNTING
### (*Billman v. National City, et al.*)

37.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 27-36 above as if fully set forth herein.

38.    There is a need for an accounting to determine the exact amount of funds received by the Touhy firm from the *Billman* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

39.    Without a proper accounting the amounts owed to Counter-Plaintiffs cannot be properly determined.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Billman* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT VI: BREACH OF FIDUCIARY DUTY
### (*Billman v. National City, et al*)

40.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 27-36 above as if fully set forth herein.

41.     There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Billman*.

42.     There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Billman* case.

43.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

44.     There existed a right to joint control and management of the property used in the enterprise.

45.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

46.     Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Billman* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

7

## COUNT VII: BREACH OF CONTRACT
### (*Flynn v. MortgageIT, et al.*)

47. Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6 above as if fully set forth herein.

48. On April 29, 2005 the case of *Flynn, et. al. v. MortgageIT, et al* (05-CV-289) (U.S. Dist Ct. S.D. Ohio) ("*Flynn*") was filed.   The *Flynn* case was a class action.

49. The Touhy firm through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Karen Flynn and Anthony Oulahan, in the *Flynn* lawsuit.

50. Flynn and Oulahan were referred to the Touhy firm by Stephan and Zouras, or alternatively, these individuals were referred to Stephan and Zouras by another attorney or person who in turn referred them to the Touhy firm.

51. On January 11, 2007, an Order of Dismissal with Prejudice was entered because the parties had reached a settlement.  The actual terms of the settlement are confidential and therefore any attorneys' fees paid are also confidential.

52. Soon thereafter, and upon information and belief, these funds were deposited into the Touhy firm client trust fund account.  A portion of these funds were paid to co-counsel Erik Langeland.

53. Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

54. Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

55. Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused pay the amounts due, all to Counter-Plaintiffs' damage.

56. Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT VIII: ACCOUNTING
### (*Flynn v. MortgageIT, et al.*)

57.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 47-56 above as if fully set forth herein.

58.    There is a need for an accounting to determine the exact amount of funds received by the Touhy firm from the *Flynn* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

59.    Without a proper accounting the amounts owed to counter-Plaintiffs cannot be properly determined.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Flynn* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT IX: BREACH OF FIDUCIARY DUTY
### (*Flynn v. MortgageIT, et al.*)

60.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 47-56 above as if fully set forth herein.

61.    There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Flynn*.

62.     There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Flynn* case.

63.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

64.     There existed a right to joint control and management of the property used in the enterprise.

65.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

66.     Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Flynn* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT X: BREACH OF CONTRACT
### (*Estate of Michaels v. Dynaprop, et al*)

67.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

68.     On or about June 1, 2001, Counter-Plaintiff Zouras and Counter-Defendants entered into an agreement for the purpose of dividing attorneys' fees recovered on contingent fee cases ("Contingent Fee Agreement"). A true and correct copy of the Contingent Fee Agreement attached and incorporated hereto as Exhibit B.

69.     Among other things, the Contingent Fee Agreement provides that Zouras is to receive 50% of the attorneys' fees on contingent fee case referred by Zouras to the Touhy Firm.

10

70.    On or about April 23, 2001, the case of *Harrison Michaels v. Dynaprop, et. al. v. MortgageIT, et al* (01-CV-4754) (Circuit Court of Cook County) ("*Michaels*") was filed.   The *Michaels* case was a contingent fee case.

71.    In September of 2006, following the death of Harrison Michaels, the *Estate of Harrison Michaels* was substituted as Plaintiff in the *Michaels* case. ("*Estate of Michaels*").   The *Estate of Michaels* was a contingent fee case.

72.    The Touhy firm through Daniel K. Touhy and James B. Zouras, represented the Plaintiff in the *Michaels* and *Estate of Michaels* lawsuits.

73.    *Michaels* was referred to the Touhy firm by Zouras, or alternatively, these individuals were referred to Zouras by another attorney or person who in turn referred them to the Touhy firm.

74.    In March of 2007, the *Estate of Michaels* case settled for a substantial confidential amount.

75.    On May 7, 2007, the *Estate of Michaels* settlement was approved by the Circuit Court of Cook County, Law Division trial court.

76.    On May 17, 2007, the *Estate of Michaels* settlement was approved by the Probate court.

77.    The actual terms of the settlement are confidential and therefore any attorneys' fees paid are also confidential.

78.    Soon thereafter, and upon information and belief, these funds were deposited into the Touhy firm client trust fund account.

79.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

11

80.    Under the Contingent Fee Agreement, Zouras is entitled to 50% of the attorneys' fees recovered by the Touhy firm.

81.    Despite Zouras' demands, the Counter-Defendants have failed and refused pay the amounts due, all to Zouras' damage.

82.    Zouras has abided by the terms of the Contingent Fee Agreement.

Wherefore, Counter-Plaintiff, James B. Zouras, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XI: ACCOUNTING
### (*Estate of Michaels v. Dynaprop, et al.*)

83.    Counter-Plaintiff Zouras hereby adopts and re-allege the allegations of paragraphs 67-82 above as if fully set forth herein.

84.    There is a need for an accounting to determine the exact amount of funds received by the Touhy firm from the *Estate of Michaels* matter.

85.    Without a proper accounting the amounts owed to Zouras cannot be properly determined.

Wherefore, Counter-Plaintiff, James B. Zouras, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Estate of Michaels* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT XII: BREACH OF FIDUCIARY DUTY
### (*Estate of Michaels v. Dynaprop, et al.*)

86.    Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 67-82 above as if fully set forth herein.

87.     There existed between Zouras on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Estate of Michaels*.

88.     There existed a community of interest in the purpose of the joint association that being the prosecution of the *Estate of Michaels* case.

89.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

90.     There existed a right to joint control and management of the property used in the enterprise.

91.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

92.     Counter-Defendants breached their fiduciary duty to Zouras by failing to pay that portion of the profits received by Counter-Defendants which is due to Zouras on the *Estate of Michaels* case.

Wherefore, Counter-Plaintiff, James B. Zouras requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XIII: DECLARATORY JUDGMENT
### (In the Alternative - *Estate of Michaels v. Dynaprop, et al.*)

93.     Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 67-82 above as if fully set forth herein.

94.     Alternatively, if the settlement proceeds have not yet been received and deposited into the Touhy firm client trust fund account, Zouras would seek a declaratory judgment against

the Counter-Defendants that the monies due to Zouras under the Contingent Fee Agreement be paid to him upon receipt of the settlement proceeds by the Touhy firm.

95.    Zouras has a legal tangible personal interest, different than that of the public in general.

96.    A case in controversy exists between the parties concerning the interests due to Zouras under the Contingent Fee Agreement since Timothy J. Touhy and/or Daniel K. Touhy have indicated to Zouras that these funds will not be paid to Zouras.

Wherefore, Counter-Plaintiff Zouras hereby requests that this Court enter an order declaring the rights of the parties under the Contingent Fee Agreement related to the *Estate of Michaels v. Dynaprop, et al.* case and ordering that these monies due Zouras under the Contingent Fee Agreement be paid upon receipt by Counter-Defendants, plus costs of suit.

## COUNT XIV: DECLARATORY JUDGMENT
### (*Perez et. al. v. RadioShack*)

97.    Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 1-6 above as if fully set forth herein.

98.    On October 31, 2002 the case of *Perez et. al.. v. RadioShack Corporation* 02-CV-7884 (Northern District of Illinois) ("*Perez v. RadioShack*") was filed.   The *Perez v. RadioShack* case was a collective class action.

99.    The Touhy firm, through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Alphonse L. Perez and Douglas G. Phillips, in the *Perez v. RadioShack* lawsuit.

100.    Perez and Phillips were referred to the Touhy firm by Zouras or alternatively, these individuals were referred to Zouras by another attorney or person who in turn referred them to the Touhy firm.

14

101.    On March 16, 2007, an Order for Preliminary Approval of Settlement was entered by the Court.

102.    Upon information and belief, the settlement funds have not yet been received by the Touhy firm

103.    Zouras would seek a declaratory judgment against the Counter-Defendants that the monies due to Zouras under the Class Action Agreement be paid to him upon receipt of the settlement proceeds by the Touhy firm.

104.    Zouras has a legal tangible personal interest, different than that of the public in general.

105.    A case in controversy exists between the parties concerning the interests due to Zouras under the Contingent Fee Agreement since Timothy J. Touhy and/or Daniel K. Touhy have indicated to Zouras that these funds will not be paid to Zouras.

Wherefore, Counter-Plaintiff Zouras hereby requests that this Court enter an order declaring the rights of the parties under the Class Action Agreement related to the *Perez v. RadioShack* case and ordering that these monies due Zouras under the Class Action Agreement be paid upon receipt by Counter-Defendants, plus costs of suit.

## COUNT XV: BREACH OF FIDUCIARY DUTY
### (*Perez et. al. v. RadioShack*)

106.    Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 97-105 above as if fully set forth herein.

107.    There existed between Zouras on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Perez v. RadioShack*.

108.    There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Perez v. RadioShack* case.

109.    Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

110.    There existed a right to joint control and management of the property used in the enterprise.

111.    There was an agreement for the sharing in the profit and losses incurred in the joint venture.

112.    Counter-Defendants breached their fiduciary duty to Zouras by failing to pay that portion of the profits received by Counter-Defendants which is due to Zouras on the *Perez v. RadioShack* case.

Wherefore, Counter-Plaintiff, James B. Zouras, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XVI: DECLARATORY JUDGMENT
### (Other Cases Governed by the Class Action Agreement or Contingent Fee Agreement)

113.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6 and 67-69 above as if fully set forth herein.

114.    On May 21, 2007 Counter-Plaintiffs Stephan and Zouras were terminated from the Touhy firm.

115.    As of that date, there were, and continue to be a number of cases subject to the terms of the Class Action Agreement and Contingent Fee Agreement. These cases include: *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al.*

*Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and

*Baldwein v. Invesco.*

116.   The Touhy firm, through Daniel K. Touhy, Zouras and/or Stephan, represented the plaintiffs and/or class action representatives in each one of the aforementioned cases.

117.   Each of these plaintiffs and/or class action representatives were referred to the Touhy firm by Stephan or Zouras or alternatively, these individuals were referred to Stephan or Zouras by another attorney or person who in turn referred them to the Touhy firm.

118.   The Touhy firm continues to represent at least one or more of the plaintiffs and/or class action representatives in each of the aforementioned cases.

119.   Counter-Plaintiffs would seek a declaratory judgment against the Counter-Defendants that the monies due to the Counter-Plaintiffs under the Class Action Agreement or Contingent Fee Agreement be paid to Counter-Plaintiffs if and when the Counter-Defendants recover any fees from any of the aforementioned cases by way of settlement, verdict or otherwise.

120.   Counter-Plaintiffs have a legal tangible personal interest, different than that of the public in general.

121.   A case in controversy exists between the parties concerning the interests due to Counter-Plaintiffs under the Class Fee Agreement or Contingent Fee Agreement since Counter-Defendants have indicated to Counter-Plaintiffs that these funds will not be paid.

Wherefore, Counter-Plaintiffs hereby request that this Court enter an order declaring the rights of the parties under the Class Action Agreement and Contingent Fee Agreement related to the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and

*Baldwein v. Invesco* cases and ordering that these monies due Counter-Plaintiffs under the Class Action Agreement or Contingent Fee Agreement be paid upon receipt by Counter-Defendants, plus costs of suit.

## COUNT XVII: BREACH OF FIDUCIARY DUTY
**(Other Cases Governed by the Class Action Agreement or Contingent Fee Agreement)**

122.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 113-121 above as if fully set forth herein.

123.    There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the cases of *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco.*

124.    There existed a community of interest in the purpose of the joint association that being the prosecution of the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco* cases.

125.    Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

126.    There existed a right to joint control and management of the property used in the enterprise.

127.    There was an agreement for the sharing in the profit and losses incurred in the joint venture.

128.    Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-

18

Plaintiffs on the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco* cases.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XVIII
## UNJUST ENRICHMENT
### (In the Alternative)

129.    Counter-Plaintiffs Zouras and Stephan hereby adopt and re-allege the allegations of paragraphs 1-128 above as if fully set forth herein.

130.    That if the Counter-Defendants are permitted to receive the benefits of the cases described above without paying to Counter-Plaintiffs the amounts due, the Counter-Defendants will be unjustly enriched.

131.    The unjust enrichment will be to Counter-Plaintiffs' detriment

132.    Counter-Defendants retention of that benefit violates the principles of justice, equity, and good conscience.

Wherefore, Counter-Plaintiffs request this Court to impose a constructive trust for the benefit of the Counter-Plaintiffs on any future fees earned on any the above referenced files.

## COUNT XIX: TRESPASSING

133.    Stephan Zouras LLP hereby adopts and re-alleges the allegations of paragraphs 1-4 above as if fully set forth herein.

134. On May 18, 2007, Stephan Zouras, LLP, and for some time prior thereto, was the sole lessee of private office space located at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois.

135. At no time did Stephan Zouras, LLP, or any of its authorized agents, grant any Counter-Defendant, or any agents or employee thereof, permission to enter any portion of its private office space located at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois.

136. On May 18, 2007, Daniel K. Touhy, along with at least one other currently unknown individual, unlawfully accessed Counter-Plaintiff's private office space at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois.

137. On May 21, 2007, Defendant Daniel K. Touhy admitted to Zouras that he and at least one other person willfully accessed Counter-Plaintiff's private office space at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois without permission.

138. Daniel K. Touhy deliberately accessed Counter-Plaintiff's private office space surreptitiously, by false pretenses and/or other deceptive means.

139. The deliberate entry by Daniel K. Touhy and any other Counter-Defendant or any of their agents or employees into Counter-Plaintiff's private office space on May 18, 2007, or at any other time, was for the purpose of damaging, destroying or altering Counter-Plaintiff's property.

140. Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XX: SLANDER

141.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

142.    Beginning May 21, 2007 and continuing through the present date, Counter-Defendants have made false and defamatory statements about Counter-Plaintiffs to numerous current and former clients, co-counsel and other third-parties.

143.    Specifically, Counter-Defendants have imputed a lack of integrity in Counter-Plaintiffs' discharge of their duties in their profession as licensed attorneys to third persons by making statements, including the following:

   a.  that they are "thieves," "crooks" and have otherwise committed criminal and fraudulent acts;

   b.  that they have violated federal laws;

   c.  that they have violated orders of court; and,

   d.  that they are untrustworthy and third parties "should not do business with them."

144.    The statements made by Counter-Defendants as described above were not privileged and constitute defamation, *per se*.

145.    As a result of the statements made by Counter-Defendants as described above, Counter-Plaintiffs have sustained damages and suffered injury to their reputations.

146.    Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XXI: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

147.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

148.    On May 21, 2007 and for some time prior thereto, Counter-Plaintiffs had a reasonable expectation of entering or maintaining a valid business relationship with clients of Counter-Defendants, prospective clients, co-counsel, referring lawyers, employees and others.

149.    On May 21, 2007, Counter-Defendants had actual knowledge of Counter-Plaintiffs expectancy as set-forth above.

150.    On May 21, 2007, Counter-Defendants terminated the employ of Counter-Plaintiffs Zouras and Stephan.

151.    Counter-Defendants orchestrated and executed a deliberate and malicious scheme to interfere with and prevent Counter-Plaintiffs legitimate business expectation from ripening into valid business relationships.

152.    These actions included, but were not limited to:

    a.  Failing to promptly return Counter-Plaintiffs server, lap top, hard drives and other computer equipment;

    b.  Making false and slanderous statements to clients of Counter-Defendants, prospective clients, co-counsel, referring lawyers, employees and others as set forth above.

    c.  Trespassing onto Counter-Plaintiffs office space as set forth above.

    d.  Failing to promptly deliver client file material to Counter-Plaintiffs after receiving instructions from the client to do so.

    e.  Upon receiving client election forms from clients electing to have their file transferred to Stephan Zouras LLP, Counter-Defendants would contact these client and make disparaging remarks about Stephan Zouras LLP in an attempt to induce the client to remain with the Touhy firm.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XXII: VIOLATION OF THE ILLINOIS PERSONNEL RECORD REVIEW ACT

153.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

154.    On May 25, 2007, Counter-Plaintiffs requested in writing that Counter-Defendants provide complete copies of the personnel files of James B. Zouras and Ryan F. Stephan within seven days.

155.    The Illinois Personnel Record Review Act, 820 ILCS40/2 provides that every employer shall, upon an employee's request permit the employee to inspect and copy any personnel documents, including documents which have been used in determining an employee's qualification for employment, promotion, transfer, additional compensation, discharge or other disciplinary action within 7 days.

156.    If an employer violates the Illinois Personnel Record Review Act, an employee may commence an action in the circuit court to enforce the provisions of this act, including actions to compel compliance. Id. 820 ILCS40/12.   Available damages for failure to comply with this Act include:

    a.  Actual damages plus costs; and,

23

b. For a willful and knowing violation of this Act, $200 plus costs, reasonable attorney's fees and actual damages;

157.    Despite Counter-Plaintiffs' written request to inspect and copy their personnel files, the Counter-Defendants have willfully and knowingly violated this Act by failing to permit the inspection and copy of these records.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for actual damages, $200, attorney's fees and costs.

## COUNT XXIII: FAILURE TO PAY WAGES EARNED IN VIOLATION OF THE ILLINOIS WAGE PAYMENT & COLLECTION ACT

158.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

159.    Counter-Plaintiffs earned an annual salary from Counter-Defendants. Counter-Defendants paid this salary on the 1st and 15th of each month.    Counter-Defendants had a practice of requiring its new employees, to work for a full month before being paid. Specifically, Counter-Defendants required its employees, including Counter-Plaintiffs, to work without pay for the first 15 days of their employment. Counter-Defendants promised that the first 15 days of work would be paid if and when the employee separated from the Touhy firm.

160.    Counter-Plaintiffs worked for Counter-Defendants through May 21, 2007. Counter-Plaintiffs last received a paycheck from the Counter-Defendants on or about May 15, 2007 covering the pay period of April 16, 2007 to April 30, 2007. Counter-Plaintiffs have not been paid any compensation for the period of time worked from May 1, 2007 through May 21, 2007.

161.    The <u>Illinois Wage Payment and Collection Act</u>, 820 ILCS 115/1 *et.seq.* requires that every employer shall pay every employee all wages earned during the semi-monthly pay period.  The Act also requires employers to pay all wages earned by an employee no later than 13 days after the end of the pay period in which sums were earned.  Section 115/5 of the Act also requires every employer shall pay the final compensation of separated employees in full, at the time of the separation, if possible, but in no case later than the next regularly scheduled payday for such employee.

162.    The <u>Illinois Minimum Wage Law</u>, 820 ILCS 105/2 provides that if any employee is paid less than the wage he or she is entitled to, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorneys' fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayment for each month following the date payments during which such underpayments remain unpaid.

163.    The Counter-Defendants have failed to pay Counter-Plaintiffs for compensation earned during the month of May, 2007 in violation of the <u>Illinois Wage Payment and Collection Act</u> and the <u>Illinois Minimum Wage Law.</u>

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for unpaid wages, liquidated damages of 2% interest and reasonable attorney's fees and costs.

Ryan F. Stephan, James B. Zouras
and Stephan Zouras LLP.
Defendants

By one of their attorneys

Bradley K. Staubus
ESPOSITO & STAUBUS
134 N. LaSalle Street, Suite 500
Chicago, IL 60602
(312) 346-2766
Attorney No. 42935

26

## <u>VERIFICATION</u>

I, James B. Zouras under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have personal knowledge of the facts set forth in the Verified Counterclaim and the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.

_____
James B. Zouras

## <u>VERIFICATION</u>

I, Ryan F. Stephan, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have personal knowledge of the facts set forth in the Verified Counterclaim and the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.

Ryan F. Stephan

# AGREEMENT ON THE DIVISION OF FEES ON CLASS ACTION CASES

1.  In consideration of various and mutual promises and covenants between the parties, the law firm of Touhy and Touhy, Ltd. (hereinafter referred to as "the TOUHY firm"), by and through its sole shareholders and owners, Timothy J. Touhy and Daniel K. Touhy, and Timothy J. Touhy and Daniel K. Touhy, individually, do enter into this agreement with James B. Zouras (hereinafter referred to as "ZOURAS") and Ryan F. Stephan (hereinafter referred to as "STEPHAN"). The conditions, promises and covenants are set forth below:

2.  This agreement applies to the division of fees only with respect to class action cases. All other agreements concerning payment of referral fees to ZOURAS and STEPHAN on all other types of cases are in no way affected by this agreement and remain in full force and effect.

3.  **Class Actions Referred by ZOURAS or STEPHAN.** ZOURAS and STEPHAN shall together receive 40% of the attorneys' fees generated from and recovered by the TOUHY firm on all class action cases referred by ZOURAS or STEPHAN at any time in the past or in the future. ZOURAS and STEPHAN shall be deemed to have referred a class action under any of the following circumstances:

    A.  A class representative was referred by ZOURAS or STEPHAN;

    B.  A class representative was referred by anyone to ZOURAS or STEPHAN; or,

    C.  A class representative was referred by any class representative or other client on any other case who was referred in the manner described in paragraphs 3) A or B above.

4.  ZOURAS and STEPHAN are responsible for payment of their pro rata share of any additional referral fees out of their 40% share of the attorneys' fees described in paragraph 3) above. The TOUHY firm is responsible for payment of their pro rata share of any additional referral fees out of the remaining 60% share of the attorneys' fees described in paragraph 3) above. ZOURAS and STEPHAN will advise the TOUHY firm of the person(s) entitled to any

1


EXHIBIT
A

additional referral fees and the amount(s) owed, who will receive payment directly from the TOUHY firm. At the close of any case referred by ZOURAS or STEPHAN, they are together responsible for payment of 40% of any un-reimbursed costs and expenses incurred.

5. **All Other Class Actions.**

    A. Paragraph 5) (including all sub-paragraphs) applies to the division of fees on all class action cases not referred by ZOURAS or STEPHAN in which the TOUHY firm currently represents the Plaintiff(s) or has referred the case to other counsel. This paragraph specifically applies, but is not limited to, <u>Casale v. Provident Bank and Home 1-2-3 Corporation</u>, 04-2009.

    B. With respect to <u>Casale v. Provident Bank and Home 1-2-3 Corporation</u>, 04-2009, ZOURAS and STEPHAN shall receive 40% of the attorneys' fees generated after the TOUHY firm makes a deduction from the gross amount of attorneys fees pursuant to the following formula:

        1. If the gross amount is $500,000 or less, the TOUHY firm will make no deductions.

        2. If the gross amount is between $500,000 and $650,000, the TOUHY firm will deduct one dollar for every dollar between these two amounts.

        3. If the gross amount exceeds $650,000, the TOUHY firm will deduct 50 cents for every dollar exceeding this amount up to $450,000. Once the total deduction by the TOUHY firm pursuant to this formula equals $450,000, no further deductions will be made.

    C. With respect to all cases other than <u>Casale v. Provident Bank and Home 1-2-3 Corporation</u>, 04-2009, to which this paragraph applies, the TOUHY firm will take no deduction and ZOURAS and STEPHAN shall receive 40% of the attorneys' fees generated.

D.   ZOURAS and STEPHAN are not responsible for payment or reimbursement of any referral fees, costs, expenses or other liabilities on any cases referred in the manner described in paragraph 5).

6.   It is understood and agreed that the TOUHY firm, Timothy J. Touhy, Daniel K. Touhy, James B. Zouras and Ryan F. Stephan drafted this agreement and it shall be construed as such.

_____     12-17-04
Timothy J. Touhy, individually and as        dated
shareholder of Touhy & Touhy, Ltd.

_____     12-17-04
Daniel K. Touhy, individually and as        dated
shareholder of Touhy & Touhy, Ltd.

_____     12/17/04
James B. Zouras                              dated

_____     12/17/04
Ryan F. Stephan                              dated

3

TO:         Dan Touhy
FROM:       Jim Zouras
RE:         Agreement on referral fees

1. We agree that effective June 1, 2001, all payments on my referrals on contingent fee cases will equal ½ of the total fee.  If there is a referring lawyer, I will advise as to what percentage of that fee should be distributed to the referring lawyer.  At the close of any case I refer, I am responsible for payment of ½ of any costs and expenses incurred.  This agreement does not apply to my referral fee from <u>Ferrand v. Lopas</u>.

2. Payments on my referrals on hourly billing cases will equal 1/3 of the total fee payable at time of receipt of payment.

3. Payments by the firm to me on my referrals to other lawyers will equal 1/3 of the total referral fee received by the firm.

4. "My referrals" refers to:

    A..    Any clients referred by me;

    B.    Any clients referred by one of my referring lawyers; or,

    C.    Any clients referred by any clients referred in the manner described in paragraphs 4) A or B.

5. All attorney-client contracts will be signed in the firm's name.


EXHIBIT
B
Blumberg No. 5118

## IN THE CIRCDUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

TOUHY and TOUHY, LTD., an Illinois )
Professional Corporation, )
                    Plaintiff, )
    v. )
                           )    No. 07 CH 13552
RYAN F. STEPHAN, JAMES B. ZOURAS, )
And STEPHAN ZOURAS, LLP, an )
Illinois Limited Liability Partnership. )
                   )
              Defendants. )

### NOTICE OF FILING

To:    William K. Kane
        Lovells LLP
        330 North Wabash Ave.
        Suite 1900
        Chicago, Illinois 60611

                Michael V. Casey
                Varga, Berger, Ledsky, Hayes & Casey
                224 South Michigan Ave.
                Suite 350
                Chicago, Illinois 60604

       Please take notice that on June 21, 2007 we have caused to be filed with the Clerk of the Circuit Court of Cook County **Defendants' Verified Counterclaim at Law,** a copy of which is herewith served upon you.

### PROOF OF SERVICE

       Bradley K. Staubus certifies that he served a copy of **Defendants' Verified Counterclaim at Law** via regular mail upon counsel of record on June 21, 2007.

                          **Ryan F. Stephan, James B. Zouras**
                          **and Stephan Zouras LLP.**
                          Defendants

                          _____
                          By one of their attorneys

Bradley K. Staubus
ESPOSITO & STAUBUS
134 N. LaSalle Street, Suite 500
Chicago, IL 60602
(312) 346-2766
Attorney No. 42935

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **No. 07 CH 13552** |
| RYAN F. STEPHAN, JAMES B. ZOURAS, And STEPHAN ZOURAS, LLP, an Illinois Limited Liability Partnership. | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| | ) | |
| RYAN F. STEPHAN and JAMES B. ZOURAS, STEPHAN ZOURAS LLP | ) ) | |
| Counter-Plaintiffs | ) | |
| v. | ) ) | |
| TOUHY & TOUHY LTD., an Illinois Professional Corporation, TIMOTHY J. TOUHY and DANIEL K. TOUHY, Individually | ) ) ) ) | |
| Counter-Defendants | ) | |

## AMENDED VERIFIED COUNTERCLAIM AT LAW

Defendants/Counter-Plaintiffs James B. Zouras Ryan F. Stephan (hereinafter referred to individually as "Zouras" or "Stephan" and collectively as "Counter-Plaintiffs") and Stephan Zouras LLP ("Stephan Zouras LLP") file this Amended Verified Counterclaim at Law against Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy (hereinafter referred to as "Counter-Defendants").

    1.    Zouras is an attorney licensed to practice law in the State of Illinois since 1995.

    2.    Stephan is an attorney licensed to practice law in the State of Illinois since 2000.



3.      Until May 21, 2007, Counter-Plaintiffs were attorneys employed by Counter-Defendant Touhy & Touhy, Ltd., a Illinois Professional Corporation engaged in the practice of law in Illinois (hereinafter "the Touhy firm").

4.      Timothy J. Touhy and Daniel K. Touhy are the sole shareholders of Touhy & Touhy Ltd.

5.      On or about December 17, 2004, Counter-Plaintiffs James B. Zouras and Ryan F. Stephan, and Counter-Defendants Touhy & Touhy, Ltd., Timothy J. Touhy and Daniel K. Touhy, entered into a written agreement and/or joint venture agreement for the purpose of dividing attorneys' fees recovered on class action cases ("Class Action Agreement").  A true and correct copy of the Class Action Agreement attached and incorporated hereto as Exhibit A.

6.      Among other things, the Class Action Agreement provides that Counter-Plaintiffs are together to receive 40% of the attorneys' fees on any class or collective action cases referred by Zouras or Stephan to the Touhy Firm.

### COUNT I: BREACH OF CONTRACT
#### (*Reinsmith v. Castlepoint* Case)

7.      On June 6, 2005 the case of *Reinsmith et.al. v. Castlepoint* 05-CV-11168 (U.S. Dist Ct. Mass.) ("*Reinsmith*") was filed.   The *Reinsmith* case was a collective class action.

8.      The Touhy firm, through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Paul Reinsmith and Kevin Dinsdale, in the *Reinsmith* lawsuit.

9.      Reinsmith and Dinsdale were referred to the Touhy firm by Stephan or alternatively, these individuals were referred to Stephan and Zouras by another attorney or person who in turn referred them to the Touhy firm.

2

10.    On December 20, 2006, a Joint Stipulation for Settlement was filed with the Court stipulating to the settlement of the case as well as an attorneys' fee award and costs in the amount of $225,000.00. These fees were to be split with co-counsel Erik Langeland.

11.    Soon thereafter, the Touhy firm received the attorneys' fees in the amount $225,000.00 which were deposited into the Touhy firm client trust fund account. A portion of these funds were paid to co-counsel Erik Langeland.

12.    Upon information and belief, there is approximately $190,000.00 remaining after payment to co-counsel Erik Langeland.

13.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

14.    Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

15.    Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused to pay the amounts due, all to Counter-Plaintiffs' damage.

16.    Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT II: ACCOUNTING
### (*Reinsmith v. Castlepoint*)

17.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

18.    By reason of the joint venture agreement relationship alleged herein, there existed a fiduciary duty between the Counter-Plaintiffs and the Counter-Defendants.

3

19.　　There is a need for an accounting to determine the exact amount of funds and profits received by the Touhy firm from the *Reinsmith* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

20.　　Counter-Plaintiffs have made prior demands which have been refused. Without a proper accounting the amounts owed to Counter-Plaintiffs cannot be properly determined.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Reinsmith* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT III: BREACH OF FIDUCIARY DUTY
### (*Reinsmith v. Castlepoint*)

21.　　Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

22.　　There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement entered into on December 17, 2004 (also known as the "Class Action Agreement") relating to the division of fees on the case of *Reinsmith*.

23.　　There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Reinsmith* case.

24.　　Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

25.　　There existed a right to joint control and management of the property used in the enterprise.

4

26.    There was an agreement for the sharing in the profit and losses incurred in the joint venture.

27.    Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Reinsmith* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT IV: CONVERSION
### (*Reinsmith v. Castlepoint*)

28.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-16 above as if fully set forth herein.

29.    Counter-Plaintiffs had an immediate, absolute and unconditional right to 40% of the attorneys' fees recovered by the Touhy firm on the *Reinsmith* case upon the Touhy firm's receipt of these fees.

30.    Counter-Plaintiffs made a demand for possession of 40% of the attorneys' fees recovered by the Touhy firm on the *Reinsmith* case.

31.    The Touhy firm wrongfully and without authorization assumed control, dominion or ownership Counter-Plaintiffs' portion of the attorneys fees recovered by the Touhy firm on the *Reinsmith* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and

Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT V: BREACH OF CONTRACT
### (*Billman v. National City, et al.*)

32.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6 above as if fully set forth herein.

33.    On March 13, 2006 the case of *Billman et. al. v. National City Bank* (06-CV-138 (U.S. Dist Ct. S.D. Ohio) ("*Billman*") was filed.   The *Billman* case was a class action.

34.    The Touhy firm through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Marcia Billman, Kristen Brown, Tracey Casarcia and Chantay Horton, in the *Billman* lawsuit.

35.    Billman, Brown, Casarcia and Horton were referred to the Touhy firm by Stephan and Zouras or alternatively, these individuals were referred to Stephan and Zouras by another attorney or person who in turn referred them to the Touhy firm.

36.    On December 15, 2006, an Order of Dismissal with Prejudice was entered because the parties had reached a settlement.   The actual terms of the settlement are confidential and therefore any attorneys' fees paid are also confidential.

37.    Soon thereafter, the Touhy firm received certain attorneys' fees in an amount which remains confidential under the settlement agreement which were deposited into the Touhy firm client trust fund account.  A portion of these funds were paid to co-counsel Erik Langeland.

38.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

39.     Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

40.     Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused to pay the amounts due, all to Counter-Plaintiffs' damage.

41.     Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT VI: ACCOUNTING
### (*Billman v. National City, et al.*)

42.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 32-41 above as if fully set forth herein.

43.     By reason of the joint venture agreement relationship alleged herein, there existed a fiduciary duty between the Counter-Plaintiffs and the Counter-Defendants.

44.     There is a need for an accounting to determine the exact amount of funds and profits received by the Touhy firm from the *Billman* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

45.     Without a proper accounting the amounts owed to Counter-Plaintiffs cannot be properly determined.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Billman* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT VII: BREACH OF FIDUCIARY DUTY
### (*Billman v. National City, et al*)

46.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 32-41 above as if fully set forth herein.

47.     There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement entered into on December 17, 2004 (also known as the "Class Action Agreement") relating to the division of fees on the case of *Billman*.

48.     There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Billman* case.

49.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

50.     There existed a right to joint control and management of the property used in the enterprise.

51.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

52.     Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Billman* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT VIII: CONVERSION
### (*Billman v. National City, et al*)

53.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 32-41 above as if fully set forth herein.

54.     Counter-Plaintiffs had an immediate, absolute and unconditional right to 40% of the attorneys' fees recovered by the Touhy firm on the *Billman* case upon the Touhy firm's receipt of these fees.

55.     Counter-Plaintiffs made a demand for possession of 40% of the attorneys' fees recovered by the Touhy firm on the *Billman* case.

56.     The Touhy firm wrongfully and without authorization assumed control, dominion or ownership Counter-Plaintiffs' portion of the attorneys fees recovered by the Touhy firm on the *Billman* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT IX: BREACH OF CONTRACT
### (*Flynn v. MortgageIT, et al.*)

57.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6 above as if fully set forth herein.

58.     On April 29, 2005 the case of *Flynn, et. al. v. MortgageIT, et al* (05-CV-289) (U.S. Dist Ct. S.D. Ohio) ("*Flynn*") was filed.   The *Flynn* case was a class action.

59.     The Touhy firm through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Karen Flynn and Anthony Oulahan, in the *Flynn* lawsuit.

60.    Flynn and Oulahan were referred to the Touhy firm by Stephan and Zouras, or alternatively, these individuals were referred to Stephan and Zouras by another attorney or person who in turn referred them to the Touhy firm.

61.    On January 11, 2007, an Order of Dismissal with Prejudice was entered because the parties had reached a settlement.  The actual terms of the settlement are confidential and therefore any attorneys' fees paid are also confidential.

62.    Soon thereafter, and upon information and belief, these funds were deposited into the Touhy firm client trust fund account.  A portion of these funds were paid to co-counsel Erik Langeland.

63.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

64.    Under the Class Action Agreement, Counter-Plaintiffs are entitled to 40% of the attorneys' fees recovered by the Touhy firm.

65.    Despite Counter-Plaintiffs' demands, the Counter-Defendants have failed and refused pay the amounts due, all to Counter-Plaintiffs' damage.

66.    Counter-Plaintiffs have abided by the terms of the Class Action Agreement.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT X: ACCOUNTING
### (*Flynn v. MortgageIT, et al.*)

67.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 57-66 above as if fully set forth herein.

68.     By reason of the joint venture agreement relationship alleged herein, there existed a fiduciary duty between the Counter-Plaintiffs and the Counter-Defendants.

69.     There is a need for an accounting to determine the exact amount of funds and profits received by the Touhy firm from the *Flynn* matter, the amount paid to co-counsel and the amount of costs incurred in the litigation.

70.     Without a proper accounting the amounts owed to counter-Plaintiffs cannot be properly determined.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, for an accounting of all funds paid to the Touhy firm on the *Flynn* matter and that Counter-Defendants be ordered to pay the sums due plus costs of suit.

## COUNT XI: BREACH OF FIDUCIARY DUTY
### (*Flynn v. MortgageIT, et al.*)

71.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 57-66 above as if fully set forth herein.

72.     There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement entered into on December 17, 2004 (also known as the "Class Action Agreement") relating to the division of fees on the case of *Flynn*.

73.     There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Flynn* case.

74.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

11

75.     There existed a right to joint control and management of the property used in the enterprise.

76.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

77.     Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Flynn* case.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XII: CONVERSION
### *(Flynn v. MortgageIT, et al.)*

78.     Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 57-66 above as if fully set forth herein.

79.     Counter-Plaintiffs had an immediate, absolute and unconditional right to 40% of the attorneys' fees recovered by the Touhy firm on the *Flynn* case upon the Touhy firm's receipt of these fees.

80.     Counter-Plaintiffs made a demand for possession of 40% of the attorneys' fees recovered by the Touhy firm on the *Flynn* case.

81.     The Touhy firm wrongfully and without authorization assumed control, dominion or ownership Counter-Plaintiffs' portion of the attorneys fees recovered by the Touhy firm on the *Flynn* case.

12

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XIII: BREACH OF CONTRACT
### (*Tsebelis v. Jastrembsky*)

82.    Counter-Plaintiff Stephan hereby adopts and re-alleges the allegations of paragraphs 1-6 above as if fully set forth herein.

83.    On October 7, 2004, the case of *Tsebelis v. Jastrembsky* (04-M1-166227) (Circuit Court of Cook County) ("*Tsebelis*") was filed.   *Tsebelis* was a contingency fee case.

84.    Counter-Plaintiff Stephan and Counter-Defendants entered into an oral agreement for the purpose of dividing attorneys' fees recovered on contingent fee cases.  This agreement was made at or about the time Stephan began employment with the Touhy firm in a conversation between Daniel K. Touhy and Stephan.   Among other things, the contingent fee agreement provides that Stephan is to receive 50% of the attorneys' fees on contingent fee cases referred by Stephan to the Touhy Firm.  During Stephan's employment with the Touhy firm, Stephan was paid on a number of cases under the terms of this oral agreement.

85.    The Touhy firm through Ryan F. Stephan, represented the Plaintiff in the *Tsebelis* lawsuit.

86.    *Tsebelis* was referred to the Touhy firm by Stephan, or alternatively, this individual was referred to Stephan by another person who in turn referred them to the Touhy firm.

87.    In March of 2007, the *Tsebelis* case settled.

13

88.     Soon thereafter, and upon information and belief, attorneys fees were paid to the Touhy firm and deposited into the Touhy firm client trust fund account.

89.     Under his Contingent Fee Agreement, Stephan is entitled to 50% of the attorneys' fees recovered by the Touhy firm.

90.     Despite Stephan's demands, the Counter-Defendants have failed and refused pay the amounts due, all to Stephan's damage.

91.     Stephan has abided by the terms of the Contingent Fee Agreement.

Wherefore, Counter-Plaintiff, Ryan F. Stephan, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy plus costs of suit.

## COUNT XIV: CONVERSION
### (*Tsebelis v. Jastrembsky.*)

92.     Counter-Plaintiff Stephan hereby adopts and re-alleges the allegations of paragraphs 82-91 above as if fully set forth herein.

93.     Ryan F. Stephan had an immediate, absolute and unconditional right to 50% of the attorneys' fees recovered by the Touhy firm on the *Tsebelis* case upon the Touhy firm's receipt of these fees.

94.     Stephan made a demand for possession of 50% of the attorneys' fees recovered by the Touhy firm on the *Tsebelis* case.

95.     The Touhy firm wrongfully and without authorization assumed control, dominion or ownership Counter-Plaintiffs' portion of the attorneys fees recovered by the Touhy firm on the *Tsebelis* case.

Wherefore, Counter-Plaintiff, Ryan F. Stephan, requests judgment in his favor for compensatory, punitive and other damages, and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy plus costs of suit.

## COUNT XV: BREACH OF CONTRACT
### (*Estate of Michaels v. Dynaprop, et al*)

96.     Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 1-4 above as if fully set forth herein.

97.     On or about June 1, 2001, Counter-Plaintiff Zouras and Counter-Defendants entered into a written agreement for the purpose of dividing attorneys' fees recovered on contingent fee cases ("Contingent Fee Agreement").  A true and correct copy of the Contingent Fee Agreement attached and incorporated hereto as Exhibit B.

98.     Among other things, the Contingent Fee Agreement provides that Zouras is to receive 50% of the attorneys' fees on contingent fee case referred by Zouras to the Touhy Firm.

99.     On or about April 23, 2001, the case of *Harrison Michaels v. Dynaprop, et. al* (01-CV-4754) (Circuit Court of Cook County) ("*Michaels*") was filed.   The *Michaels* case was a contingent fee case.

100.    In September of 2006, following the death of Harrison Michaels, the *Estate of Harrison Michaels* was substituted as Plaintiff in the *Michaels* case. ("*Estate of Michaels*").  The *Estate of Michaels* was a contingent fee case.

101.    The Touhy firm through Daniel K. Touhy and James B. Zouras, represented the Plaintiff in the *Michaels* and *Estate of Michaels* lawsuits.

102.    *Michaels* and the *Estate of Michaels* cases were referred to the Touhy firm by Zouras, or alternatively, these individuals were referred to Zouras by another attorney or person who in turn referred them to the Touhy firm.

103.    In March of 2007, the *Estate of Michaels* case settled for a substantial confidential amount.

104.    On May 7, 2007, the *Estate of Michaels* settlement was approved by the Circuit Court of Cook County, Law Division trial court.

105.    On May 17, 2007, the *Estate of Michaels* settlement was approved by the Probate Court.

106.    The actual terms of the settlement are confidential and therefore the attorneys' fees paid are also confidential.

107.    Soon thereafter, and upon information and belief, these funds were deposited into the Touhy firm client trust fund account.

108.    Upon information and belief, these funds are still deposited in the Touhy firm client trust account.

109.    Under the Contingent Fee Agreement, Zouras is entitled to 50% of the attorneys' fees recovered by the Touhy firm.

110.    Despite Zouras' demands, the Counter-Defendants have failed and refused pay the amounts due, all to Zouras' damage.

111.    Zouras has abided by the terms of the Contingent Fee Agreement.

Wherefore, Counter-Plaintiff, James B. Zouras, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XVI: DECLARATORY JUDGMENT
### (*Perez et. al. v. RadioShack*)

112.    Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 1-6 above as if fully set forth herein.

16

113.    On October 31, 2002 the case of *Perez et. al.. v. RadioShack Corporation* 02-CV-7884 (Northern District of Illinois) ("*Perez v. RadioShack*") was filed.    The *Perez v. RadioShack* case was a collective class action.

114.    The Touhy firm, through Daniel K. Touhy, Zouras and Stephan, represented the lead class action representatives, Alphonse L. Perez and Douglas G. Phillips, in the *Perez v. RadioShack* lawsuit.

115.    Perez and Phillips were referred to the Touhy firm by Zouras or alternatively, these individuals were referred to Zouras by another attorney or person who in turn referred them to the Touhy firm.

116.    On March 16, 2007, an Order for Preliminary Approval of Settlement was entered by the Court.

117.    Upon information and belief, the settlement funds have not yet been received by the Touhy firm

118.    Zouras would seek a declaratory judgment against the Counter-Defendants that the monies due to Zouras under the Class Action Agreement be paid to him upon receipt of the settlement proceeds by the Touhy firm.

119.    Zouras has a legal tangible personal interest, different than that of the public in general.

120.    A case in controversy exists between the parties concerning the interests due to Zouras under the Contingent Fee Agreement since Timothy J. Touhy and/or Daniel K. Touhy have indicated to Zouras that these funds will not be paid to Zouras.

Wherefore, Counter-Plaintiff Zouras hereby requests that this Court enter an order declaring the rights of the parties under the Class Action Agreement related to the *Perez v.*

*RadioShack* case and ordering that these monies due Zouras under the Class Action Agreement be paid upon receipt by Counter-Defendants, plus costs of suit.

## COUNT XVII: BREACH OF FIDUCIARY DUTY
### (*Perez et. al. v. RadioShack*)

121.     Counter-Plaintiff Zouras hereby adopts and re-alleges the allegations of paragraphs 112-120 above as if fully set forth herein.

122.     There existed between Zouras on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the case of *Perez v. RadioShack*.

123.     There existed a community of interest in the purpose of the joint association, that being the prosecution of the *Perez v. RadioShack* case.

124.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

125.     There existed a right to joint control and management of the property used in the enterprise.

126.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

127.     Counter-Defendants breached their fiduciary duty to Zouras by failing to pay that portion of the profits received by Counter-Defendants which is due to Zouras on the *Perez v. RadioShack* case.

Wherefore, Counter-Plaintiff, James B. Zouras, requests judgment in his favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XVIII: DECLARATORY JUDGMENT
### (Other Cases Governed by the Class Action Agreement or Contingent Fee Agreement)

128.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-6, 84 and 96-98 above as if fully set forth herein.

129.    On May 21, 2007 Counter-Plaintiffs Stephan and Zouras were terminated from the Touhy firm.

130.    As of that date, there were, and continue to be a number of cases subject to the terms of the Class Action Agreement and respective Contingent Fee Agreements.  These cases include: *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco.*

131.    The Touhy firm, through Daniel K. Touhy, Zouras and/or Stephan, represented the plaintiffs and/or class action representatives in each one of the aforementioned cases.

132.    Each of these plaintiffs and/or class action representatives were referred to the Touhy firm by Stephan or Zouras or alternatively, these individuals were referred to Stephan or Zouras by another attorney or person who in turn referred them to the Touhy firm.

133.    The Touhy firm continues to represent at least one or more of the plaintiffs and/or class action representatives in each of the aforementioned cases.

134.    Counter-Plaintiffs would seek a declaratory judgment against the Counter-Defendants that the monies due to the Counter-Plaintiffs under the Class Action Agreement or Contingent Fee Agreement be paid to Counter-Plaintiffs if and when the Counter-Defendants recover any fees from any of the aforementioned cases by way of settlement, verdict or otherwise.

135.    Counter-Plaintiffs have a legal tangible personal interest, different than that of the public in general.

136.    A case in controversy exists between the parties concerning the interests due to Counter-Plaintiffs under the Class Fee Agreement or their respective Contingent Fee Agreements since Counter-Defendants have indicated to Counter-Plaintiffs that these funds will not be paid.

Wherefore, Counter-Plaintiffs hereby request that this Court enter an order declaring the rights of the parties under the Class Action Agreement and Contingent Fee Agreement related to the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco* cases and ordering that these monies due Counter-Plaintiffs under the Class Action Agreement or Contingent Fee Agreement be paid upon receipt by Counter-Defendants, plus costs of suit.

## COUNT XIX: BREACH OF FIDUCIARY DUTY
### (Other Cases Governed by the Class Action Agreement or Contingent Fee Agreement)

137.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 128-136 above as if fully set forth herein.

138.    There existed between Counter-Plaintiffs on one hand and the Counter-Defendants on the other a fiduciary duty pursuant to a joint venture agreement relating to the division of fees on the cases of *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco.*

139.    There existed a community of interest in the purpose of the joint association that being the prosecution of the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide;*

*Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco* cases.

140.     Each member of the joint venture had a right to direct and govern the policy of conduct of the other members.

141.     There existed a right to joint control and management of the property used in the enterprise.

142.     There was an agreement for the sharing in the profit and losses incurred in the joint venture.

143.     Counter-Defendants breached their fiduciary duty to Counter-Plaintiffs by failing to pay that portion of the profits received by Counter-Defendants which is due to Counter-Plaintiffs on the *Perez v. Wells Fargo; Colford v. H&R Block; Daly v. Countrywide; Chabrier v. WFI et. al. Bochicchio v. Equity One; Erlandson v. Illinois Mortgage Funding; Green v. Mauser;* and *Baldwein v. Invesco* cases.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XX
## UNJUST ENRICHMENT
### (In the Alternative)

144.     Counter-Plaintiffs Zouras and Stephan hereby adopt and re-allege the allegations of paragraphs 1-143 above as if fully set forth herein.

145.    That if the Counter-Defendants are permitted to receive the benefits of the cases described above without paying to Counter-Plaintiffs the amounts due, the Counter-Defendants will be unjustly enriched.

146.    The unjust enrichment will be to Counter-Plaintiffs' detriment

147.    Counter-Defendants retention of that benefit violates the principles of justice, equity, and good conscience.

Wherefore, Counter-Plaintiffs request this Court to impose a constructive trust for the benefit of the Counter-Plaintiffs on any future fees earned on any the above referenced files.

## COUNT XXI: TRESPASSING

148.    Stephan Zouras LLP hereby adopts and re-alleges the allegations of paragraphs 1-4 above as if fully set forth herein.

149.    On May 18, 2007, Stephan Zouras, LLP, and for approximately three weeks prior thereto, was, pursuant to a written lease, had the right to exclusive possession of private office space located at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois.

150.    At no time did Stephan Zouras, LLP, or any of its authorized agents, James B. Zouras and Ryan F. Stephan, grant any Counter-Defendant, or any agents or employee thereof, permission to enter any portion of its private office space located at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois.

151.    On May 18, 2007, Daniel K. Touhy, along with at least one other currently unknown individual, deliberately entered Counter-Plaintiff's private office space at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois without the permission or consent of Stephan Zouras, LLP, James B. Zouras or Ryan F. Stephan.

152.    On May 21, 2007, Defendant Daniel K. Touhy admitted to Zouras that he and at least one other person deliberately entered Counter-Plaintiff's private office space at 205 North Michigan Avenue, Suite 2560, Chicago, Illinois without permission.

153.    Daniel K. Touhy and at least one other person deliberately entered Counter-Plaintiff's private office space surreptitiously, by false pretenses and/or other deceptive means.

154.    The deliberate entry by Daniel K. Touhy and any other Counter-Defendant or any of their agents or employees into Counter-Plaintiff's private office space on May 18, 2007, or at any other time, was for the purpose of damaging, destroying, altering or conducting surveillance on Counter-Plaintiff's property.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00 plus costs of suit.

## COUNT XXII: SLANDER

155.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

156.    Beginning May 21, 2007 and continuing through the present date, Counter-Defendants have made false and defamatory statements about Counter-Plaintiffs to numerous current and former clients, co-counsel and other third-parties.

157.    Specifically, Counter-Defendants have imputed a lack of integrity in Counter-Plaintiffs' discharge of their duties in their profession as licensed attorneys to third persons by making statements, including the following:

a.    that they are "thieves," "crooks" and have otherwise committed criminal and fraudulent acts;

23

b.  that they have violated federal laws;

c.  that they have violated orders of court; and,

d.  that they are untrustworthy and third parties "should not do business with them."

158.   The statements made by Counter-Defendants as described above were not privileged and constitute defamation, *per se*.

159.   As a result of the statements made by Counter-Defendants as described above, Counter-Plaintiffs have sustained damages and suffered injury to their reputations.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XXIII: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

160.   Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

161.   On May 21, 2007 and for some time prior thereto, Counter-Plaintiffs had a reasonable expectation of entering or maintaining a valid business relationship with clients of Counter-Defendants, prospective clients, co-counsel, referring lawyers, employees and others.

162.   On May 21, 2007, Counter-Defendants had actual knowledge of Counter-Plaintiffs expectancy as set-forth above.

163.   On May 21, 2007, Counter-Defendants terminated the employ of Counter-Plaintiffs Zouras and Stephan.

164.    Counter-Defendants orchestrated and executed a deliberate and malicious scheme to interfere with and prevent Counter-Plaintiffs legitimate business expectation from ripening into valid business relationships.

165.    These actions included, but were not limited to:

a.  Failing to promptly return Counter-Plaintiffs server, lap top, hard drives and other computer equipment;

b.  Making false, disparaging and slanderous statements to clients of Counter-Defendants, prospective clients, co-counsel, referring lawyers, employees and others as set forth above;

c.  Trespassing onto Counter-Plaintiffs office space as set forth above; and,

d.  Failing to promptly deliver client file material to Counter-Plaintiffs after receiving instructions from the client to do so.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

**COUNT XXIV: VIOLATION OF THE ILLINOIS EAVESDROPPING ACT**

166.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 1-4 above as if fully set forth herein.

167.    This Count is brought pursuant to the Illinois Eavesdropping Statute, 720 ILCS 5/14-1, *et seq.*

168.    Section 14-2 of the Act provides that:

(a) A person commits eavesdropping when he:

25

(1)     Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all the parties to such conversation or electronic communication …

***

Section 14-6 of the Act provides

(1)     Any or all parties to any conversation upon which eavesdropping is practiced contrary to the Article shall be entitled to the following remedies:

(a)  To an injunction by the circuit court prohibiting further eavesdropping by the eavesdropping and by or on behalf of his principal, or either;

(b)  To all actual damages against the eavesdropper or his principal or both;

(c)  To any punitive damages which may be awarded by the court or by a jury;

***

169.    On May 21, 2007 and for time prior thereto, Counter-Defendants knowingly and intentionally used an eavesdropping device and/or devices as defined by the Act to listen and/or record Counter-Plaintiffs' telephone calls, voicemails and other electronic communications.

170.    On May 21, 2007, Defendant Timothy J. Touhy admitted to Stephan that Counter-Defendants had engaged in the conduct described above.

171.    The conduct described above was done without Counter-Plaintiffs' knowledge, authorization or consent.

172.    At no time did Counter-Defendants institute any policies concerning the monitoring or inspection of employees or their communications.

173.    As a result of the conduct by Counter-Defendants as described above, Counter-Plaintiffs have sustained damages.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, plus costs of suit.

## COUNT XXV: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA)
### (Yahoo Electronic Mail Accounts)

174.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 166-173 above as if fully set forth herein.

175.    This Count is brought pursuant to the Electronic Communications Privacy Act, 18 U.S.C. §2701, *et seq.*

176.    Under the Act, a violation occurs if a person "intentionally accesses, without authorization a facility through which an electronic communication service is provided … and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system …" 18 U.S.C. §2701(a).

177.    On May 21, 2007 and for some time prior thereto, James B. Zouras and Ryan F. owned secure private Yahoo accounts for the purpose of sending and receiving personal and private electronic mail between themselves and third parties.

178.    These Yahoo accounts were accessed using passwords neither Zouras nor Stephan revealed to anyone.

179.    Yahoo is a web-based email system. Neither Counter-Defendants' server nor any of their email systems were used by Zouras or Stephan to send or receive emails using their Yahoo accounts

180.    Emails Zouras and Stephan sent and received using their Yahoo accounts were not stored on Counter-Defendants' server or email systems.

181.    On May 21, 2007 and for some time prior thereto, Counter-Defendants wrongfully and without authorization or consent, intentionally accessed Counter-Plaintiffs Yahoo accounts, reviewed, electronically stored and/or printed their personal and private emails and disclosed them to third parties.

182.    By virtue of the foregoing, Counter-Plaintiffs suffered damages.

183.    By virtue of the foregoing, Counter-Defendants are liable to Counter-Plaintiffs for their violations of the ECPA.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, reasonable attorneys' fees plus costs of suit.

## COUNT XXVI: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA)
### (Legal Match Account)

184.    Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 166-183 above as if fully set forth herein.

185.    Before and after he left the employ of Counter-Defendants on May 21, 2007, Stephan was the sole owner of a secure "Legal Match" internet account which was for the purpose of receiving inquiries and communicating with potential clients via the internet.

186.  Counter-Defendants never owned a "Legal Match" account, nor did they have Stephan's authority or permission to access his account.

187.  The Legal Match account was accessed using a password Stephan did not reveal to anyone during his employment with Counter-Defendants.

188.  The Legal Match account was accessed via the internet.  Information and communications received through the Legal Match account were not stored on Counter-Defendants' server or email systems.

189.  Before and after May 21, 2007, Counter-Defendants wrongfully and without authorization or consent, intentionally accessed Stephan's Legal Match account, reviewed and saved electronically stored information contained therein and disclosed this information to third parties.

190.  By virtue of the foregoing, Counter-Plaintiffs suffered damages.

191.  By virtue of the foregoing, Counter-Defendants are liable to Counter-Plaintiffs for their violations of the ECPA.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages, reasonable attorneys' fees plus costs of suit.

## COUNT XXVII: UNREASONABLE INTRUSION UPON SECLUSION

192.  Counter-Plaintiffs hereby adopt and re-allege the allegations of paragraphs 166-191 above as if fully set forth herein.

193.    Before and after May 21, 2007, Counter-Defendants wrongfully and without authorization or consent, intentionally searched the personal briefcases, folders, files and other effects of Counter-Plaintiffs.

194.    Before and after May 21, 2007, Counter-Defendants wrongfully and without authorization or consent, intentionally acquired, reviewed and made copies of counter-Plaintiffs' personal, private and confidential documents contained in personal briefcases, folders, files and otherwise and distributed them to third persons.

195.    At all times material hereto, Counter-Plaintiffs had a reasonable expectation of privacy in their Yahoo emails, Legal Match account and personal briefcases, folders, files and other effects.

196.    A reasonable person would consider Counter-Defendants' conduct as described above offensive or unreasonable.

197.    By virtue of the foregoing, Counter-Plaintiffs suffered damages.

Wherefore, Counter-Plaintiffs, James B. Zouras and Ryan F. Stephan, request judgment in their favor and against Counter-Defendants Touhy & Touhy Ltd., Timothy J. Touhy and Daniel K. Touhy, in excess of $50,000.00, including compensatory, punitive and other damages plus costs of suit.

<div style="margin-left: 40%;">

Ryan F. Stephan, James B. Zouras
and Stephan Zouras LLP.
Defendants/Counter-Plaintiffs

_____
By one of their attorneys

</div>

Bradley K. Staubus
Esposito & Staubus
134 N. LaSalle Street, Suite 500
Chicago, IL 60602
(312) 346-2766
Attorney No. 42935

## **VERIFICATION**

I, James B. Zouras under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have personal knowledge of the facts set forth in the Amended Verified Counterclaim and the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.


James B. Zouras

## **VERIFICATION**

I, Ryan F. Stephan, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have personal knowledge of the facts set forth in the Amended Verified Counterclaim and the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies that he verily believes the same to be true.

Ryan F. Stephan

# AGREEMENT ON THE DIVISION OF FEES ON CLASS ACTION CASES

1. In consideration of various and mutual promises and covenants between the parties, the law firm of Touhy and Touhy, Ltd. (hereinafter referred to as "the TOUHY firm"), by and through its sole shareholders and owners, Timothy J. Touhy and Daniel K. Touhy, and Timothy J. Touhy and Daniel K. Touhy, individually, do enter into this agreement with James B. Zouras (hereinafter referred to as "ZOURAS") and Ryan F. Stephan (hereinafter referred to as "STEPHAN"). The conditions, promises and covenants are set forth below:

2. This agreement applies to the division of fees only with respect to class action cases. All other agreements concerning payment of referral fees to ZOURAS and STEPHAN on all other types of cases are in no way affected by this agreement and remain in full force and effect.

3. **Class Actions Referred by ZOURAS or STEPHAN.** ZOURAS and STEPHAN shall together receive 40% of the attorneys' fees generated from and recovered by the TOUHY firm on all class action cases referred by ZOURAS or STEPHAN at any time in the past or in the future. ZOURAS and STEPHAN shall be deemed to have referred a class action under any of the following circumstances:

   A. A class representative was referred by ZOURAS or STEPHAN;

   B. A class representative was referred by anyone to ZOURAS or STEPHAN; or,

   C. A class representative was referred by any class representative or other client on any other case who was referred in the manner described in paragraphs 3) A or B above.

4. ZOURAS and STEPHAN are responsible for payment of their pro rata share of any additional referral fees out of their 40% share of the attorneys' fees described in paragraph 3) above. The TOUHY firm is responsible for payment of their pro rata share of any additional referral fees out of the remaining 60% share of the attorneys' fees described in paragraph 3) above. ZOURAS and STEPHAN will advise the TOUHY firm of the person(s) entitled to any

1

Blumberg No. 5118    EXHIBIT    A

additional referral fees and the amount(s) owed, who will receive payment directly from the TOUHY firm. At the close of any case referred by ZOURAS or STEPHAN, they are together responsible for payment of 40% of any un-reimbursed costs and expenses incurred.

5.   **All Other Class Actions**.

A.   Paragraph 5) (including all sub-paragraphs) applies to the division of fees on all class action cases not referred by ZOURAS or STEPHAN in which the TOUHY firm currently represents the Plaintiff(s) or has referred the case to other counsel. This paragraph specifically applies, but is not limited to, Casale v. Provident Bank and Home 1-2-3 Corporation, 04-2009.

B.   With respect to Casale v. Provident Bank and Home 1-2-3 Corporation, 04-2009, ZOURAS and STEPHAN shall receive 40% of the attorneys' fees generated after the TOUHY firm makes a deduction from the gross amount of attorneys fees pursuant to the following formula:

1.   If the gross amount is $500,000 or less, the TOUHY firm will make no deductions.

2.   If the gross amount is between $500,000 and $650,000, the TOUHY firm will deduct one dollar for every dollar between these two amounts.

3.   If the gross amount exceeds $650,000, the TOUHY firm will deduct 50 cents for every dollar exceeding this amount up to $450,000. Once the total deduction by the TOUHY firm pursuant to this formula equals $450,000, no further deductions will be made.

C.   With respect to all cases other than Casale v. Provident Bank and Home 1-2-3 Corporation, 04-2009, to which this paragraph applies, the TOUHY firm will take no deduction and ZOURAS and STEPHAN shall receive 40% of the attorneys' fees generated.

2

    D.    ZOURAS and STEPHAN are not responsible for payment or reimbursement of any referral fees, costs, expenses or other liabilities on any cases referred in the manner described in paragraph 5).

6.    It is understood and agreed that the TOUHY firm, Timothy J. Touhy, Daniel K. Touhy, James B. Zouras and Ryan F. Stephan drafted this agreement and it shall be construed as such.

_____   12-17-04
Timothy J. Touhy, individually and as    dated
shareholder of Touhy & Touhy, Ltd.

_____   12-17-04
Daniel K. Touhy, individually and as    dated
shareholder of Touhy & Touhy, Ltd.

_____   12/17/04
James B. Zouras    dated

_____   12/17/04
Ryan F. Stephan    dated

3

TO:         Dan Touhy
FROM:       Jim Zouras
RE:         Agreement on referral fees

    1.  We agree that effective June 1, 2001, all payments on my referrals on contingent fee cases will equal ½ of the total fee.  If there is a referring lawyer, I will advise as to what percentage of that fee should be distributed to the referring lawyer.  At the close of any case I refer, I am responsible for payment of ½ of any costs and expenses incurred.  This agreement does not apply to my referral fee from <u>Ferrand v. Lopas</u>.

    2.  Payments on my referrals on hourly billing cases will equal 1/3 of the total fee payable at time of receipt of payment.

    3.  Payments by the firm to me on my referrals to other lawyers will equal 1/3 of the total referral fee received by the firm.

    4.  "My referrals" refers to:

        A..      Any clients referred by me;

        B.       Any clients referred by one of my referring lawyers; or,

        C.       Any clients referred by any clients referred in the manner described in paragraphs 4) A or B.

    5.  All attorney-client contracts will be signed in the firm's name.



EXHIBIT
B

# EXHIBIT E

Order　　　　　　　　　　　　　　　　　　　CCG N002-300M-2/24/05 (　　　　　　　)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Tanty & Touity

　　　　　v.　　　　　　　　　　　No. 07 CH 13552

Stephan et al.

### ORDER

THIS MATTER COMING TO BE HEARD ON DEFENDANTS MOTION TO DISQUALIFY THE LAW FIRM OF O'ROURKE, KASTEN & MOODY AND DEFENDANTS MOTION TO QUASH DEPOSITION AND RECORDS SUBPOENAS AND FOR PROTECTIVE ORDER

IT IS HEREBY ORDERED:

1. O'ROURKE SHALL RESPOND TO THE MOTION TO DISQUALIFY ON OR BEFORE AUGUST 6 2007,

2. DEFENDANTS SHALL REPLY ON OR BEFORE AUGUST 13 2007

3. HEARING ON THE MOTION TO DISQUALIFY IS SET FOR AUGUST 15 2007 AT 10:30 A.M.

4. ALL DEPOSITIONS AND THE PRODUCTION OF DOCUMENTS PURSUANT TO THE SUBPOENAS ISSUED BY O'ROURKE KASTEN & MOODY ON JULY 16, 2007 ARE HEREBY STAYED PENDING FURTHER ORDER OF THE COURT

5. HEREAFTER ANY SUBPOENAS ISSUED TO ANY THIRD PARTY SHALL BE SUBJECT TO A 201(K) CONFERENCE BETWEEN COUNSEL AND WITH THE COURTS ASSISTANCE, IF NECESSARY

6. JAMES PHELAN IS REMOVED AS A PROCESS SERVER IN THIS CASE

7. ~~THE PARTIES SHALL CONFER AND AGREE UPON A MUTUALLY AGREEABLE PROCESS SERVER~~

7. DEFENDANTS MOTION TO QUASH IS ENTERED AND CONTINUED GENERALLY UNTIL AUGUST 15 2007 AT 10:30 A.M.

Atty. No.: 42935

Name: ESPOSITO & STAIBUS

Atty. for: DS

Address: 134 N LASALLE #500

City/State/Zip: CHICAGO IL 60602

Telephone: 312-346-2766

ENTERED: UNTIL AUGUST 15 2007 AT 10:30 A.M.

Dated: _____

Judge _____　　Judge's No. _____

ENTERED
JUDGE KATHLEEN M. PANTLE-1775
JUL 25 2007
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Order                                          CCG N002-300M-2/24/05 (

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Touhey and Touhy LHO

v.

Ryan J. Stephens, et al

No. 07 CH 13552

## ORDER

THIS CAUSE BEING HEARD UPON DEFENDANTS' EMERGENCY MOTION FOR PROTECTIVE ORDER. THE PARTIES HAVING APPEARED BY COUNSEL; KEN LEVINSON HAVING ALSO APPEARED,

IT IS HEREBY ORDERED THAT THE DEPOSITION OF KEN LEVINSON, BY SUBPOENA, IS ENTERED AND CONTINUED PURSUANT TO FURTHER ORDER OF COURT IN THE EVENT THE COURT DETERMINES ITS RELEVANCE UPON THE COURT'S DETERMINATION OF LIABILITY AND DAMAGES RELATED TO THE MONIES WHICH ARE HELD IN TRUST BY MR. LEVINSON AND BY DEFENDANTS' COUNSEL HEREIN.

Atty. No.: 42935

Name: BRADLEY K. STAUBUS

Atty. for: DEFENDANTS

Address: 134 N. LASALLE ST., #500

City/State/Zip: CHICAGO IL. 60602

Telephone: 312 - 346 - 2761

ENTERED:

Dated:

Judge

**ENTERED**
JUDGE KATHLEEN M. PANTLE-1775

JUL 20 2007

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**