**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOUHY & TOUHY, Ltd.,<br>a professional corporation,<br><br>Plaintiff,<br><br>v.<br><br>ERIK H. LANGELAND and<br>ERIK H. LANGELAND, P.C.<br>a professional corporation,<br><br>Defendants. | )<br>)<br>)<br>) No.    08 cv 2950<br>)<br>) Judge Holderman<br>)<br>) Magistrate Judge Ashman<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO MOTION TO DISMISS UNDER RULE 19**

**QUESTIONS PRESENTED**

1.  This court cannot exercise diversity jurisdiction unless the amount in controversy exceeds $75,000.  Is there competent proof that the aggregate claims against Langeland exceed $75,000?

2.  Under Rule 19(a) necessary parties should be joined if feasible.  Since this court will have federal question jurisdiction if Stephan and Zouras are joined under Rule 19(a), is dismissal even a consideration?

3.  Can Stephan and Zouras be considered indispensable parties because they are joint tortfeasors?

**I.    The amount in controversy in this case exceeds $1,000,000**

Langeland has submitted his own affidavit to support his contention that the amount in controversy in this action does not exceed the $75,000 jurisdictional minimum.  When a party challenges jurisdiction based upon the amount in controversy, as Langeland has done here, the

court determines whether the amount in controversy exceeds $75,000 by considering competent proof bearing on that issue. *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536 (7th Cir., 2006). The district court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 625 (7th Cir., 2007).

A plaintiff can satisfy the $75,000 jurisdictional minimum by aggregating all of his claims against the defendant. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir., 2007)(It is well settled that while an individual plaintiff's multiple claims against a single defendant may be aggregated to determine diversity jurisdiction). The court in *Meridian* suggested several ways in which parties can establish the amount in controversy:

- by contentions interrogatories or admissions made in state court;
- by calculation from the complaint's allegations;
- by reference to the plaintiff's informal estimates or settlement demands;
- introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. At 541.

If the plaintiff produces competent proof that the amount in controversy exceeds $75,000, the court is to conduct a hearing under Rule 12(b)(1). The sum claimed by plaintiff controls if the claim is apparently made in good faith and supported by competent proof. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. 303 U.S. at 288-89 (footnotes omitted). Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendants) will be less than the jurisdictional floor may the case be dismissed. *Meridian Sec. Ins. Co.,* at 542 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.***,** 303 U.S. 283, 293 (1938)). This means that Langeland must prove to a legal certainty that Plaintiff's claim is less than $75,000.00.

## II.    Langeland has already received approval from the U.S. District Court in which he will  receive $337,500 in attorney's fees in connection with a Touhy firm case

The Plaintiff's complaint alleges that on or about November 6, 2006 Langeland obtained privileged prospective client information from the Touhy firm website, TouhyLawcom, used this information, as well as Touhy firm forms, contacted the client, signed an agreement with him and filed an action on Mr. Yang's behalf. That Langeland obtained this information from the Touhy law website is beyond dispute, as the paper trail proves. (Exhibits 6 and 8, Touhy firm emails November 2006).  Langeland does not dispute that he did this, only that the value of the Yang case is less than $75,000.

Langeland swears in his affidavit that he has not been paid attorney's fees in Steven Yang's case: *"To date, no final settlement or judgment has been entered in the Yang Action and no attorney's' fees have been paid in connection with the Yang Action."* (Exhibit A, Langeland affidavit). That statement is true, but not the whole truth.  There is one glaring omission. Langeland is going to receive $337,500 in attorney's fees in that case.  In June 2008 the US District Court for the Southern District of New York gave preliminary approval to pay $337,500.00 in attorney's fees to plaintiffs' counsel, namely, Langeland.  (Exhibit 1 and 2, Order of June 2, 2008, *Yang v. NYMC*, No. 06 cv 14429.  The court also approved a settlement in that case of $1,350,000.  This settlement was approved just six weeks before Langeland executed the affidavit that he submitted to this court.  Langeland's affidavit should therefore be corrected to reflect that he is recovering attorney's fees in Yang of $337,500.

## III.    The amount in controversy in the case of Steven Ferko is $75,000

Yang is only one case, Steven Ferko is another.  Steven Ferko  signed a contingent contract with the Touhy firm in which Ferko agreed to pay the Touhy firm a percentage of the recovery made on Ferko's behalf.  (Exhibit 3,  affidavit of Timothy J. Touhy).  A recovery on the

Ferko case was obtained in April 2007, which recovery was subject to a confidentiality agreement. Under the terms of the agreement the Touhy firm was entitled to a contingent recovery of $75,000. (Exhibit 3). Langeland diverted $75,000 in attorney's fees due the Touhy firm from the Ferko case. Attorney's fees in the amount of $63,750 from Ferko's claim were paid directly to Erik Langeland, who paid $40,716 to Stephan and Zouras in their individual names and kept at least $23,034. (Exhibit 11, Langeland-Ferko checks). It is uncertain whether Langeland reduced the amount of the contractual fee due the Touhy firm by $15,000 or received additional payment from other sources for the $15,000 difference. In either event, Langeland's acts of conversion and fraud deprived the Touhy firm of $75,000.

## IV.   Langeland is subject to forfeiture of over $600,000 in attorney's fees received from the Touhy firm

Between 2005 and 2008 Erik Langeland had a fiduciary relationship with the Touhy firm as co-counsel on a number of cases. By virtue of his status in these joint ventures with the Touhy firm, Langeland was a fiduciary; and defendants do not contest that Langeland owed a duty of loyalty and fair dealing to the Touhy firm.[1] A fiduciary who breaches these duties must forfeit compensation or money received because he usurped opportunities of the principal. Id. Langeland is subject to the forfeiture of all attorney's fees he received from the Touhy firm during the time he breached his fiduciary duty. In this case, that amounts to as much as $678,159.51. It is expected that Langeland will receive another $50,000 in attorney's fees over this $678,159.51 as a result of his co-counsel relationship with the Touhy firm in the action

---

[1] Illinois law follows the longstanding principal that a fiduciary who breaches his duty of loyalty by engaging in self dealing must forfeit all compensation received during the period of the fiduciary breach. *Vendo Co. v. Stoner*, 58 Ill.2d 289 (1974). The principle of forfeiture has been applied to fiduciaries in a principal-agent setting, corporate officers, partners and attorneys. *Dowd and Dowd, Ltd. v. Gleason*, 352 Ill.App.3d 365, 385 (1st Dist.,2004).

*Chemi v. Champion Mortgage,* which case was settled and approved by the District Court in April 2008. (Exhibit 4, Touhy firm check register, Exhibit 7, *Chemi* settlement agreement). The attorney's fees from *Chemi* would also be subject to forfeiture by Langeland since it was clear that Langeland's fiduciary breaches were ongoing during the pendency of the *Chemi* action.

Langeland makes reference to the dismissal of the complaint in the case *Bouthner v. Amtrust*, but his affidavit is noticeably silent on the status of *Shabazz*, another case in which Langeland committed fiduciary breaches, fraud and interference with a prospective economic advantage. *Shabazz* has been certified as a collective class action with at least 67 opt-in plaintiffs. There are twice as many plaintiffs in *Shabazz* than *Yang* - meaning that Langeland stands to recover over $200,000 in attorney's fees in *that* case. (Exhibit 3, affidavit of Timothy J. Touhy). The amount in controversy from monies that Langeland converted and which are subject to forfeiture in these cases exceed $1,000,000.

## A)  Punitive damages

In addition to these provable compensatory damages, Langeland is subject to the imposition of punitive damages because his wrongful conduct is predicated on the intentional torts of fraud, conversion and fiduciary breach. Punitive damages are appropriate to punish and deter the conduct of a defendant who has intentionally breached a fiduciary duty, particularly when in a position of trust and confidence. *Dowd & Dowd, Ltd. v. Gleason,* 352 Ill.App.3d 365, 387-88, 287 Ill.Dec. 787, 816 N.E.2d 754, 773 (2004).

Although we do not rest our jurisdictional damages on an unspecified claim for punitive damages, there is ample authority to support punitive damage awards in excess of $100,000. In *Dowd & Dowd* the Illinois Appellate Court affirmed a punitive damage award of $100,000 against partners in a law firm who had engaged in self-dealing by soliciting firm clients. The

Illinois Appellate Court has affirmed a punitive damage awards in similar cases. *Caparos v. Morton,* 364 Ill.App.3d 159, 845 N.E.2d 773, 300 Ill.Dec. 884 (1st Dist.,2006)(affirming $1,000,000 punitive verdict against partners who had used partnership funds for their own economic benefit and concealed their misconduct from the other partners). *E.J. McKernan Co. v. Gregory,* 252 Ill.App.3d 514, 623 N.E.2d 981, 191 Ill.Dec. 391 (2d Dist., 1993)(punitive damage award of $420,000 affirmed against corporate officers who breached their fiduciary duty and tortiously interfered with the Company's business expectancy by soliciting the Company's customers for defendants' own economic advantage).

Punitive damages can be considered in ascertaining the amount in controversy although that seems unnecessary in light of the established monetary losses. *Sharp Electronics Corp. v. CopyPlus, Inc.* 939 F.2d 513 (7th Cir., 1991)(Distributor's suit against manufacturer for misrepresentation, breach of contract, and breach of warranty satisfied $50,000 amount in controversy requirement for diversity jurisdiction; complaint requested compensatory damages of $15,000, punitive damages may have been available under Wisconsin law for fraudulent misrepresentation, and total verdict of $50,000 would not have been excessive).

These cases demonstrate that intentional fiduciary breaches, similar to those alleged against Langeland, will support substantial punitive damages which can easily exceed the minimum jurisdictional amount required for diversity. Contrary to Langeland's argument, his liability for punitive damages is neither speculative nor nominal, particularly in light of the calculated and repetitive nature of Langeland's fiduciary breaches and misconduct. One point bears emphasis. Our five claims against Langeland rest on Langeland's misconduct, not that of Stephan or Zouras. We have alleged that Langeland committed these acts of fraud, conversion,

self-dealing and fiduciary breach, and Langeland is liable for the damages which flow from his

own acts.  At the end of the day, Langeland's acts have caused losses totaling over $1,000,000.

## V.    Granting Langeland's motion for joinder will not deprive this Court of jurisdiction

Langeland's statement that the court will be deprived of jurisdiction if Stephan and

Zouras are joined as parties is incorrect.  (Def. Memo. p. 8)  Joining Stephan and Zouras in this

litigation would vest this Court with jurisdiction under 28 U.S.C. § 1331 because their joinder

would entail a federal question.

The plaintiff has a pending action against Stephan and Zouras under a federal statute, i.e.,

The  Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq*., which action alleges

that Stephan and Zouras accessed Touhy firm computers without authorization thereby causing

the Touhy firm to experience loss and damage under the Act.  *International Airport Centers,*

*L.L.C. v. Citrin*, 440 F.3d 418 (7TH Cir. 2006).[2]  Stephan and Zouras have also invoked federal

jurisdiction in their state court counterclaim by alleging causes of action under the Electronic

Communications Privacy Act, 18 U.S.C. § 2701.  Accordingly, there are independent bases of

federal jurisdiction which will exist if Stephan and Zouras are joined.  Therefore, there is nothing

that prevents this court from ordering their joinder if Langeland wants them joined.[3]

---

[2] Stephan and Zouras have requested the state court to dismiss the Touhy firm's action under the federal Computer Fraud and Abuse Act.  The trial judge previously granted motions to dismiss the action under this federal statute, holding that it was necessary for the plaintiff to allege that it suffered "loss"as well as "damage" under the Act and to allege that the defendants accessed the Touhy firm computers without authorization.  The plaintiff has alleged these three elements, supporting the verified allegations with sworn testimony of an expert witness. (Exhibits 13, 14 and 15, Orders of April 1 and May 12, 2008; Motion for Leave to File Amended Count III).

[3] If the court orders joinder of Stephan and Zouras under Rule 19, the plaintiff will file an amended complaint naming the absent parties and allege violations of the Federal Computer Fraud and Abuse Act. The plaintiff will submit this amended complaint to the court should any question arise whether the court can maintain jurisdiction.  Should the court have to make such a determination under Rule 19(b), it can take steps to shape the relief by entry of an order which requires the presence of federal question jurisdiction before the court makes final decision concerning joinder or dismissal. (the court can consider " . . .

In sum, the court has diversity jurisdiction if Stephan and Zouras are not joined and federal question jurisdiction if they are.  In either case, jurisdiction exists.

**V.      Joining Stephan and Zouras is not mandated under Rule 19 as they are not indispensable parties**

The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources. *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir.1990).  As we have explained, Stephan and Zouras are subject to both joinder and service of process.  The question is whether Langeland wants them joined.

Under Rule 19(a), the court must first determine whether a party should be joined if feasible; if joinder of the party would deprive the court of jurisdiction, the court must examine the four factors set forth in Rule 19(b). *Id.* at 1447. The court need not reach the question of whether a party is indispensable under Rule 19(b) if joinder of that party would not destroy federal jurisdiction. Because there are claims which arise under federal law if Stephan and Zouras are joined, the court's jurisdiction does not depend on the diversity of the parties, and therefore the court need only analyze joinder under Rule 19(a).

Under Rule 19(a), the court must assess whether Stephan and Zouras claim an interest relating to the subject of the action such that failure to join them may, "(i) as a practical matter impair or impede [Langeland's ability] to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.".

---

the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, Id.")

8

Langeland essentially argues that if Stephan and Zouras are not joined, Langeland may become involved in litigation with Stephan and Zouras which may result in an inconsistent type of judgment. Langeland does not explain how this could occur.  Nor does Langeland explain why he cannot implead Stephan and Zouras for contribution or call them as witnesses.  They are residents of this judicial district and subject to service of process as both parties and witnesses. Langeland seems to imply that Stephan and Zouras are necessary because they are joint tortfeasors - or because Stephan and Zouras may be liable to indemnify Langeland.   But Langeland is wrong on this point, since potential indemnitors have never been considered to be indispensable parties, or even parties whose joinder is required if feasible. *Pasco Intern. (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir., 1980).

That principle applies equally to joint tortfeasors who are subject to a possible right of contribution. Id., at n.45. Since the liability of potential indemnitors or joint tortfeasors is "several," one of a number of joint tortfeasors or a tortfeasor with a potential indemnitor may be sued alone (here Langeland).  *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329-330 (1955) (members of an alleged conspiracy to monopolize the business of distributing motion picture accessories were, as joint tortfeasors, not indispensable parties to an antitrust suit).  *See also, Samaha v. Presbyterian Hospital in City of N.Y.*, 757 F.2d 529, 531 (2d Cir., 1985)(a non-diverse defendant was not an indispensable party to claims for breach of contract and fraud where the non-diverse defendant was alleged to be jointly and severally liable with diverse defendants in an alleged fraud and conspiracy to commit fraud: "[I]t is settled federal law that joint tortfeasors are not indispensable parties").

If Langeland was scheming with Stephan and Zouras that fact cannot be a defense which Langeland can assert for another reason. The law is well-settled that breaches of fiduciary duty do not give rise to joint and several liability in any event, therefore scotching Langeland's suggestion that the presence of any confederates he may have used in this litigation are necessary. *Cherney v. Soldinger,* 299 Ill.App.3d 1066, 702 N.E.2d 231 (1st Dist.,1998). Langeland's liability for his fiduciary breaches is not a shared liability which he can dilute by passing the buck to Stephan and Zouras.

One point of clarification is necessary. Our amended complaint alleges five separate causes of action against Langeland which are predicated upon Langeland's own wrongful conduct involving his acts of conversion, fraud and fiduciary breach. These claims are not dependant upon the wrongful conduct of Stephan and Zouras or anyone else other than Langeland himself. Defendant's claim that it would be "prejudicial" if Stephan and Zouras are not joined is unfounded on the law and facts.

We do not believe that Langeland has demonstrated that Stephan and Zouras are indispensable to this litigation. If Langeland seeks joinder, that option is available – not dismissal. Joining Stephan and Zouras under Rule 19 will not deprive this court of jurisdiction over all of these parties. Dismissal as a remedy under Rule 12(b) is therefore inappropriate. Of course, diversity of citizenship and the amount in controversy is of no moment if this Court's jurisdiction is premised upon the existence of a federal question. This court should grant Defendant relief under Rule 19 by ordering Stephan and Zouras joined.

Date:   July 29, 2008                          Respectfully submitted,


                                               /s/E. Steven Yonover
                                               E. Steven Yonover
                                               55 West Wacker Drive
                                               14th Floor
                                               Chicago, Illinois 60601
                                               (312) 236-9493
                                               (847) 205-0022

                                               Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, certify that a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS UNDER RULE 19** was served on the following individuals, via electronic mail and/or ordinary U.S. mail, postage prepaid, this 29th day of July, 2008.


Kimberly E. Rients Blair
Tyler Mertes
Thomas Cronin
Gordon & Rees, LLP
1 North Franklin Street, 1800
Chicago, Illinois 60606



                                        /s/E. Steven Yonover
                                        E. Steven Yonover
                                        One of the Attorney's for Plaintiff


E. Steven Yonover
55 West Wacker Drive
14th Floor
Chicago, Illinois 60601
(312) 236-9493
(847) 205-0022

# EXHIBIT
# 1

# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEVEN G. YANG AND CHRISTOPHER DAUBIERE, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No. 06 CV 14429 (GEL)** |
| v. | ) ) | **ECF CASE** |
| NEW YORK MORTGAGE COMPANY, LLC and NEW YORK MORTGAGE TRUST, INC. | ) ) ) ) | |
| Defendants. | ) | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/2/08

## ORDER: (1) PROVISIONALLY CERTIFYING A SETTLEMENT CLASS; (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT (3) DIRECTING DISTRIBUTION TO THE CLASS OF NOTICE OF SETTLEMENT AND OPPORTUNITY TO "OPT OUT" OR OBJECT TO SETTLEMENT; AND (4) SETTING A HEARING FOR FINAL APPROVAL OF THE SETTLEMENT

Representative Plaintiffs Steven Yang and Christopher Dabiere ("Plaintiffs") have alleged in the above-captioned action that Defendant New York Mortgage Co., LLC and New York Mortgage Trust ("NYM or Defendants") failed to pay a class of individuals overtime premium wages for work performed beyond 40 hours in a workweek. Defendants deny Plaintiffs' allegations.

The "Settlement Class" consists of "individuals employed by NYM as loan officers in its offices as follows:

| New, Vermont or Maine York: | December 13, 2000 to March 31, 2007 |
|---|---|
| Kentucky: | October 11, 2002 to March 31, 2007 |
| All other locations: | October 11, 2004 to March 31, 2007 |

After extensive class discovery and settlement discussions, the parties mediated this dispute on December 28, 2007. After mediating for more than ten hours, the parties settled this matter in principle for $1,350,000. The parties continued to negotiate the terms of the agreement for four months following the mediation. In connection with the settlement, NYM has agreed to place the settlement amount in escrow within three days of the Court's preliminary approval of the settlement.

Plaintiffs have moved this Court to (1) provisionally certify a settlement class; (2) preliminarily approve the Settlement Agreement; (3) direct distribution to the class of a proposed Notice of Settlement and Opportunity to "Opt In" to the Collective Action or Object to Settlement (the proposed "Class Notice"); and (4) set a hearing date for final approval of the settlement. No opposition has been filed to Plaintiffs' motion.

This Court having fully received and considered the Plaintiffs' notice of motion, memorandum of law in support thereof, a declaration in support of the motion, the NYM Settlement Agreement, and the proposed Class Notice, and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement, and to conduct a fairness hearing as to good faith, fairness, adequacy and reasonableness of any proposed settlement, HEREBY ORDERS and MAKES DETERMINATIONS as follows:

The "Settlement Class" consists of individuals employed by NYM as loan officers as follows:

| New York, Vermont or Maine: | December 13, 2000 to March 31, 2007; |
| Kentucky: | October 11, 2002 to March 31, 2007; |

| All other locations: | October 11, 2004 to March 31, 2007 |

The Court appoints Plaintiffs' Counsel, Erik H. Langeland of Erik H. Langeland, P.C., as "Class Counsel."

## PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

The Court has reviewed the NYM Settlement Agreement and the proposed Class Notice, which are attached to the Affirmation of Erik H. Langeland in Support of Plaintiffs' motion for preliminary approval and are incorporated herein by reference. The Court finds on a preliminary basis that the NYM Settlement Agreement falls within the range of reasonableness of a settlement that could ultimately be given final approval by this Court, appears to be presumptively valid, subject only to objections that may be raised at the final approval hearing. It appears to the Court on a preliminary basis that the settlement amount ($1,350,000.00) is fair and reasonable to all potential class members when balanced against the probable outcome of further litigation relating to liability and damages issues. It further appears that extensive investigation and discovery have been conducted such that counsel for the Class and for NYM at this time are able to reasonably evaluate their respective positions. It further appears that settlement at this time will avoid additional substantial costs that would have been incurred by both parties, as well as avoid the delay and risks that would be presented by the further prosecution of the litigation. It further appears that the proposed settlement has been reached as a result of intensive, serious and non-collusive arms-length negotiations. The Court preliminarily approves the settlement, including the proposed enhancement payments to the class representatives ($10,000.00 to named Plaintiffs Steven Yang and Christopher Dabiere) and the proposed attorney's fees (one-fourth of the settlement fund--$337,500.00) inclusive

3

of costs.

## APPROVAL OF DISTRIBUTION OF THE NOTICE OF SETTLEMENT

This Court finds the proposed Class Notice, which is attached hereto as Exhibit 1, fairly and adequately advises the potential class members of the terms of the proposed settlement and the claims process for the class members to obtain the benefits available thereunder, as well as the right of class members to opt out of the class, to file documentation in opposition to the proposed settlement, and to appear at the Fairness Hearing to be conducted on the date set forth below. The Court further finds that the Class Notice and proposed distribution of such notice by first-class mail to each identified class member at his or her last known address (with a database search and re-mailing of any returned notice) comports with all constitutional requirements, including those of due process. The Court confirms Settlement Services, Inc. ("SSI") as Settlement Administrator.

Accordingly, good cause appearing, the Court hereby approves the proposed Class Notice and adopts the following dates and deadlines:

| 3 days after Preliminary Approval: | • Defendants must deposit Settlement Amount with Settlement Administrator.<br><br>• Defendants must produce an electronic copy of a list of all Potential Class Members and Plaintiffs, their compensation during the Class Period, dates of employment and last known addresses, to the extent such information is reasonably available. |
| --- | --- |

| 14 days after Preliminary Approval: | • Settlement Administrator must mail Class Notice |
|---|---|
| 45 days after the mailing of Class Notice | • Verification Forms Due<br><br>• Deadline to opt-out of the action<br><br>• Objections to settlement must received |
| 48 days after mailing of Class Notice | • Plaintiffs' counsel must submit Verification Forms received to Defendants' Counsel. |
| 55 days after mailing of Class Notice | • Objections to settlement must be filed with the Court.<br><br>• Defendant must submit calculations of Individual Settlement Benefits to Plaintiffs' Counsel |
| 10 days before Final Fairness Hearing | • Class Counsel shall file Plaintiffs' papers in support of the final approval of the Settlement Agreement and their request for approval of the agreed upon attorneys' fees |
| Final Fairness Hearing | |
| Final Approval | |
| 2 days after Final Approval | • Settlement Administrator must pay Settlement Class Members.<br><br>• Settlement Administrator must make enhancement payments to named representatives and to pay attorneys' fees. |

**FINAL APPROVAL FAIRNESS HEARING**

The Court hereby grants the Plaintiffs' motion to set a settlement hearing for final approval of the Settlement Agreement on *Sept 11, 2008* at *10:00 am* before this Court. Members of the class who object to the proposed settlement may appear and present such objections at the Fairness Hearing in person or by counsel, provided that the objecting class member submits a written statement containing the name and address of the objecting class member and the basis of that person's objections, together with a notice of the intention to appear, if appropriate, which must be postmarked no later than 45 days after the mailing of Class Notice. No person shall be heard, and no briefs or papers shall be received or considered, unless the foregoing documents have been filed and served as provided in this Order, except as this Court may permit for good cause shown. Class Counsel shall serve NYM's counsel with copies of all objections received no later than 55 days after mailing of Class Notice and file the objections with the Court at the time they file Plaintiffs' papers in support of the final approval of the Settlement Agreement. All notices of intent to "opt out" must be postmarked no later than 45 days after mailing of Class Notice.

Class Counsel shall file Plaintiffs' papers in support of the final approval of the Settlement Agreement and their request for approval of the agreed upon attorneys' fees no later than ten business days before the settlement hearing for final approval of the Settlement Agreement. Counsel for NYM may also file papers in support of final approval of the Settlement Agreement no later than the date set for Plaintiffs.

IT IS FURTHER ORDERED that, if for any reason the Court does not grant final approval of the Settlement Agreement, all evidence and proceedings held in connection shall be without prejudice to the status quo ante rights of the parties to the litigation as more specifically set forth in the Settlement Agreement.

Gerard E. Lynch, USDC

6/2/08

6

# EXHIBIT 2

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:06-cv-14429-GEL

| | |
|---|---|
| Yang et al v. New York Mortgage Company, LLC. et al | Date Filed: 12/13/2006 |
| Assigned to: Judge Gerard E. Lynch | Jury Demand: Plaintiff |
| Cause: 28:1331 Fed. Question: Fair Labor Standards | Nature of Suit: 710 Labor: Fair Standards |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Steven G. Yang** *Individually, and On Behalf of All Others Similarly Situated* | represented by | **Erik H. Langeland** 500 Fifth Avenue Suite 1610 New York, NY 10110 212-354-6279 Fax: 212-898-9086 *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Erik Harald Langeland** Eric H. Langeland, P.C 730 Fifth Ave., 9th Floor New York, NY 10019 (212)-659-7774 Fax: (212)-898-9086 Email: elangeland@langelandlaw.com *ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Christopher Daubiere** *Individually, and On Behalf of All Others Similarly Situated* | represented by | **Erik H. Langeland** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |
| | | **Erik Harald Langeland** (See above for address) *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **New York Mortgage Company, LLC.** | represented by | **Wendy J. Mellk** Jackson Lewis LLP(Melville N.Y.) |

58 South Service Road
Melville, NY 11747
631-247-0404
Fax: 631-247-0417
Email: mellkw@jacksonlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**New York Mortgage Trust, Inc.**          represented by   **Wendy J. Mellk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/13/2006 | 1 | COMPLAINT against New York Mortgage Company, LLC., New York Mortgage Trust, Inc.. (Filing Fee $ 350.00, Receipt Number 600145)Document filed by Steven G. Yang, Christopher Daubiere.(jbe, ) Additional attachment(s) added on 12/19/2006 (mbe, ). (Entered: 12/15/2006) |
| 12/13/2006 | | SUMMONS ISSUED as to New York Mortgage Company, LLC., New York Mortgage Trust, Inc.. (jbe, ) (Entered: 12/15/2006) |
| 12/13/2006 | | Magistrate Judge James C. Francis IV is so designated. (jbe, ) (Entered: 12/15/2006) |
| 12/13/2006 | | Case Designated ECF. (jbe, ) (Entered: 12/15/2006) |
| 01/10/2007 | 2 | AFFIDAVIT OF SERVICE. New York Mortgage Trust, Inc. served on 1/5/2007, answer due 1/25/2007. Service was accepted by Sabrina Ambros, Process Specialist. Document filed by Steven G. Yang; Christopher Daubiere. (Langeland, Erik) (Entered: 01/10/2007) |
| 01/10/2007 | 3 | AFFIDAVIT OF SERVICE. New York Mortgage Company, LLC. served on 1/5/2007, answer due 1/25/2007. Service was accepted by Melinda Rivas, Receptionist. Document filed by Steven G. Yang; Christopher Daubiere. (Langeland, Erik) (Entered: 01/10/2007) |
| 01/10/2007 | 4 | NOTICE OF APPEARANCE by Erik Harald Langeland on behalf of Steven G. Yang, Christopher Daubiere (Langeland, Erik) (Entered: 01/10/2007) |
| 02/26/2007 | 5 | STIPULATION AND ORDER EXTENDING DEFENDANTS' TIME TO ANSWER MOVE OR OTHERWISE RESPOND TO PLAINTIFFS'COMPLAINT, New York Mortgage Company, LLC. answer due 3/1/2007; New York Mortgage Trust, Inc. answer due 3/1/2007. (Signed by Judge Gerard E. Lynch on 2/23/2007) (jmi) (Entered: 02/27/2007) |
| 03/05/2007 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying New York Mortgage Trust, Inc. as Corporate Parent. Document filed by New York Mortgage Company, LLC., New York Mortgage Trust, Inc..(Mellk, Wendy) (Entered: 03/05/2007) |

| 03/05/2007 | 7 | ANSWER to Complaint. Document filed by New York Mortgage Company, LLC., New York Mortgage Trust, Inc..(Mellk, Wendy) (Entered: 03/05/2007) |
| 03/13/2007 | 8 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 # 2 # 3 # 4 # 5 # 6)(Langeland, Erik) (Entered: 03/13/2007) |
| 03/15/2007 | 9 | REPORT of Rule 26(f) Planning Meeting.(Wenger, Marc) (Entered: 03/15/2007) |
| 03/15/2007 | 10 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 # 2 # 3 # 4)(Langeland, Erik) (Entered: 03/15/2007) |
| 03/19/2007 | 11 | ENDORSED LETTER addressed to Judge Gerard E. Lynch from Marc S. Wenger dated 3/15/07 re: Counsel writes to request the following discovery plan: Both parties will serve initial disclosures pursuant to F.R.C.P. 26(a)(1) on or before 3/23/07. If warranted, plaintiff will move for certification and/or leave to send notice to the putative class members pursuant to 216b of the Fair Labor Standards Act by 7/18/07. Discovery shall be completed by 3/17/08. So Ordered. (Signed by Judge Gerard E. Lynch on 3/19/07) (jco) (Entered: 03/20/2007) |
| 03/19/2007 | | Set Deadlines/Hearings: Discovery due by 3/17/2008. (jco) (Entered: 03/20/2007) |
| 03/22/2007 | 12 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1)(Langeland, Erik) (Entered: 03/22/2007) |
| 04/24/2007 | 13 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Stam Opt-In Consent# 2 Raush Opt-in Consent# 3 White Opt-in Consent# 4 Handwerker Opt-in Consent# 5 Harley Opt-in Consent# 6 Assif Opt-in Consent# 7 Evers Opt-in Consent)(Langeland, Erik) (Entered: 04/24/2007) |
| 05/09/2007 | 14 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent To Join Marino)(Langeland, Erik) (Entered: 05/09/2007) |
| 06/29/2007 | 15 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Opt-in Plaintiff O'Connor)(Langeland, Erik) (Entered: 06/29/2007) |
| 07/23/2007 | 16 | ENDORSED LETTER addressed to Judge Gerard E. Lynch from Erik H. Langeland dated 7/17/2007 re: the purpose of this letter is to request an extension of the July 18, 2007 deadline for Plaintiff to move for leave to send notice to the putative class members under Fair Labor Standards Act 216(b). ENDORSEMENT: SO ORDERED. (Signed by Judge Gerard E. Lynch on 7/23/2007) (jmi) (Entered: 07/24/2007) |
| 08/01/2007 | 17 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Notice to Opt In White)(Langeland, Erik) (Entered: 08/01/2007) |

| 09/10/2007 | 18 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent To Join Powell)(Langeland, Erik) (Entered: 09/10/2007) |
| 10/29/2007 | 19 | ENDORSED LETTER addressed to Judge Gerard E. Lynch from Erik H. Langeland dated 10/25/07 re: The parties jointly request an extension of the October 31, 2007 deadline for Plaintiffs to move for leave to send notice to the putative class members under the Fair Labor Standards Act. The parties propose the following schedule: 1. Plaintiffs will move for leave to send notice to the putative class members pursuant to Fair Labor Standards Act 261(b) by February 15, 2008. 2. Defendant will file a response by March 17, 2008 or 30 days after the date that plaintiffs 216(b) motion is filed. 3. Plaintiffs' reply brief will be due no later than March 31, 2008. The parties have also agreed to toll the statute of limitations from October 11, 2007 through February 15, 2008. ENDORSEMENT: So Ordered. (Signed by Judge Gerard E. Lynch on 10/29/07) (js) (Entered: 10/29/2007) |
| 01/23/2008 | 20 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent to Join Leka Elezaj)(Langeland, Erik) (Entered: 01/23/2008) |
| 02/18/2008 | 21 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent to Join David Goldklang)(Langeland, Erik) (Entered: 02/18/2008) |
| 02/25/2008 | | ***STRICKEN DOCUMENT. Deleted document number 22 from the case record. The document was stricken from this case pursuant to 24 Order. (jw) (Entered: 03/07/2008) |
| 02/26/2008 | 23 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent to Join Andrew Mendolsohn)(Langeland, Erik) (Entered: 02/26/2008) |
| 03/06/2008 | 24 | ORDER: The Clerk of the Court is directed to Strike Docket No. 22 and 22-2 in this action. (Signed by Judge Gerard E. Lynch on 3/6/08) (jw) (Entered: 03/06/2008) |
| 04/07/2008 | 25 | CONSENT TO JOIN CLASS. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Consent to Join Justin Lane)(Langeland, Erik) (Entered: 04/07/2008) |
| 05/08/2008 | 26 | MOTION for Leave to File Excess Pages. Document filed by Steven G. Yang, Christopher Daubiere. (Attachments: # 1 Certificate of Service)(Langeland, Erik) (Entered: 05/08/2008) |
| 05/19/2008 | 27 | MEMO ENDORSEMENT: on 26 Motion for Leave to File Excess Pages. ENDORSEMENT: So ordered. (Signed by Judge Gerard E. Lynch on 5/19/2008) (mme) (Entered: 05/19/2008) |
| 05/23/2008 | 28 | MOTION for Settlement *Approval*. Document filed by Steven G. Yang, Christopher Daubiere.(Langeland, Erik) (Entered: 05/23/2008) |
| 05/23/2008 | 29 | MEMORANDUM OF LAW in Support re: 28 MOTION for Settlement *Approval*.. Document filed by Steven G. Yang, Christopher Daubiere. |

| | | (Attachments: # 1 Affidavit of Erik H. Langeland, # 2 Certificate of Service) (Langeland, Erik) (Entered: 05/23/2008) |
|---|---|---|
| 06/02/2008 | 30 | STIPULATION AND ORDER OF CONFIDENTIALITY regarding procedures to followed that shall govern the handling of confidential material. (Signed by Judge Gerard E. Lynch on 6/2/08) (mme) (Entered: 06/02/2008) |
| 06/02/2008 | 31 | ORDER (1) PROVISIONALLY CERTIFYING A SETTLEMENT CLASS; (2) PRELIMINARY APPROVING CLASS ACTION SETTLEMENT (3) DIRECTING DISTRIBUTION TO THE CLASS OF NOTICE OF SETTLEMENT AND OPPORTUNITY TO "OPT OUT" OR OBJECT TO SETTLEMENT; AND (4) SETTING A HEARING FOR FINAL APPROVAL OF THE SETTLEMENT granting 28 Motion for Settlement. Accordingly, good cause appearing, the Court hereby approves the proposed Class Notice and adopts the dates set forth within this Order. The Court hereby grants the Plaintiffs' motion to set a settlement hearing for a final approval of the Settlement Agreement on Sept. 18, 2008 at 10:00 a.m. before this Court. (Signed by Judge Gerard E. Lynch on 6/2/08) (tro) (Entered: 06/03/2008) |
| 06/02/2008 | | Final Approval of the Settlement Agreement set for 9/18/2008 at 10:00 AM before Judge Gerard E. Lynch. (Signed by Judge Gerard E. Lynch on 6/2/08) (tro) (Entered: 06/03/2008) |
| 06/16/2008 | 32 | ORDER: that the attached Class Notice be distributed by first-class mail to each identified class member at his or her last known address (with a database search and re-mailing of any returned notice). (Signed by Judge Gerard E. Lynch on 6/13/2008) (tve) (Entered: 06/16/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/14/2008 15:21:17 | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:06-cv-14429-GEL Start date: 12/13/2006 End date: 7/14/2008 |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

# EXHIBIT
# 3

## AFFIDAVIT OF TIMOTHY J. TOUHY

Timothy J. Touhy, being duly sworn under oath, does hereby state and depose as follows:

1.   I am an attorney and principal of the firm Touhy, Touhy, Buehler & Williams, LLP. and have personal knowledge of the facts contained herein.

2.   Erik Langeland has acted as co-counsel with our firm or the predecessor of this firm, Touhy & Touhy Ltd., between 2004 and 2008.  Mr. Langeland acted as co-counsel with our firm in the following cases: Armstrong v. Weichert; Billman v. Provident; Flynn v. MortgageIT; Reinsmith v. Castlepoint; and Casale v. Provident.  Between September 2005 and March 2007 Mr. Langeland received co-counsel fees from our office in these cases in the amount of $678,159.51.  A copy of our firm client fund check register is attached hereto as Exhibit 4.  This check register is made and kept in the ordinary course of business of our firm in the entries reflected on this register are made at or about the time the checks are issued.

3.    Touhy & Touhy Ltd. had an executed attorney-client agreement with Steven Ferko, which agreement was signed in November 2006.  Under the terms of this agreement, the Touhy firm was entitled to a contingent fee on any recovery made on Mr. Ferko's claim.  Mr. Ferko's claim was settled pursuant to a confidentiality agreement in April 2007.  I am aware of the terms of the confidentiality agreement as well as the contingent fee agreement Mr. Ferko executed with our firm.  Based upon the recovery made in Mr. Ferko's case the Touhy firm was due the $75,000 in attorney's fees.

4.    Attorneys fees in the amount of at least $63,750 from Ferko's claim were paid directly to Erik Langeland, who paid $40,716 to Stephan and Zouras in their individual names and kept at least $23,034. (Exhibits 11 and 12, Langeland-Ferko checks).  Mr. Langeland has never paid any of these fees from the Ferko recovery to our firm or its successors.  Attached to this affidavit as Exhibits 11 and 12 are copies of checks issued by Mr. Langeland to Ryan Stephan and James Zouras in the amount of 20,358.08 which represent attorney's fees recovered in connection with the Steven Ferko matter.  In March 2008 Attorneys for Ryan Stephan and James Zouras issued a check in the amount $40,716.16 to the Touhy firm which funds had been escrowed by their attorneys and were purportedly reimbursement relating to attorney's fees taken by Stephan and Zouras in Ferko.  To date, we have been unable to ascertain whether Langeland received the difference between the $75,000 contractual fee due the Touhy firm and 63,750 or whether Langeland reduced the amount of the contractual fee due the Touhy firm.

5.    Langeland will receive 20% of the amount of approved attorneys fees, which are estimated at $50,000, as a result of his co-counsel relationship with the Touhy firm in the action *Chemi v. Champion Mortgage*.  A copy of the settlement agreement is attached hereto as Exhibit 7, p. 21)

6.    The Touhy firm operated a website throughout 2006 with the web and e-mail addresses of Touhylaw.com and laweyrs@touhylaw.com. On or about November 6, 2006 we received a client inquiry from Steven Yang at lawyers@Touhylaw.com which was forwarded to Erik Langeland on November 7, 2006 with copies of the Touhy form class representative agreements and overtime questionnaires. These documents are attached hereto as Plaintiff's exhibits 6 and 8. These e-mails and documents are made and kept in the ordinary course of business in the operation of our firm.

7.    A copy of the US District Court Docket in *Shabazz v. Morgan Funding* is attached to this affidavit as exhibits 9 and 10. *Shabazz* is a collective class action brought under the FLSA on behalf of loan officers. As of July 28, 2008 the district court had certified this case as a collective class action. As of this date 67 plaintiffs had elected to opt in to this action. Based upon previous settlements and recoveries made by our firm in FLSA cases, as well as the preliminary order approved settlement in *Yang*, the attorneys fees in *Shabazz*, based upon the current number of opt-ins will be in excess of $200,000.

FURTHER AFFIANT SAYETH NOT.

_____
Timothy J. Touhy

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 28th DAY OF
JULY, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
Pamela D. Kilby
Notary Public, State of Illinois
My Commission Exp. 04/21/2009

# EXHIBIT
# 4

Quicken Find

| Date | Acct | Num | Payee | Cat | Memo | Clr | Amount |
|------|------|-----|-------|-----|------|-----|--------|
| 3/12/2007 | Client Fund | 4284 | Erik Langeland | Armstrong V. Weich... | Armstrong v. Weic... | R | -10,000.00 |
| 2/6/2007 | Client Fund | 4272 | Erik Langeland | Billman | Billman v. National ... | R | -14,333.33 |
| 2/6/2007 | Client Fund | 4267 | Erik Langeland | Flynn V. Mortgage IT | Flynn v. Mortgage IT | R | -13,157.39 |
| 1/11/2007 | Client Fund | 4242 | Erik Langeland | Reinsmith | Reinsmith v. Castle... | R | -41,204.81 |
| 9/6/2005 | Client Fund | 3964 | Erik Langeland | Casale V. Provident | Casale v. Provident | R | -10,000.00 |
| 9/6/2005 | Client Fund | 3963 | Erik Langeland | Casale V. Provident | Casale v. Provident | R | -589,463.98 |

# EXHIBIT 5

**Lawyers@touhylaw**

| | |
|---|---|
| **From:** | stevengyang@gmail.com |
| **Sent:** | Friday, November 03, 2006 8:21 PM |
| **To:** | lawyers@touhylaw.com |
| **Subject:** | Website General Contact Form Submission |

Below is the result of your feedback form.  It was submitted by
(stevengyang@gmail.com) on Friday, November 3, 2006 at 19:20:30
---------------------------------------------------------------------------

first_name: Steven

last_name: Yang

address:

city: New York

state: NY

zip: 10003

area_code:

exchange:

tel_num:

select: Class Actions

nature: I was a prior employee with MortgageIT where I worked for about 6 months and made about 30,000 dollars for the firm during that time. I then went on to work for The New York Mortgage Company also in Loan Officer capacity for over a years time. Where I earned about $70,000. I was never paid overtime or salary for the excessive hours worked. Can I file a claim under the MortgageIT lawsuit And/OR can I participate or begin a suit against the New York Mortgage Company? Thanks.

injury: Never paid overtime or minimum wage or salary. Worked strictly under comission basis.

Submit: Send

---------------------------------------------------------------------------

# EXHIBIT
# 6

**Stephan sent items**

| | |
|---|---|
| **From:** | Ryan Stephan [rstephan@touhylaw.com] |
| **Sent:** | Monday, November 06, 2006 9:45 AM |
| **To:** | 'stevengyang@gmail.com' |
| **Subject:** | RE: Website General Contact Form Submission |

Dear Steven,

Thank you for your email inquiry.  Please contact us at your earliest convenience to discuss your possible claims against Mortgage IT and NYMC for unpaid overtime.  We look forward to speaking with you.

Sincerely,

Ryan F. Stephan
Touhy & Touhy, Ltd.
161 North Clark Street
Suite 2210
Chicago, Illinois 60601
Tel: (312) 372-2209
Fax: (312) 456-3838
Web: Touhylaw.com

Confidentiality Notice: This e-mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §2510-2521 and is legally privileged.

Unauthorized review, use, disclosure or distribution is strictly prohibited.
If you are not the intended recipient, please contact the sender at 312-372-2209, or by reply e-mail, and destroy all copies of the original message. Thank you.

-----Original Message-----
From: stevengyang@gmail.com [mailto:stevengyang@gmail.com]
Sent: Friday, November 03, 2006 7:21 PM
To: lawyers@touhylaw.com
Subject: Website General Contact Form Submission

Below is the result of your feedback form.  It was submitted by (stevengyang@gmail.com) on Friday, November 3, 2006 at 19:20:30
---------------------------------------------------------------------------

first_name: Steven

last_name: Yang

address:

city: New York

state: NY

zip: 10003

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER CHEMI, BRIAN GAGLIARDI, MARY INTILE, MICHAEL LAURETTI, SCOTT MOODY and DAVID CROCKETT, Individually, and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>CHAMPION MORTGAGE, KEYBANK NATIONAL ASSOCIATION and KEYCORP,<br><br>                    Defendants. | 2:05-CV-01238<br><br>(WHW) |

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into by and among Defendants KeyBank National Association, which formerly owned and operated the Champion Mortgage division ("Champion"), and KeyCorp ("Defendants") and Plaintiffs Christopher Chemi, Brian Gagliardi, Mary Intile, Michael Lauretti, Scott Moody and David Crockett ("Plaintiffs"), individually and on behalf of all similarly situated Champion loan officers.

## Recitals

WHEREAS, on or about March 1, 2005, Christopher Chemi filed an action in the United States District Court for the District of New Jersey, civil action number 2:05-cv-01238, on behalf of himself and all similarly-situated Champion loan officers, alleging that Defendants improperly designated him and all similarly-situated Champion loan officers as exempt from the overtime requirements of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and,

10561320

therefore, failed to properly pay him and all similarly-situated Champion loan officers for all hours worked in violation of the FLSA ("Chemi Litigation");

WHEREAS, by stipulation, on or about July 6, 2005, a First Amended Complaint was filed adding Brian Gagliardi, Sheptim Hani, Nicole Makrolakis and Mary Intile as named plaintiffs in the Chemi Litigation;

WHEREAS, Plaintiffs were granted leave to file a Second Amended Complaint adding a claim for unpaid overtime under the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*, and, or about February 24, 2006, Plaintiffs' Second Amended Complaint was filed;

WHEREAS, Class Counsel (defined hereafter) has stipulated to the withdrawal of Sheptim Hani and Nicole Makroulakis as named plaintiffs in the Chemi Litigation;

WHEREAS, on or about December 19, 2005, Michael Lauretti filed an action in New York State Supreme Court, County of Nassau, index number 05-020245, on behalf of himself and all similarly-situated Champion loan officers, alleging that Defendants improperly designated him and all similarly-situated Champion loan officers in the State of New York as exempt from the overtime requirements of the New York State Labor Law, and, therefore, failed to properly pay him and all similarly-situated Champion loan officers in New York for all hours worked in violation of the New York State Labor Law ("Lauretti Litigation");

WHEREAS, on or about June 21, 2006, Judge William H. Walls, of the United States District Court of the District of New Jersey, denied Plaintiffs' motion in the Chemi Litigation to conditionally certify a class of Champion loan officers under Section 216 of the FLSA and further ordered that all opt-in consent forms that had been filed in the Chemi Litigation be struck from the case;

- 2 -

WHEREAS, Plaintiffs appealed that portion of Judge Walls' decision striking the opt-in consent forms to the Third Circuit Court of Appeals and that appeal has been stayed pending settlement of the Chemi Litigation;

WHEREAS, on or about December 15, 2006, Seth Libert ("Libert") filed an action in the United States District Court for the District of Massachusetts, civil action number 06-cv-12249, on behalf of himself and all similarly-situated Champion loan officers, alleging that Defendants improperly designated him and all similarly-situated Champion loan officers as exempt from the overtime requirements of the FLSA and the Wage and Hour Law of the Commonwealth of Massachusetts, and, therefore, failed to properly pay him and all similarly situated Champion loan officers for all hours worked in violation of the FLSA and the Wage and Hour Law of the Commonwealth of Massachusetts ("Libert Litigation");

WHEREAS, by Order of the Court dated April 9, 2007, Judge Nancy Gertner granted Defendants' motion in the Libert Litigation to transfer the case to the U.S. District Court of New Jersey under the first-to-file rule;

WHEREAS, on or about January 9, 2008, with leave of Court, Plaintiffs filed a Third Amended Complaint adding claims for unpaid overtime under New York Law and the Wage and Hour Law of the Commonwealth of Massachusetts and adding Michael Lauretti and Scott Moody as named plaintiffs to the Chemi Litigation;

WHEREAS, on May 1, 2008, with leave of Court, Plaintiffs filed a Fourth Amended Complaint adding claims for unpaid overtime under the Maryland Code, Labor and Employment, §§3-401, *et seq.*, and adding David Crockett as a named plaintiff to the Chemi Litigation;

WHEREAS, Libert and Defendants have agreed to settle the Libert Litigation on the terms and conditions set forth in this Settlement Agreement including recommending Libert for

an incentive payment as set forth in Section VII.B.1 below and, on April 23, 2008, the Court dismissed the Libert Litigation without prejudice, subject to the right of the parties upon good cause shown to reopen the action if the settlement is not consummated within sixty (60) days;

WHEREAS, Defendants have vigorously denied, and continue to deny, any wrongdoing or liability of any kind to Plaintiffs or any other Champion loan officers as alleged in the Chemi Litigation and the Lauretti Litigation (together, the "Consolidated Litigations"), and the Libert Litigation;

WHEREAS, counsel in the Consolidated Litigations have conducted a thorough examination and investigation of the facts and law relating to those matters;

WHEREAS, Plaintiffs and Class Counsel recognize the costs and risks of prosecution of the Consolidated Litigations, and believe that it is in their interest, and the interest of all Class Members (defined hereafter) to resolve the Consolidated Litigations on the terms set forth herein;

WHEREAS, Defendants and Defendants' Counsel (defined hereafter) believe that settlement is desirable in order to avoid the time, expense, and inherent uncertainties of defending protracted litigation and to resolve the Consolidated Litigations on the terms set forth herein;

WHEREAS, this Settlement Agreement is the result of substantial settlement negotiations between Defendants' Counsel and Class Counsel, and is subject to approval by the Court; and

WHEREAS, Class Counsel believe that this Settlement Agreement offers significant benefits to the Class Members and is fair, reasonable, adequate and in the best interest of the Class Members.

- 4 -

NOW, THEREFORE, with no admission of any substantive or procedural fact, claim or liability by Defendants, as a negotiated compromise and in consideration of and in reliance upon the definitions, recitals, promises, covenants, understandings and obligations set forth in this Agreement, Defendants and Plaintiffs, individually and on behalf of themselves and the Class Members, hereby agree as follows:

## I.     DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meaning set forth below, unless otherwise defined herein.  Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

A.     Approved Attorneys' Fees and Costs.  "Approved Attorneys' Fees and Costs" shall mean the amount of attorneys' fees and costs approved by the Court in the Consolidated Litigations.

B.     Champion Loan Officer.  "Champion Loan Officer" shall mean any individual employed by Defendants' Champion Mortgage division in the position of loan officer.

C.     Class Counsel.  "Class Counsel" shall mean: Daniel K. Touhy and Robert E. Williams, Touhy, Touhy, Buehler & Williams (the "Touhy Firm") and Erik H. Langeland, Erik H. Langeland, P.C.  Unless otherwise indicated, any notice or other correspondence directed to Class Counsel hereunder shall be sent to:

Daniel K. Touhy, Esq.
Robert E. Williams, Esq.
TOUHY, TOUHY, BUEHLER & WILLIAMS
161 North Clark Street, Suite 2210
Chicago, Illinois 60601
Tel: (312) 372-2209
Fax: (312) 456-3838

D.    <u>Class Members</u>.  "Class Members" shall mean all individuals who were employed as a Champion Loan Officer at any time from March 1, 2002 through February 28, 2007.

E.    <u>Class Notice</u>.  "Class Notice" shall mean the Court-approved form of notice in substantially the same form as Exhibit A attached to this Settlement Agreement.

F.    <u>Court</u>.  "Court" shall mean the United States District Court for the District of New Jersey, The Honorable Judge William H. Walls, or his duly appointed or designated successor.

G.    <u>Defendants' Counsel</u>.  "Defendants' Counsel" shall mean Amy L. Ventry, Nixon Peabody LLP.  Unless otherwise indicated, any notice or other correspondence directed to Defendants' Counsel hereunder shall be sent to:

> Amy L. Ventry, Esq.
> NIXON PEABODY LLP
> 50 Jericho Quadrangle, Suite 300
> Jericho, NY 11753
> Tel: (516) 832-7500
> Fax: (516) 832-7555

H.    <u>Dispute Deadline</u>.  The "Dispute Deadline" shall mean the date by which Class Members must contact Class Counsel in writing and provide Class Counsel with any documentary evidence supporting the Class Member's position that the pay periods or earnings set forth in his or her Estimated Range of Settlement Payments Form (defined hereafter) is inaccurate.  The Dispute Deadline shall be set by the Court.  If the Court does not set the Dispute Deadline, then the Dispute Deadline shall be forty-five (45) days after the Notice Date (defined hereafter).

I.    <u>Effective Date</u>.  The "Effective Date" shall mean the eighth (8th) business day after both of the following conditions have been satisfied: (1) Defendants' Counsel's receipt of IRS Form W-9 completed by the Touhy Firm and Erik H. Langeland, P.C.; and (2) the entry of the Final Judgment (defined hereafter).

J.      Fairness Hearing.  "Fairness Hearing" shall mean the hearing at which the Court will consider and finally decide whether to enter the Final Judgment.  The date of the Fairness Hearing shall be set by the Court.  If the Court does not set a date for the Fairness Hearing, then the Fairness Hearing shall be ninety (90) days after the Objection Date (defined hereafter).

K.      Final Judgment.  "Final Judgment" shall mean the Court order that: (1) gives final approval to this Settlement Agreement, (2) gives final approval to the amount and payment of the Approved Attorneys' Fees and Costs, (3) gives final approval to the amount and payment of the State Law Settlement Payments (defined hereafter) and FLSA Settlement Payments, (4) dismisses the Chemi Litigation with prejudice and retains jurisdiction for purposes of enforcing the Settlement Agreement, and (5) makes such other final rulings as are contemplated by this Settlement Agreement; provided, however, that the Final Judgment shall not be deemed to have occurred until the expiration of the statutory time period to file an appeal concerning the Final Judgment or upon entry of an order and/or an affirmance on appeal concerning the Final Judgment.

L.      FLSA Opt-In Form.  "FLSA Opt-In Form" shall mean a written request by a Class Member, using the form attached hereto as Exhibit B, to join the settlement of the FLSA claims in the Chemi Litigation in compliance with Section VI herein (i.e., any request by a Class Member to "opt-in" to the settlement of the FLSA claims in the Chemi Litigation).

M.      List of State Class Members.  "List of State Class Members" shall mean a list of the names of those persons who are State Class Members along with their respective State Law Settlement Payment amount.

N.     <u>List of FLSA Class Members</u>.  "List of FLSA Class Members" shall mean a list of the names of those persons who are FLSA Class Members along with their respective FLSA Settlement Payment amount.

O.     <u>List Deadline</u>.  "List Deadline" shall mean the date by which Class Counsel must submit the List of State Class Members and the List of FLSA Class Members to the Court.  The List Deadline shall be set by the Court.  If the Court does not set the List Deadline, then the List Deadline shall be twenty (20) days after the Opt-In/Opt-Out Deadline (defined hereafter).

P.     <u>Notice Date</u>.  "Notice Date" shall mean the date by which Class Notice must be mailed to the Class Members.  The Notice Date shall be set by the Court.  If the Court does not set a Notice Date, then the Notice Date shall be twenty (20) days after the date the Court enters the Preliminary Approval Order.

Q.     <u>Notification Procedure</u>.  "Notification Procedure" shall mean the procedure for disseminating the Class Notice to Class Members, in accordance with the terms set forth in this Settlement Agreement.

R.     <u>Objection Date</u>.  "Objection Date" shall mean the date by which Class Members must submit (1) any objection to the Settlement Agreement's terms or provisions and submit any required statements, proof, or other materials and/or submissions in support thereof; and/or (2) a notice of intent to appear at the Fairness Hearing.  The Objection Date shall be set by the Court. If the Court does not set the Objection Date, then the Objection Date shall be thirty (30) days after the Opt-In/Opt-Out Deadline.

S.     <u>Opt-In/Opt-Out Deadline</u>.  "Opt-In/Opt-Out Deadline" shall mean the date by which: (1) any Class Members who wish to join (*i.e.*, "opt-in" to) and be bound by, included under and participate in, the settlement of the FLSA claims in the Chemi Litigation must submit

- 8 -

an FLSA Opt-In Form; and (2) any Class Members who do not wish to join and do not wish to be bound by, included under or participate in, the settlement of the state law claims in the Chemi Litigation must submit a State Law Opt-Out Request (defined hereafter). The Opt-In/Opt-Out Deadline shall be set by the Court. If the Court does not set the Opt-In/Opt-Out Deadline, then the Opt-In/Opt-Out Deadline shall be ninety (90) days after the Notice Date.

T.    Parties. "Parties" shall mean Christopher Chemi ("Chemi"), Brian Gagliardi ("Gagliardi"), Mary Intile ("Intile"), Michael Lauretti ("Lauretti"), Scott Moody ("Moody"), and David Crockett ("Crockett"), individually and on behalf of the Class Members, and KeyBank National Association and KeyCorp.

U.    Preliminary Approval Date. "Preliminary Approval Date" shall mean the date the Court issues the Preliminary Approval Order (defined hereafter).

V.    Preliminary Approval Order. "Preliminary Approval Order" shall mean the order of the Court preliminarily approving this Settlement Agreement. The Parties agree to submit to the Court a proposed preliminary approval order in substantially the same form as Exhibit C attached to this Settlement Agreement.

W.    Settlement Amount, Payment and Class Definitions.

1.    Gross Settlement Amount. "Gross Settlement Amount" shall mean the maximum amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) to be funded by Defendants. In no event shall Defendants be required to pay any more than this amount.

2.    Net Settlement Amount. "Net Settlement Amount" shall mean the Gross Settlement Amount (i.e., $1,200,000.00) minus the Approved Attorneys' Fees and Costs of Two Hundred Fifty Thousand Dollars ($250,000.00) for a total of Nine Hundred Fifty Thousand Dollars ($950,000.00).

3.    Incentive Payments.  "Incentive Payments" shall mean the payments made to Chemi, Gagliardi, Intile, Lauretti, Libert, Moody, and Crockett (in addition to any State Law Settlement Payments or FLSA Settlement Payments) in recognition of their prosecution of, and participation in, the Consolidated Litigations.

4.    State Class Members.  "State Class Members" shall mean those Class Members who have not filed a State Law Opt-Out Request (defined hereafter) in accordance with Section V.

5.    FLSA Class Members.  "FLSA Class Members" shall mean those Class Members who have filed an FLSA Opt-In Form in accordance with Section VI.

6.    State Law Settlement Payments.  "State Law Settlement Payments" shall mean the amounts paid out to all State Class Members in the gross amounts reflected on the List of State Class Members, minus applicable withholdings of federal, state, and local taxes.  The State Law Settlement Payments shall be calculated in accordance with Section VIII.B.

7.    FLSA Settlement Payments.  "FLSA Settlement Payments" shall mean the amounts paid out to all FLSA Class Members in the gross amounts reflected on the Final List of FLSA Class Members, minus applicable withholdings of federal, state, and local taxes.  The FLSA Settlement Payments shall be calculated in accordance with Section VIII.B.

8.    State Law Residual Fund.  "State Law Residual Fund" shall mean that portion of the State Law Settlement Share (defined hereafter), if any, that remains after payment of the State Law Settlement Payments.

9.    FLSA Residual Fund.  "FLSA Residual Fund" shall mean that portion of the FLSA Settlement Share (defined hereafter), if any, that remains after payment of the FLSA Settlement Payments.

X.    State Law Opt-Out Request.  "State Law Opt-Out Request" shall mean a written request by a Class Member for exclusion from the settlement of the state law claims in the Chemi Litigation in compliance with Section V herein (*i.e.*, any request by a Class Member to "opt-out" of the settlement of the state law claims in the Chemi Litigation).

## II.    REQUIRED EVENTS

A.    Promptly after execution of this Settlement Agreement:

1.    Plaintiffs shall move for entry of a Preliminary Approval Order, which by its terms shall:

(a)    Preliminarily approve the terms of the Settlement Agreement, including Class Counsel's request for attorneys' fees and costs;

(b)    Approve the contents of the Class Notice and the methods in the Notification Procedure; and

(c)    Schedule a Fairness Hearing to: (i) review comments and objections (if any) regarding this Settlement Agreement; (ii) consider the fairness, reasonableness and adequacy of this Settlement Agreement; (iii) consider the fairness, reasonableness and adequacy of any request for attorneys' fees and costs; and (iv) consider whether the Court should enter a Final Judgment approving the Settlement Agreement, approving any payment of attorneys' fees and costs, and dismissing the Chemi Litigation with prejudice.

B.    The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement Agreement are essential.  The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement; shall promptly perform their respective obligations set out in this Settlement Agreement; shall

- 11 -

promptly take any and all actions and execute and deliver any and all additional documents; and shall provide other documents or information reasonably necessary to carry out the terms of this Settlement Agreement.

C.      Upon Preliminary Approval, the Parties shall execute and file a Stipulation to stay the Lauretti Litigation pending the entry of Final Judgment, after which the Parties shall file a Stipulation of Discontinuance in the Lauretti Litigation.

## III.    <u>NOTIFICATION PROCEDURE</u>

A.      On or before the Notice Date, the Claims Administrator designated by Class Counsel will provide notice to the Class Members by a direct mailing of the Class Notice, the FLSA Opt-In Form and an IRS Form W-4, to all Class Members at their last known address listed in Defendants' records (which Defendants' Counsel has provided to Class Counsel). Each Class Member shall also receive, as an attachment to the Class Notice, a form ("Estimated Range of Settlement Payments Form") which contains: (1) the estimated range of payment that each individual Class Member can expect to receive, in full and final settlement of any state law claims in the Consolidated Litigations, provided that the Class member does not file a State Law Opt-Out Request in accordance with Section V; and (2) the estimated range of payment that each individual Class Member can expect to receive, in full and final settlement of any FLSA claims in the Consolidated Litigations, provided that the Class Member files an FLSA Opt-In Form in accordance with Section VI.

B.      If, after the initial mailing of the Class Notice, any Class Notice and related papers are returned as undeliverable to a Class Member, the Claims Administrator shall update that Class Member's address by using the United States Postal Service National Change of Address list and/or other routine and customary skip trace procedures and, if another address is

- 12 -

found, shall promptly re-mail the Class Notice, FLSA Opt-In Form and IRS Form W-4 once to such Class Member at the new address.  Upon a written request from the Claims Administrator, Defendant shall provide any data, including Social Security numbers, to assist the Claims Administrator, in updating the address for such undeliverable Class Members.  No further checking or re-mailing shall be required and the Parties agree that this process, when completed, shall be deemed to be fair and reasonable notice to the Class Members.

## IV.    DISPUTES AS TO ESTIMATED RANGE OF SETTLEMENT PAYMENTS

A.    In the event that a Class Member wishes to dispute the accuracy of the pay periods or earnings set forth in the Estimated Range of Settlement Payments Form attached to that individual's Class Notice, that Class Member will have until the Dispute Deadline to contact Class Counsel in writing and provide Class Counsel with any documentary evidence supporting the Class Member's position that the pay periods or earnings set forth in the Estimated Range of Settlement Payments Form is inaccurate.  If a Class Member submits a timely dispute, Class Counsel will contact Defendants' Counsel and the Class Member, and seek to informally resolve the dispute.  The Parties will use their best efforts to resolve all disputes within sixty (60) days of the Notice Date.

B.    If a dispute by a Class Member relating to the accuracy of the pay periods or earnings set forth in his or her Estimated Range of Settlement Payments Form cannot be resolved informally among Class Counsel, Defendants' Counsel and the Class Member, the matter will be referred to the Court, or to such other person as the Court shall designate, for resolution of the dispute through a telephone conference, submission of papers or other means as the Court (or its designee) deems fair and appropriate (the "Dispute Resolution Process").  The decision of the Court (or its designee) will be final and binding.  The Dispute Resolution Process shall conclude

- 13 -

on a date set by the Court; however, if the Court does not set such a date, then the Dispute Resolution Process shall conclude no later than the Opt-In/Opt-Out Deadline.

## V.    STATE LAW OPT-OUT REQUESTS BY CLASS MEMBERS

A.    Any Class Member (other than Chemi, Gagliardi, Intile, Lauretti, Libert, Moody, and Crockett) may file a State Law Opt-Out Request by mailing or delivering such request to the Claims Administrator at the address listed in the Class Notice.  A State Law Opt-Out Request must be postmarked not later than the Opt-In/Opt-Out Deadline as set by the Court.  Any State Law Opt-Out Request must be in writing and shall include the name, address, telephone number, and signature of the person requesting to opt-out and shall also contain a clear statement communicating that such person elects to opt-out and be excluded from the settlement of the state law claims in the Chemi Litigation.

B.    A Class Member who submits a timely State Law Opt-Out Request shall be deemed to have waived all rights to any State Law Settlement Payments under this Settlement Agreement.  No State Law Settlement Payments will be made to any Class Member who has submitted a timely State Law Opt-Out Request.

C.    By the List Deadline, the Claims Administrator shall submit to the Court the List of State Class Members.

D.    By the List Deadline, the Claims Administrator shall provide the List of State Class Members to Defendants' Counsel together with legible copies of each State Law Opt-Out Request and the postmarked envelope in which each State Law Opt-Out Request was received by the Claims Administrator.  Copies may be sent by e-mail to Defendants' Counsel in PDF format.

E.    In the event that more than five percent (5%) of the Class Members submit a State Law Opt-Out Request, Defendants may, in their sole discretion, withdraw from and void this

Settlement Agreement within twenty (20) business days of the Opt-In/Opt-Out Deadline.  In the event that Defendants elect to void this Settlement Agreement, all of Defendants' obligations under this Settlement Agreement shall cease to be of any force or effect; the Settlement Agreement and any orders entered in connection therewith shall be vacated, rescinded, cancelled and annulled; and all Parties shall return to the *status quo ante* in the Consolidated Litigations as if the Parties had not entered into this Settlement Agreement; and no party shall be deemed to have waived any claims, defenses or arguments with respect to the appropriateness of class certification.

VI.    **FLSA OPT-IN BY CLASS MEMBERS**

A.    Any Class Member may file an FLSA Opt-In Form by mailing or delivering the FLSA Opt-In Form to the Claims Administrator at the address listed in the Class Notice.  Any FLSA Opt-In Form must be postmarked not later than the Opt-In/Opt-Out Deadline as set by the Court.  Any FLSA Opt-In Form must be in the form attached hereto as Exhibit B.

B.    A Class Member who submits a timely FLSA Opt-In Form shall be deemed to have joined the settlement of the FLSA claims in the Chemi Litigation and shall, thereby, be entitled to receive FLSA Settlement Payments (in addition to any State Law Settlement Payments he or she may be entitled to receive) under this Settlement Agreement.  No FLSA Settlement Payments will be made to any Class Member who has failed to submit a timely FLSA Opt-In Form.

C.    By the List Deadline, the Claims Administrator shall submit to the Court the List of FLSA Class Members.

D.    By the List Deadline, the Claims Administrator shall provide the List of FLSA Class Members to Defendants' Counsel together with legible copies of each FLSA Opt-In Form

and the postmarked envelope in which each FLSA Opt-In Form was received by the Claims
Administrator.

       E.       In the event that twenty-five percent (25%) or less of the FLSA Class Members
submit an FLSA Opt-In Form, Defendants may, in their sole discretion, withdraw from and void
this Settlement Agreement within twenty (20) business days of the Opt-In/Opt-Out Deadline.  In
the event that Defendants elect to void this Settlement Agreement, all of Defendants' obligations
under this Settlement Agreement shall cease to be of any force or effect; the Settlement
Agreement and any orders entered in connection therewith shall be vacated, rescinded, cancelled
and annulled; and all Parties shall return to the *status quo ante* in the Consolidated Litigations as
if the Parties had not entered into this Settlement Agreement; and no party shall be deemed to
have waived any claims, defenses or arguments with respect to the appropriateness of class
certification.

## VII.    OBJECTIONS BY CLASS MEMBERS; FAIRNESS HEARING AND FINAL APPROVAL

       A.       Objections by Class Members.

       1.       Any State Class Member and/or FLSA Class Member who wishes for any
objection to be considered by the Court at the Fairness Hearing must file with the Clerk of the
Court a written notice of objection by the Objection Date, with copies to Class Counsel and
Counsel for Defendants.  Such notice of objection shall include the name, address, telephone
number, and signature of the person making the objection and a detailed statement of each
objection asserted, including the grounds for the objection and any documents such person
wishes to be considered in support of the objection.  Any Class Member who submits a timely
State Law Opt-Out Request and fails to submit a timely FLSA Opt-In Form may not file an
objection to the Settlement Agreement, and any such objection shall be disregarded by the Court.

2.       Plaintiffs shall submit any memoranda or other documentation in response to objections by State Class Members and/or FLSA Class Members and in support of final approval of the Settlement Agreement, including any memoranda or other documentation in support the Incentive Payments and Class Counsel's request for attorneys' fees and costs, no later than forty-five (45) days after the Objection Date.

B.       <u>Fairness Hearing</u>.  Any Class Member who wishes to be heard at the Fairness Hearing must file with the Clerk of the Court a written notice of intent to appear at the Fairness Hearing by the Objection Date.  Such notice of intent to appear shall include the name, address, telephone number, and signature of the person intending to be heard and a detailed statement of any objection the person intends to assert at the Fairness Hearing, including the grounds for the objection and any documents such person wishes to be considered in support of the objection.  A Class Member who submits a timely State Law Opt-Out Request and fails to submit a timely FLSA Opt-In Form may not file a notice of intent to appear at the Fairness Hearing, and any such notice shall be disregarded by the Court.

## VIII.   <u>SETTLEMENT PAYMENTS AND PAYMENT OF APPROVED ATTORNEYS' FEES AND COSTS</u>

A.       <u>Total Financial Obligation of Defendants</u>:  In no event shall this Settlement Agreement, or any portion thereof, be construed to require Defendants to make payments that exceed the Gross Settlement Amount.

B.       <u>Settlement Payments to Class Members</u>.

1.       <u>Incentive Payments</u>.  Incentive Payments to the individually-named plaintiffs in the Consolidated Litigations will be made as follows:  Chemi - $5,000; Gagliardi - $3,000; Intile - $3,000; Lauretti - $1,000; Libert - $2,000, Moody - $1,000; and Crockett - $1,000.  These payments are being made in recognition of the various levels of contribution

made by these individuals to the prosecution of the Consolidated Litigation, including filing their cases, participating in discovery, providing information to Class Counsel, and the like.  The monies for these Incentive Payments, which are in addition to the State Law Settlement Payments and FLSA Settlement Payments described below, will be paid, first, out of the Residual Fund and, if that is not a sufficient amount to cover these payments, the remainder will be paid from the Approved Attorneys' Fees and Costs.

2.  <u>Settlement Share</u>.  Each Class Member is eligible to receive a share of the Net Settlement Amount, pursuant to a formula, based primarily upon the length of their employment with Champion and their regular rate of pay (the "Settlement Share").

3.  <u>State Law Settlement Payments</u>.  State Law Settlement Payments for State Class Members shall be fifty percent (50%) of the Settlement Share for each Class Member (the "State Law Share"), and such State Law Shares shall be reserved for payment to State Class Members.

4.  <u>FLSA Settlement Payments</u>.  FLSA Settlement Payments for FLSA Class Members shall be fifty percent (50%) of the Settlement Share for each Class Member (the "FLSA Share"), and such FLSA Shares shall be reserved for payment to FLSA Class Members.

5.  <u>Residual Funds</u>.

(a)  The Incentive Payments, and the administrative fees and costs of the Claims Administrator in performing any and all functions set forth in and contemplated by this Agreement (the "Claims Administrator's Fees"), shall be paid in the following manner: (i) one-half of the Incentive Payments (for a total of $7,000) and one-half of the Claims Administrator's Fees (up to a maximum of $7,500) shall be paid out of the State Law Residual Fund and the other one-half of the Incentive Payments (for a total of $7,000) and one-half of the

- 18 -

Claims Administrator's Fees (up to a maximum of $7,500) shall be paid out of the FLSA

Residual Fund; and (ii) if there are insufficient funds in the State Law Residual Fund or the

FLSA Residual Fund to cover their respective one-half of the Incentive Payments and the Claims

Administrator's Fees, then such shortfall may be deducted, first, from any monies remaining in

the FLSA Residual Fund or State Law Residual Fund, as applicable, and, second, if necessary,

from Class Counsel's Approved Attorneys' Fees and Costs.   Class Counsel shall have sole and

exclusive responsibility for ensuring that the Incentive Payments and Claims Administrator's

Fees are fully paid.

        (b)     If, after the State Law Settlement Payments, the FLSA Settlement

Payments, and the Incentive Payments and Claims Administrator's Fees (as described in the

preceding section VIII.B.5(a)) are allocated, there are monies remaining in the State Law

Residual Fund or the FLSA Residual Fund, these monies (hereinafter referred to as the "Net

State Law Residual Fund" and "Net FLSA Residual Fund," respectively) will be distributed as

follows:  (i) each State Class Member's State Law Share shall be divided by the total amount of

State Law Shares for State Class Members, in order to determine each such State Class

Member's respective percentage of the total State Law Shares for State Class Members, (ii) such

percentage shall then be multiplied by the total amount of the Net State Law Residual Fund (the

"Supplemental State Law Share"), (iii) State Class Members shall receive their respective

Supplemental State Law Share as part of their State Law Settlement Payment, (iv) each FLSA

Class Member's FLSA Share shall be divided by the total amount of FLSA Shares for FLSA

Class Members, in order to determine each such FLSA Class Member's respective percentage of

the total FLSA Shares for FLSA Class Members, (v) such percentage shall then be multiplied by

the total amount of the Net FLSA Residual Fund (the "Supplemental FLSA Share"), and (vi)

- 19 -

FLSA Class Members shall receive their respective Supplemental FLSA Share as part of their

FLSA Settlement Payment;

      6.    <u>Miscellaneous</u>.

      (a)    All State Law Settlement Payments and FLSA Settlement

Payments shall be paid out of the Net Settlement Amount.

      (b)    All State Law Settlement Payments and FLSA Settlement

Payments will be reported to the IRS by Defendants as wages and shall be subject to the

withholding by Defendants of applicable federal, state and local taxes.  All State Class Members

and FLSA Class Members will receive an IRS Form W-2 with respect to such State Law

Settlement Payments and FLSA Settlement Payments.

      (c)    It is the intent of this Settlement Agreement that no Class Member

receive any State Law Settlement Payment if he or she has submitted a State Law Opt-Out

Request, and that no Class Member receive any FLSA Settlement Payment unless he or she has

submitted an FLSA Opt-In Form, and all other conditions precedent under this Settlement

Agreement have been satisfied.

    C.    <u>Attorneys' Fees and Costs</u>.

      1.    Subject to Court approval, Defendants agree not to oppose any request by

Class Counsel for an award of attorneys' fees and costs in the amount of Two Hundred Fifty

Thousand Dollars ($250,000.00) in full payment of any attorneys' fees and costs in connection

with the Consolidated Litigations, inclusive of work performed and attorneys' fees and costs

incurred in connection with this Settlement Agreement and related work as may be necessary

during the term of this Settlement Agreement.   Class Counsel agree not to seek, and waive any

right to obtain, any fees or costs greater than this amount, in connection with the Consolidated

Litigations, including any work remaining to be performed in carrying out this Settlement Agreement, including but not limited to securing Court approval of this Settlement Agreement, administering it and obtaining dismissal of the Consolidated Litigations with prejudice. Class Counsel represent that no one else has any claim to or lien on such award. Eighty percent (80%) of the award shall be paid to the Touhy Firm and twenty percent (20%) of the award shall be paid to the law firm of Erik H. Langeland, P.C. Class Counsel shall not seek recovery of any additional fees or expenses that they might incur subsequent to the award approved by the Court and any claim by anyone to the award shall be resolved by the Court, but in no event shall the resolution of the claim result in any additional payment by Defendants.

2.      The payment of Approved Attorneys' Fees and Costs shall be paid out of the Gross Settlement Amount (subject to any deductions referenced in Section VIII.B.3) and shall be reported on separate IRS Forms 1099 issued to the Touhy Firm and Erik H. Langeland, P.C., respectively, by Defendants. To the extent the Touhy Firm makes any further distribution of the payment of Approved Attorneys' Fees and Costs among and between Class Counsel (or otherwise), the Touhy Firm is responsible for issuing IRS Forms 1099 or any other tax forms to the extent any such forms are required.

D.      <u>Payment Date</u>

1.      On the Effective Date, Defendants will mail a check for eighty percent (80%) of the amount Approved Attorneys' Fees and Costs (as may be adjusted pursuant to Section VIII.B.3) to the Touhy Firm; and Defendants will mail a check for twenty percent (20%) of the amount of Approved Attorneys' Fees and Costs (as may be adjusted pursuant to Section VIII.B.3) to the law firm of Erik H. Langeland, P.C. at the following address: Erik H. Langeland, P.C., 500 Fifth Avenue, Suite 1610, New York, NY 10110.

2.     Within thirty (30) days of the Fairness Hearing, the Claims Administrator shall provide Defendants with an accounting of the State Law Settlement Payments and the FLSA Settlement Payments due each State Class Member and FLSA Class Member, respectively.  Within forty-five (45) days of the Effective Date, Defendants will provide the Claims Administrator with checks for all payments to State Class Members and FLSA Class Members, including the Incentive Payments to the individually-named Plaintiffs.  Within sixty (60) days from the Effective Date, the Claims Administrator shall mail the payments to all State Class members and FLSA Class Members.

3.     Any checks which are returned as undeliverable or remain uncashed after one hundred twenty (120) days of their mailing, shall be voided and said amount shall revert back to Defendants.

## IX.    <u>CLASS CERTIFICATION</u>

A.     For the purposes of this Settlement Agreement and the full and final resolution of the Consolidated Litigations, the Parties stipulate to the certification of a class under Federal Rules of Civil Procedure 23(b)(3) and 29 U.S.C. § 216(b) comprised of all Champion Loan Officers employed from March 1, 2002 through February 28, 2007.

B.     Nothing in this Settlement Agreement, including the provisions of this Section IX, shall be construed or deemed to be, or to be evidence of, the legality, viability, practicability or propriety of the certification of a class or collective action under the Federal Rules of Civil Procedure, the FLSA, the New York Labor Law, the New Jersey Wage and Hour Law, the Massachusetts Wage and Hour Law, the Maryland Code, Labor and Employment, or any other applicable federal, state or local law for any other purpose other than as specifically set forth herein.

- 22 -

C.      In the event that the Court does not grant preliminary or final approval, nothing in this Settlement Agreement shall be deemed to waive Defendants' objections and defenses to liability or to plaintiffs' entitlement to monetary or equitable relief, or any other issue in the Consolidated Litigations, and this Settlement Agreement shall be deemed null and void and not citable or admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural, including, but not limited to, any issue regarding the propriety of class certification, liability or entitlement to monetary or equitable relief, or any other issue in the Consolidated Litigations.

## X.      **RELEASE BY CLASS MEMBERS**

A.      State Class Members, individually and on behalf of their respective agents and legal representatives, heirs, executors, spouses, administrators, beneficiaries, trustees, successors and assigns and all their past, present and future representatives, hereby release and forever discharge Defendants, and their respective current and former parents, subsidiaries, divisions, branches, assigns and affiliated and related companies, and each of their respective predecessors, successors, past and present officers, directors, employees, benefit plans, insureds, plan administrators, benefit claim and appeal committees, fiduciaries, agents and attorneys, in their individual and representative capacities, from any and all claims or actions which were asserted, or which could have been asserted, in the Chemi, Lauretti or Libert Litigations, under the New York State Labor Law, the New Jersey State Wage and Hour Law, the Wage and Hour Law of the Commonwealth of Massachusetts and the Maryland Code, Labor and Employment, related to any alleged unpaid overtime or other wages, and/or any related penalties, interest, costs, attorney's fees, compensatory damages, punitive damages, liquidated damages and any other remedies available at law or equity, through the Preliminary Approval Date.

- 23 -

B.    FLSA Class Members, individually and on behalf of their respective agents and legal representatives, heirs, executors, spouses, administrators, beneficiaries, trustees, successors and assigns and all their past, present and future representatives, hereby release and forever discharge Defendants, and their respective current and former parents, subsidiaries, divisions, branches, assigns and affiliated and related companies, and each of their respective predecessors, successors, past and present officers, directors, employees, benefit plans, insureds, plan administrators, benefit claim and appeal committees, fiduciaries, agents and attorneys, in their individual and representative capacities, from any and all claims or actions which were asserted, or which could have been asserted, in the Chemi, Lauretti or Libert Litigations, under the Fair Labor Standards Act, related to any alleged unpaid overtime or other wages, and/or any related penalties, interest, costs, attorney's fees, compensatory damages, punitive damages, liquidated damages and any other remedies available at law or equity, through the Preliminary Approval Date.

C.    No claims arising after the Preliminary Approval Date are being released by this Agreement.

## XI.    REPRESENTATIONS, WARRANTIES AND COVENANTS

A.    Class Counsel, who are signatories hereof, represent and warrant that they have the authority, on behalf of Chemi, Gagliardi, Intile, Lauretti, Moody and Crockett individually and on behalf of the Class Members, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby.  This Settlement Agreement has been duly and validly executed and delivered by Class Counsel, on behalf of Chemi, Gagliardi, Intile and Lauretti, individually and on behalf of the Class Members, and constitutes their legal, valid and binding obligation.

- 24 -

B.      Defendants, through their undersigned attorneys, represent and warrant that they have the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Defendants of this Settlement Agreement and the consummation by them of the actions contemplated hereby have been duly authorized by all necessary action on the part of Defendants.  This Settlement Agreement has been duly and validly executed and delivered by Defendants and constitutes their legal, valid, and binding obligation.

C.      Class Counsel and Defendants' Counsel agree to defend the terms of the Settlement Agreement.

## XII.    MISCELLANEOUS PROVISIONS

A.      If the last day of any time period set forth herein falls on a weekend or federal holiday, then such time period shall be extended until the next following day that is not a weekend or federal holiday.

B.      The Parties agree that this Settlement Agreement, and the exhibits and related documents hereto, are not, and shall not at any time be construed or deemed to be, or to be evidence of, any admission against or concession by Defendants with respect to any wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Judgment as contemplated herein.  Any payment of monies, or any other action taken, by Defendants pursuant to any provision of this Settlement Agreement, shall not at any time be construed or deemed to be, or to be evidence of, any admission against or concession by Defendants with respect to any wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Judgment as contemplated herein.  Defendants deny any liability to Chemi, Gagliardi, Intile,

- 25 -

Lauretti, Moody, Crockett, Libert and any other Class Member. This provision shall survive the expiration or voiding of the Settlement Agreement.

C.     This Settlement Agreement is the result of a compromise among the Parties and nothing in this Settlement Agreement shall constitute an admission of liability by any Party with regard to the subject matter of the Consolidated Litigations and of this Settlement Agreement.

D.     This Agreement shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and applicable state law. The Parties agree to keep the terms and conditions of this Settlement Agreement, including all documents and exhibits related thereto, confidential and to not disclose them to the public, except as provided herein and/or as necessary to effectuate the terms, conditions and/or purposes of this Settlement Agreement. The Parties further agree that any information, negotiations, data, drafts and/or summaries exchanged between the Parties relating to the preparation and negotiation of this Settlement Agreement are, and shall remain, confidential and shall not be disclosed to the public for any purpose.

E.     Each Party represents and warrants that he or she has not heretofore assigned or transferred or purported to assign or transfer to any person or entity, his or her rights in this matter or any interest therein, or any interest in any claims or claims arising out of any of the matters which are the subject of the recitals herein.

F.     The Parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner contemplated hereby. The Parties mutually agree to cooperate to ensure the expeditious approval and administration of this Settlement Agreement.

G.     Chemi, Gagliardi, Intile, Lauretti, Moody, and Crockett, individually and on behalf of the Class Members, and Class Counsel agree and acknowledge that they are not prevailing parties for purposes of the Consolidated Litigations or any other purpose.

H.     This Settlement Agreement is entered into only for purposes of resolving the Consolidated Litigations.  In the event that the Effective Date does not occur for any reason, then this Settlement Agreement is cancelled, except for the provisions of Section XII.B-D, and Defendants expressly reserve their right to continue to challenge the propriety of class certification in the Consolidated Litigations for any purpose.  In the event this Settlement Agreement is terminated, no term or condition of this Settlement Agreement, or any draft thereof, with the exception of Section XII.B-D, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever in the any of the matters that comprise the Consolidated Litigations or in any other litigation, and all Parties shall be restored to their prior rights and positions as if the Settlement Agreement had not been entered into.

I.     The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

J.     This Settlement Agreement, including all exhibits attached hereto, may not be modified or amended except in a writing signed by all of the Parties.

K.     This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

L.     This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of New Jersey, without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

M.     Except as otherwise provided in this Settlement Agreement, the Parties shall each bear his or its own costs in, and related to, the Consolidated Litigations.

N.     If any clause, provision or paragraph of this Settlement Agreement shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other clause, provision or paragraph of this Settlement Agreement, and this Settlement Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable clause, paragraph, or other provisions had not been contained herein.

O.     The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

P.     All applications for Court approval or Court orders required under this Settlement Agreement shall be made on notice to Class Counsel and Defendants' Counsel.

Q.     The determination of the terms of, and the drafting of, this Settlement Agreement, including its exhibits, has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.  Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  Each of the Parties was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among

the Parties to this Settlement Agreement.  In entering into this Settlement Agreement, none of the Parties relied on advice received from any other Party or any other Party's counsel.

    R.      The Parties agree to request the Court to retain jurisdiction over this matter after it enters a Final Judgment for the purpose of enforcing this Settlement Agreement

    S.      <u>Integrated Agreement</u>.

        1.      All of the exhibits to this Settlement Agreement are material and integral parts hereof, and are fully incorporated herein by reference.

        2.      This Settlement Agreement and the exhibits thereto constitute the entire, fully integrated agreement with respect to the subject matter contained herein and cancel and supersede all prior written and unwritten agreements and understandings pertaining to the settlement of the Consolidated Litigations.

    T.      For the convenience of the Court, and all Parties, attached hereto as Exhibit 1 is a consolidated schedule of all deadlines contemplated by this Settlement Agreement.

    IN WITNESS WHEREOF, the parties have approved and caused this Settlement Agreement to be duly executed as set forth below.


**ATTORNEYS FOR CLASS MEMBERS AND CHEMI, GAGLIARDI, INTILE, LAURETTI, MOODY AND CROCKETT, BOTH INDIVIDUALLY AND AS REPRESENTATIVE OF THE CLASS MEMBERS**


By: _____     Date: _____
     Robert Williams
     Daniel K. Touhy
TOUHY, TOUHY BUEHLER & WILLIAMS
161 North Clark Street, Suite 2210
Chicago, Illinois 60601
Tel: (312) 372-2209
Fax: (312) 456-3838

By: _____     Date: _____
     Erik H. Langeland
ERIK H. LANGELAND, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
Tel: (212) 354-6270
Fax: (212) 898-9086


**ATTORNEYS FOR DEFENDANTS**


By: _____     Date: _____
     Amy L. Ventry
NIXON PEABODY LLP
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753
Tel: (516) 832-7500
Fax: (516) 832-7555

**CONSOLIDATED SCHEDULE OF ALL DEADLINES**
**CONTEMPLATED BY THE SETTLEMENT AGREEMENT**

| EVENT | TIMING |
|---|---|
| Preliminary Approval Date. | To be determined by the Court. |
| Notice Date. | 20 days after the Court enters the Preliminary Approval Order. |
| Dispute Deadline. | 45 days after the Notice Date |
| Conclusion of Dispute Resolution Process. | No later than the Opt-In/Opt-Out Deadline. |
| Opt-In/Opt-Out Deadline. | 90 days after the Notice Date. |
| List Deadline. | 20 days after the Opt-In/Opt-Out Deadline. |
| Objection Date. | 30 days after the Opt-In/Opt-Out Deadline. |
| Plaintiffs' submission in response to any objections, and in support of final approval of the Settlement Agreement. | 45 days after the Objection Date. |
| Fairness Hearing. | 90 days after the Objection Date |
| Final Judgment is entered by the Court. | To be determined by the Court. |
| Effective Date. | 8th business day after: (1) Defendants' Counsel's receipt of an IRS Form W-9 completed by the Touhy Firm and Erik H. Langeland, P.C.; and (2) entry of the Final Judgment. |
| Defendants provide Claims Administrator with checks for all payments to State Class Members and FLSA Class Members, including the Incentive Payments. | 45 days after the Effective Date. |
| Claims Administrator mails payments to all State Class members and FLSA Class Members. | 60 days after the Effective Date. |

- 31 -

# EXHIBIT
# 8

**Stephan sent items**

| | |
|---|---|
| **From:** | Ryan Stephan [rstephan@touhylaw.com] |
| **Sent:** | Tuesday, November 07, 2006 9:19 AM |
| **To:** | 'Erik Langeland' |
| **Subject:** | FW: Website General Contact Form Submission |


ClassRepAgreemen
t.doc (29 KB)


Overtime
Questionnaire2.wpd (2  Erik,

Please find attached draft sign up forms and questionnaires for Steven Yang. He worked for Mortgage IT from 6-02 to 12-02 and NYMC from 8-04 to 8-06. He worked as a loan officer and was paid 100% commission. He also stated he has documents he can send us via email. Please call me with any questions.

RFS

-----Original Message-----
From: stevengyang@gmail.com [mailto:stevengyang@gmail.com]
Sent: Friday, November 03, 2006 7:21 PM
To: lawyers@touhylaw.com
Subject: Website General Contact Form Submission

Below is the result of your feedback form. It was submitted by (stevengyang@gmail.com) on Friday, November 3, 2006 at 19:20:30
-----------------------------------------------------------------------

first_name: Steven

last_name: Yang

address: 2

city: New York

state: NY

zip: 10003

area_code: .

exchange:

tel_num: .

select: Class Actions

nature: I was a prior employee with MortgageIT where I worked for about 6 months and made about 30,000 dollars for the firm during that time. I then went on to work for The New York Mortgage Company also in Loan Officer capacity for over a years time. Where I earned about $70,000. I was never paid overtime or salary for the

## CLASS REPRESENTATIVE AGREEMENT

This agreement confirms that _____ (Client) retained and employed TOUHY & TOUHY, LTD., attorneys, to prosecute and/or settle all suits and claims against New York Mortgage Corporation, its subsidiaries and affiliates on account of damages that _____ (Client) sustained arising out of wage payment and overtime violations.

Client and attorneys agree that any fee for the attorneys' services to Client or the class will be contingent upon effecting a recovery or successful result from the parties against whom the claims are brought. Client agrees to pay attorneys a sum equal to 33⅓% of the gross amount recovered by the class.

Client will not have to pay fees or expenses of prosecution to Client's attorneys unless recovery is made on behalf of the Client. Client assigns to counsel all rights conferred by statute or rule to recover attorney's fees and costs from Defendant(s).

Client understands and agrees that as a class representative he/she represents the interests of all members of the class in litigation to recover money damages for the class.

Client understands and agrees that as a class representative he/she has claims which are typical of those of the class (similarly situated individuals) and thus involve common issues of law or fact.

Client understands and agrees that as a class representative he/she always considers the interests of the class just as he/she would consider his/her own interests.

Client understands and agrees that as a class representative any resolution of the lawsuit is subject to court approval and must be in the best interests of the class as a whole.

Client understands and agrees to cooperate in the prosecution of claims by providing information, documents and/or testimony at deposition or trial, if necessary. Client also understands that TOUHY & TOUHY LTD, will seek class representative compensation for client, but that such compensation is not guaranteed.

Client agrees and authorizes the attorneys to associate themselves with any other legal counsel which the attorneys deem necessary for the prosecution of any action. Additional counsel shall not increase the attorneys' fee to the clients without the written approval of the client.

Client understands and agrees to volunteer and represent many other people with similar claims and damages, because he/she believes that it is important that all benefit from the lawsuit, because he/she believes a class lawsuit will save time, money and effort and thus will benefit all parties and the court and because he/she believes that the class lawsuit is an important tool to assure compliance with the law, applicable standards and duties of care, and to ensure just compensation to all those similarly situated.

SIGNATURE_____    DATED:_____

# EXHIBIT
# 9

ECF, STAYED

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:07-cv-00126-GEL

Shabazz et al v. Morgan Funding Corp.
Assigned to: Judge Gerard E. Lynch
Cause: 28:1331 Fed. Question: Fair Labor Standards

Date Filed: 01/08/2007
Jury Demand: Plaintiff
Nature of Suit: 710 Labor: Fair Standards
Jurisdiction: Federal Question

**Plaintiff**

**Jameel Shabazz**
*Individually*

represented by **Erik Harald Langeland**
Eric H. Langeland, P.C
730 Fifth Ave., 9th Floor
New York, NY 10019
(212)-659-7774
Fax: (212)-898-9086
Email: elangeland@langelandlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon A. Tostrud**
Gilbert & LaDuca, L.L.P
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 556-9621
Fax: (310) 556-9622
*PRO HAC VICE*

**Jonathan Watson Cuneo**
Cuneo Gilbert & Laduca. LLP
507 C Street, Ne
Washington, DC 20002
(202) 789-3960
Fax: 202 789 1813
Email: jonc@cuneolaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jameel Shabazz**
*on behalf of all others similarly situated*

represented by **Erik Harald Langeland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jon A. Tostrud**
(See above for address)
*PRO HAC VICE*

**Jonathan Watson Cuneo**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Morgan Funding Corp.**                 represented by **Shaffin Abdul Datoo**
                                           Venable LLP (NYC)
                                           Rockerfeller Center
                                           1270 Ave of the Americas
                                           25th Floor
                                           New York, NY 10020
                                           (212) 808-5669
                                           Fax: (212)307-5598
                                           Email: sdatoo@venable.com
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*

                                           **Ari Karen**
                                           Venable LLP
                                           575 7th Street, North West
                                           Washington, DC 20004
                                           (202) 344-4649
                                           Fax: (202) 344-8300
                                           Email: akaren@venable.com
                                           *ATTORNEY TO BE NOTICED*

                                           **James Edward Fagan**
                                           Venable LLP (DC)
                                           575 7th Street, N.W.
                                           Washington, DC 20004
                                           (202) 344-8000x8041
                                           Fax: (202) 344-8300
                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/08/2007 | 1 | COMPLAINT against Morgan Funding Corp.. (Filing Fee $ 350.00, Receipt Number 601688)Document filed by Jameel Shabazz(Individually), Jameel Shabazz(on behalf of all others similarly situated).(mbe, ) (Entered: 01/09/2007) |
| 01/08/2007 | | SUMMONS ISSUED as to Morgan Funding Corp.. (mbe, ) (Entered: |

| | | |
|---|---|---|
| | | 01/09/2007) |
| 01/08/2007 | | Magistrate Judge Debra C. Freeman is so designated. (mbe, ) (Entered: 01/09/2007) |
| 01/08/2007 | | Case Designated ECF. (mbe) (Entered: 02/21/2007) |
| 02/09/2007 | 2 | AFFIDAVIT OF SERVICE. Morgan Funding Corp. served on 1/24/2007, answer due 2/13/2007. Service was accepted by Melissa Jabriel. Document filed by Jameel Shabazz(Individually). (Langeland, Erik) (Entered: 02/09/2007) |
| 02/09/2007 | 3 | NOTICE OF APPEARANCE by Erik Harald Langeland on behalf of Jameel Shabazz(Individually) (Langeland, Erik) (Entered: 02/09/2007) |
| 02/09/2007 | 4 | FILING ERROR - WRONG DOCUMENT TYPE SELECTED FROM MENU - NOTICE of Consent To Join. Document filed by Jameel Shabazz (Individually). (Langeland, Erik) Modified on 3/1/2007 (gf). (Entered: 02/09/2007) |
| 02/16/2007 | 5 | STIPULATION AND ORDER, by and between counsel for Defendant, Morgan Funding Corp. ("MFC"), and Plaintiff, Jameel Shabazz, that MFC shall have until February 20, 2007 to answer the Complaint in the above-captioned matter. Morgan Funding Corp. answer due 2/20/2007. (Signed by Judge Gerard E. Lynch on 2/15/2007) (jmi) (Entered: 02/20/2007) |
| 02/20/2007 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Morgan Funding Corp..(Datoo, Shaffin) (Entered: 02/20/2007) |
| 02/20/2007 | 7 | ANSWER to Complaint. Document filed by Morgan Funding Corp..(Datoo, Shaffin) (Entered: 02/20/2007) |
| 03/01/2007 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DOCUMENT TYPE ERROR. Note to Attorney Erik Langeland to RE-FILE Document 4 Notice (Other). Use the document type Consent to Join found under the document list Other Documents. (gf) (Entered: 03/01/2007) |
| 03/07/2007 | 8 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz (Individually), Jameel Shabazz(on behalf of all others similarly situated). (Langeland, Erik) (Entered: 03/07/2007) |
| 03/30/2007 | 9 | MOTION for James E. Fagan to Appear Pro Hac Vice. Document filed by Morgan Funding Corp.(jco) (Entered: 04/05/2007) |
| 04/06/2007 | | CASHIERS OFFICE REMARK on 9 Motion to Appear Pro Hac Vice in the amount of $25.00, paid on 03/30/2007, Receipt Number 610325. (jd) (Entered: 04/06/2007) |
| 04/09/2007 | 10 | FOR ADMISSION PRO HAC VICE ON WRITTEN MOTION; Upon the motion of Shaffin A. Datoo, atty for Defendant, Morgan Funding Corp. and said sponsor attorney's affirmation in support; it is ordered that James E. Fagan of Venable LLP is admitted to practice pro hac vice as counsel for defendant Morgan Funding Corp in the captioned case. (Signed by Judge Gerard E. Lynch on 4/9/07) (djc) (Entered: 04/10/2007) |
| | | |

| | | |
|---|---|---|
| 04/09/2007 | | Transmission to Attorney Admissions Clerk. Transmitted re: 10 Order,, to the Attorney Admissions Clerk for updating of Attorney Information. (djc) (Entered: 04/10/2007) |
| 04/24/2007 | 11 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz (Individually), Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 McDaniel Opt-in Consent)(Langeland, Erik) (Entered: 04/24/2007) |
| 06/25/2007 | 12 | STIPULATION AND ORDER FOR EXTENSION OF TIME: Plaintiff will move for leave to send notice to the putative class members pursuant to Fair Labor Standards Act 261(b) by October 2,2007. Defendant Responses due by 11/1/2007, Plaintiff's Replies due by 11/12/2007. SO ORDERED. (Signed by Judge Gerard E. Lynch on 6/15/2007) (jmi) (Entered: 06/26/2007) |
| 06/25/2007 | | Set/Reset Deadlines: Motions due by 10/2/2007. (jmi) (Entered: 07/25/2007) |
| 06/29/2007 | 13 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz (Individually). (Attachments: # 1 Opt-in Plaintiff Brummell# 2 Opt-in Plaintiff Mosholder# 3 Opt-in Plaintiff Naylor)(Langeland, Erik) (Entered: 06/29/2007) |
| 09/17/2007 | 14 | MOTION for Ari Karen to Appear Pro Hac Vice. Document filed by Morgan Funding Corp. (jco) (Entered: 09/19/2007) |
| 09/24/2007 | 15 | ORDER granting 14 Motion for Ari Karen to Appear Pro Hac Vice for dfendant Morgan Funding. (Signed by Judge Gerard E. Lynch on 9/24/07) (cd) (Entered: 09/24/2007) |
| 09/24/2007 | | Transmission to Attorney Admissions Clerk. Transmitted re: 15 Order on Motion to Appear Pro Hac Vice, to the Attorney Admissions Clerk for updating of Attorney Information. (cd) (Entered: 09/28/2007) |
| 09/25/2007 | 16 | STIPULATION AND ORDER FOR EXTENSION OF TIME: plaintiffs will move for leave to send notice to the putative class members pursuant to Far Labor Standards Act 216(b) by 11/15/2007. Defendant will file a response by 12/15/2007 or 30 days after the date that plaintiffs' 216(b) motion is filed. Plaintiff's reply brief will be due no later than 1/7/2008. (Signed by Judge Gerard E. Lynch on 9/24/07) (kco) (Entered: 09/25/2007) |
| 09/26/2007 | | CASHIERS OFFICE REMARK on 15 Order on Motion to Appear Pro Hac Vice in the amount of $25.00, paid on 09/17/2007, Receipt Number 627121. (jd) (Entered: 09/26/2007) |
| 11/02/2007 | 17 | NOTICE OF APPEARANCE by Jonathan Watson Cuneo on behalf of Jameel Shabazz(Individually), Jameel Shabazz(on behalf of all others similarly situated) (Cuneo, Jonathan) (Entered: 11/02/2007) |
| 11/07/2007 | 18 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join -- John Leone) (Langeland, Erik) (Entered: 11/07/2007) |
| 11/13/2007 | 19 | ENDORSED LETTER addressed to Judge Gerard E. Lynch from Ari Karen dated 11/8/2007 re: The parties have also agreed to toll the statute of limitations from September 2007 through January 15, 2008. ENDORSEMENT: SO |

| | | |
|---|---|---|
| | | ORDERED. Plaintiff Motions due by 1/15/2008, Defendant's Responses due by 2/15/2008, Plaintiff's Replies Brief due by 3/1/2008. (Signed by Judge Gerard E. Lynch on 11/9/2007) (jmi) (Entered: 11/14/2007) |
| 11/14/2007 | 20 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Ian Page) (Langeland, Erik) (Entered: 11/14/2007) |
| 11/21/2007 | 21 | MOTION for Jon A. Tostrud to Appear Pro Hac Vice for plaintiff. Document filed by Jameel Shabazz(Individually), Jameel Shabazz(on behalf of all others similarly situated).(db) (Entered: 12/03/2007) |
| 12/04/2007 | 22 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join -- Randi Pannell)(Langeland, Erik) (Entered: 12/04/2007) |
| 12/07/2007 | 23 | ORDER granting 21 Motion for Jon A. Tostrud to Appear Pro Hac Vice for plaintiff. (Signed by Judge Gerard E. Lynch on 12/6/07) (db) (Entered: 12/07/2007) |
| 12/12/2007 | 24 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Walter Cedeno, # 2 Consent to Join Mike Lozano)(Langeland, Erik) (Entered: 12/12/2007) |
| 12/12/2007 | | Transmission to Attorney Admissions Clerk. Transmitted re: 23 Order on Motion to Appear Pro Hac Vice to the Attorney Admissions Clerk for updating of Attorney Information. (db) (Entered: 12/12/2007) |
| 12/21/2007 | 25 | MOTION to Amend/Correct *Complaint*. Document filed by Jameel Shabazz (Individually). (Attachments: # 1 Plaintiff's Memorandum Of Law, # 2 First Amended Complaint, # 3 Proposed Order)(Langeland, Erik) (Entered: 12/21/2007) |
| 01/04/2008 | 26 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT - MOTION for Extension of Time *Stipulation and Proposed Order with attached Correspondence to Judge Lynch*. Document filed by Morgan Funding Corp.. (Attachments: # 1 Text of Proposed Order)(Fagan, James) Modified on 1/10/2008 (kco). (Entered: 01/04/2008) |
| 01/08/2008 | 27 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Frank Leon) (Langeland, Erik) (Entered: 01/08/2008) |
| 01/09/2008 | 28 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Manu Sebastian, # 2 Consent to Join Chris Dabiere)(Langeland, Erik) (Entered: 01/09/2008) |
| 01/09/2008 | 29 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Rodolfo Garcia)(Langeland, Erik) (Entered: 01/09/2008) |
| 01/09/2008 | 30 | STIPULATION AND ORDER: It is hereby stipulated and agreed by and between the parties in the above captioned matter that the schedule be extended |

|  |  |  |
|---|---|---|
|  |  | as follows: 1. Plaintiff filed a motion to amend its complaint on December 21, 2007. Defendants response to the motion is due on 1/7/08. The parties agree to extend the time for defendant's response until 1/21/08. Plaintiff's reply to defendant's response due 2/1/08. 2. plaintiffs will move for leave to send notice to the putative class members pursuant to the Fir Labor Standars Act 216(b) by 2/21/08. 3. Defendant will file response by 3/21/08 or 30 days after the date that plaintiffs' 216(b) motion is filed. 4. Plaintiffs reply brief will be due no later than 4/14/08. 5. The Statue of limitations in this matter will be tolled from 9/1/07 through 2/21/08. So Ordered. (Signed by Judge Gerard E. Lynch on 1/8/08) (js) (Entered: 01/09/2008) |
| 01/10/2008 | 31 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Peter Durichko) (Langeland, Erik) (Entered: 01/10/2008) |
| 01/10/2008 | 32 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Roger Singh) (Langeland, Erik) (Entered: 01/10/2008) |
| 01/21/2008 | 33 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Bradley Poch) (Langeland, Erik) (Entered: 01/21/2008) |
| 01/22/2008 | 34 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Pedro E. Santiago)(Langeland, Erik) (Entered: 01/22/2008) |
| 01/24/2008 | 35 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Daniel Ribaudo)(Langeland, Erik) (Entered: 01/24/2008) |
| 02/01/2008 | 36 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Christopher L. Searles)(Langeland, Erik) (Entered: 02/01/2008) |
| 02/01/2008 | 37 | STIPULATION AND ORDER ALLOWING PLAINTIFFS' MOTION TO AMEND COMPLAINT: It is hereby stipulated by and between the parties in the above captioned matter the Plaintiff's Motion for Leave to File an Amended Complaint, filed on December 21, 2007 (on file with the Court as document #25) should be allowed, as Defendants do not oppose that motion. It is further stipulated that Defendants will be allowed 15 days to answer or otherwise respond to the Amended Complaint from the date of the entry of this Order (Signed by Judge Gerard E. Lynch on 1/31/08) (js) (Entered: 02/04/2008) |
| 02/13/2008 | 39 | FIRST AMENDED COMPLAINT amending 1 Complaint against Morgan Funding Corp.Document filed by Jameel Shabazz(Individually), Jameel Shabazz(on behalf of all others similarly situated). Related document: 1 Complaint filed by Jameel Shabazz.(pl) (Entered: 02/19/2008) |
| 02/18/2008 | 38 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Jarrod D. John) (Langeland, Erik) (Entered: 02/18/2008) |
|  |  |  |

| 02/21/2008 | 40 | STIPULATION AND ORDER, TO STAY PROCEEDINGS: that the proceedings be stayed until April 15, 2008 so that the parties can mediate this case. Case stayed. (Signed by Judge Gerard E. Lynch on 2/20/08) (tro) (Entered: 02/21/2008) |
|---|---|---|
| 03/06/2008 | 41 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Corneilus Reynolds)(Langeland, Erik) (Entered: 03/06/2008) |
| 04/16/2008 | 42 | FILING ERROR - DEFICIENT DOCKET ENTRY - MOTION to Certify Class. Document filed by Jameel Shabazz(on behalf of all others similarly situated). Responses due by 4/28/2008 (Attachments: # 1 Memorandum of Law, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Text of Proposed Order, # 17 Certificate of Service)(Langeland, Erik) Modified on 4/17/2008 (jar). (Entered: 04/16/2008) |
| 04/17/2008 | | ***NOTE TO ATTORNEY TO RE-FILE DOCUMENT - DEFICIENT DOCKET ENTRY ERROR. Note to Attorney Erik Langeland to RE-FILE Document 42 MOTION to Certify Class. ERROR(S): Supporting documents must be filed individually. Event code for Memorandum of Law in Support found under Replies, Oppositions, Supporting Documents. (jar) (Entered: 04/17/2008) |
| 04/17/2008 | 43 | MOTION to Certify Class. Document filed by Jameel Shabazz(on behalf of all others similarly situated). Responses due by 4/28/2008 (Attachments: # 1 Certificate of Service)(Langeland, Erik) (Entered: 04/17/2008) |
| 04/17/2008 | 44 | MEMORANDUM OF LAW in Support re: 43 MOTION to Certify Class.. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Certificate of Service)(Langeland, Erik) (Entered: 04/17/2008) |
| 05/05/2008 | 45 | JOINT STIPULATION AND ORDER CERTIFYING THIS CASE AS A COLLECTIVE ACTION, ALLOWING NOTICE TO ISSUE AND EXTENDING DEFENDANTS' TIME TO ANSWER THE AMENDED COMPLAINT: This case is certified as a Rule 216(b) collective action and as further set forth in this Order. (Entered: 05/05/2008) |
| 05/16/2008 | 46 | ANSWER to Amended Complaint. Document filed by Morgan Funding Corp.. Related document: 39 Amended Complaint filed by Jameel Shabazz.(Datoo, Shaffin) (Entered: 05/16/2008) |
| 05/16/2008 | 47 | CERTIFICATE OF SERVICE of Answer to Amended Complaint served on Plaintiffs Jameel Shabazz and Alfred Torres on 5/16/2008. Service was accepted by Erik Langeland, Esquire via CM/ECF. Document filed by Morgan Funding Corp.. (Datoo, Shaffin) (Entered: 05/16/2008) |
| 06/09/2008 | 48 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Dominic |

| | | Kalvelis)(Langeland, Erik) (Entered: 06/09/2008) |
|---|---|---|
| 06/11/2008 | 49 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Ta-nair Murphy, # 2 Consent to Join Diego M. Viveros)(Langeland, Erik) (Entered: 06/11/2008) |
| 06/13/2008 | 50 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Gabriel Delgado, # 2 Consent to Join Dale Brave, # 3 Consent to Join Peter Zotti, # 4 Consent to Join Scott McKenzie, # 5 Consent to Join Rob Brusco)(Langeland, Erik) (Entered: 06/13/2008) |
| 06/13/2008 | 51 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Jason P. Rosario, # 2 Consent to Join Kesley Parson)(Langeland, Erik) (Entered: 06/13/2008) |
| 06/16/2008 | 52 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Brian Phillips, # 2 Consent to Join Mark M. Pschar, # 3 Consent to Join Hope Nisler, # 4 Consent to Join Michael Roberto)(Langeland, Erik) (Entered: 06/16/2008) |
| 06/18/2008 | 53 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Karen Scalfani, # 2 Consent to Join Matthew McCullough)(Langeland, Erik) (Entered: 06/18/2008) |
| 06/23/2008 | 54 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Judette Couseillant, # 2 Consent to Join Tim Gray)(Langeland, Erik) (Entered: 06/23/2008) |
| 06/23/2008 | 55 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Yacine Allalou) (Langeland, Erik) (Entered: 06/23/2008) |
| 06/25/2008 | 56 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Joseph Verdicchio, # 2 Consent to Join Frank Holder)(Langeland, Erik) (Entered: 06/25/2008) |
| 06/27/2008 | 57 | FILING ERROR - DEFICIENT DOCKET ENTRY - CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Andre Padgett)(Langeland, Erik) Modified on 7/10/2008 (gf). (Entered: 06/27/2008) |
| 06/27/2008 | 58 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Andre Padgett) (Langeland, Erik) (Entered: 06/27/2008) |
| 07/02/2008 | 59 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Chris Leonard) (Langeland, Erik) (Entered: 07/02/2008) |

| 07/03/2008 | 60 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Daniel Aguilera)(Langeland, Erik) (Entered: 07/03/2008) |
| 07/08/2008 | 61 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Roy R. Rumph)(Langeland, Erik) (Entered: 07/08/2008) |
| 07/14/2008 | 62 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Bryan Becze, # 2 Consent to Join Somattie Ram, # 3 Consent to Join Jean Jean Louis, # 4 Consent to Join Gary Unger)(Langeland, Erik) (Entered: 07/14/2008) |
| 07/15/2008 | 63 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Michael Terranova, # 2 Consent to Join Deborah Doctor)(Langeland, Erik) (Entered: 07/15/2008) |
| 07/16/2008 | 64 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Christopher Nangano)(Langeland, Erik) (Entered: 07/16/2008) |
| 07/17/2008 | 65 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Joshua Aubrey)(Langeland, Erik) (Entered: 07/17/2008) |
| 07/17/2008 | 66 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Timothy Cumpston, # 2 Consent to Join Renee Rebello)(Langeland, Erik) (Entered: 07/17/2008) |
| 07/18/2008 | 67 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join John Nigro, # 2 Consent to Join Eric Gaubatz)(Langeland, Erik) (Entered: 07/18/2008) |
| 07/21/2008 | 68 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Ronald Nussbaum, # 2 Consent to Join Casius Chirila, # 3 Consent to Join Victor Figueroa)(Langeland, Erik) (Entered: 07/21/2008) |
| 07/21/2008 | 69 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Gavriel Carlo, # 2 Consent to Join Michael S. Gayed)(Langeland, Erik) (Entered: 07/21/2008) |
| 07/22/2008 | 70 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Michael D'Amico)(Langeland, Erik) (Entered: 07/22/2008) |
| 07/23/2008 | 71 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Guy La Mura)(Langeland, Erik) (Entered: 07/23/2008) |
| 07/24/2008 | 72 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent to Join Albert Bishai) |

|  |  | (Langeland, Erik) (Entered: 07/24/2008) |
|---|---|---|
| 07/28/2008 | 73 | CONSENT TO JOIN CLASS. Document filed by Jameel Shabazz (Individually), Jameel Shabazz(on behalf of all others similarly situated). (Attachments: # 1 Consent To Join--Riccardi, # 2 Consent To Join--Rodgers) (Langeland, Erik) (Entered: 07/28/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/29/2008 11:03:18 | | | |
| PACER Login: |  | Client Code: |  |
| Description: | Docket Report | Search Criteria: | 1:07-cv-00126-GEL Start date: 1/8/2007 End date: 7/29/2008 |
| Billable Pages: | 6 | Cost: | 0.48 |

# EXHIBIT
# 10

*LYN145.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JAMEEL SHABAZZ and ALFRED TORRES, )
Individually and on Behalf of All Others )
Similarly Situated, )
                )
              **Plaintiffs,** )
                )
**v.** )
                )
                )
**MORGAN FUNDING CORP., DANIEL** )
**MACKLE, DANIEL LOUIS, and FRANK** )
**CARDIA,** )
                **Defendants.** )

**Civ. No.: 07 CV 126**
   **(GEL)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _____

**JOINT STIPULATION AND ORDER CERTIFYING THIS CASE AS A COLLECTIVE
ACTION, ALLOWING NOTICE TO ISSUE, AND EXTENDING DEFENDANTS' TIME
TO ANSWER THE AMENDED COMPLAINT**

The Parties request that this Court enter an order:

a. Conditionally certifying this case as a Rule 216(b) collective action;

b. Requiring Defendants to provide Plaintiffs' counsel the names, last known addresses, social security numbers, and telephone numbers (if known) of all potential opt-in members in electronic format within ten days of this Order;

c. Authorizing Plaintiffs' counsel to distribute the attached notice and opt-in form via first class U.S. Mail to all persons who were employed by Defendants as loan officers or other similarly titled positions from January 8, 2004 through the present for a period of seventy days from the date of this Order;

d. Prohibiting Plaintiffs from filing a motion for certification under Rule 23 for a period of seventy days from the date of this Order;

e. Allowing Defendants fourteen days from the date of this Order to file an answer to the Amended Complaint;

f. Deeming all individual Defendants to have been served as of February 13, 2008.

It is further stipulated that the Parties reserve the right to raise all arguments in support of

or against any motion for certification under Rule 23 that may be filed in this case.

STIPULATED AND AGREED:

_Ari Karen_ (EHL)

**Ari Karen** *(Pro Hac Vice)*
VENABLE LLP
575 7ᵗʰ Street, N.W.
Washington, D.C. 20004
Phone: (202) 344-4000
Facsimile: (202) 344-8300
akaren@venable.com

Erik H. Langeland (EL-7512)
Erik H. Langeland, P.C.
500 Fifth Avenue Suite 1610
New York, NY 10110
(212) 354-6270
elangeland@langelandlaw.com

SO ORDERED:

Gerard E. Lynch, U.S.D.J.

Dated: 5/5/08

2

## NOTICE OF CLASS ACTION LAWSUIT

Shabazz and Torres v. Morgan Funding Corp.
United States District Court for the Southern District of New York

**TO:    LOAN OFFICERS**

**RE:    UNPAID OVERTIME OR MINIMUM WAGES**

### I. INTRODUCTION

A class action lawsuit has been filed against Morgan Funding for failure to pay overtime and/or minimum wages to loan officers as required by law. You are "similarly situated" to the Plaintiffs in the lawsuit and, therefore, can join this lawsuit. This letter advises you how this suit may affect your rights and instructs you on the procedure for participating in this suit, if you choose to join.

### II. DESCRIPTION OF THE LAWSUIT

On January 8, 2007, Jameel Shabazz sued Morgan Funding for failing to pay overtime compensation under the Fair Labor Standards Act. The case was filed in Federal Court in the Southern District of New York.

This lawsuit alleges that Morgan Funding required its Loan Officers to work greatly in excess of forty (40) hours per week without paying them overtime compensation and/or minimum wages as required by law. The objective of the lawsuit is to compel Morgan Funding to pay the Plaintiffs for the overtime they worked or their unpaid minimum wages or both, plus interest, statutory penalties, reasonable attorneys' fees and litigation costs for themselves and for you, if you decide to join this lawsuit. Morgan Funding denies Plaintiffs' allegations.

### III. WHO CAN JOIN

The named Plaintiffs have sued on behalf of:

1. themselves; and

2. any employee who is or has been, at any time within the past three (3) years, employed by Morgan Funding as a "loan officer."

If you have already brought a lawsuit against Morgan Funding for failure to pay overtime wages owed to you, you may not be eligible for this lawsuit.

### IV. YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, you may join this suit (that is, you may "opt-in") by faxing the Opt-in Consent Form to (212) 898-9086 or mailing it to Plaintiffs' counsel at the following address:

**ERIK H. LANGELAND, P.C.**
Attn: Morgan Funding Class Action

1

500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270 (Phone)
(212) 898-9086 (Fax)
elangeland@langelandlaw.com

This form must be returned in sufficient time to have Plaintiffs' counsel file it with the federal court on or before _____. If you do not return the Opt-In Consent Form to Plaintiffs' counsel before the above deadline date, you may not be able to participate in the lawsuit.

## V. EFFECT OF JOINING THIS SUIT

If you choose to join in the suit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable. While this suit is pending, you may be required to respond to written questions, sit for depositions, and/or testify in court. The attorneys for the class Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. By joining this lawsuit, you designate the class representatives as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit.

## VI. NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case. If you choose not to join in this lawsuit, you are free to file your own lawsuit. The statute of limitations will continue to run on your claim until you join this suit or file your own.

## VII. NO RETALIATION PERMITTED

Federal law prohibits Morgan Funding from retaliating against you in any manner discriminating because you join this lawsuit.

## VIII. YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this suit, your interests will be represented by the named Plaintiffs through their attorneys, as counsel for the class. Counsel for the class are:

Erik H. Langeland
ERIK H. LANGELAND, P.C.
500 Fifth Avenue, Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)
elangeland@langelandlaw.com

and,

Jonathan W. Cuneo
Jon A. Tostrud
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
jonc@cuneolaw.com

## IX.  FURTHER INFORMATION

You may obtain further information about this Notice, filing an Opt-in Consent Form, or answers to questions concerning this lawsuit by writing or calling Plaintiffs' counsel at the number or address stated above.

Dated: _____                                Sincerely,

                                                                      _____.

                                                                      Erik H. Langeland
                                                                      500 Fifth Avenue, Suite 1610
                                                                      New York, NY 10110
                                                                      (212) 354-6270
                                                                      (212) 898-9086 (Fax)
                                                                      elangeland@langelandlaw.com

**\*\*PLEASE NOTE\*\***

There is a two (2) year deadline for filing overtime claims (or three (3) years if the violation was willful) running from the date(s) the overtime hours were actually worked.  To maximize your recovery, return your Opt-in Consent Form as soon as possible so we may file it with the Court and preserve your rights.

## OPT-IN CONSENT FORM

### *Shabazz et al vs. Morgan Funding Corp.*

#### Complete and Mail To:
**Erik H. Langeland, P.C.**
Attn: Morgan Funding Corp. Class Action
500 Fifth Avenue
Suite 1610
New York, NY 10110
(212) 354-6270
(212) 898-9086 (Fax)

## CONSENT TO JOIN COLLECTIVE ACTION
### Pursuant to Fair Labor Standards Act
### 29 U.S.C. §216(b)

1.   I _____ consent and agree to pursue my claims arising out of unpaid overtime work as a loan officer at Morgan Funding Corp. in connection with the above referenced lawsuit.

2.   I have worked in the position of loan officer at Morgan Funding Corp. from on or about _____ (month, year) to on or about _____ (month, year).

3.   During the above time period, I worked in excess of forty (40) hours per week, but was not paid overtime compensation.

4.   I understand that this lawsuit is brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.§201 et. seq. I hereby consent, agree and opt-in to become a Plaintiff herein and be bound to any judgment by the Court or any settlement of this action.

5.   I hereby designate the law firm of ERIK H. LANGELAND, P.C. ("Plaintiffs' Counsel"), to represent me for all purposes of this action.

6.   I also designate the Class Representative(s) as my agent(s) to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' Counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

| | |
|---|---|
| (Date Signed) | (Signature) |

**\*\*NOTE\*\*** Statute of Limitations concerns mandate that you return this form as soon as possible to preserve your rights. (See "Notice of Proposed Class Action Lawsuit" for time deadlines).

# EXHIBIT
# 11

638

**ERIK H. LANGELAND P.C.**
730 FIFTH AVENUE, 9TH FLOOR
NEW YORK, NY 10019

DATE 4/23/07

1-7055/2260
53

PAY TO THE ORDER OF _Ryan F. Stephan_          $ 20,358.08

_Twenty Thousand Three Hundred Fifty Eight and 08/100_ ———— DOLLARS

**GreenPoint Bank**

SECOND AVENUE OFFICE #053
946 EAST 34TH STREET NEW YORK, NY 10016

FOR _FeRRo vs. Equity One Settlement_

⑈000638⑈ ⑆226070555⑈65 49 70053 9⑈ ⑈0020358081⑈

HARRIS N.A. 047190028S4
311 W MONROE 04/26/07
CHICAGO, IL 60606
0200503267

| Media | M-- |
|---|---|
| Posting Date | 20070426 |
| CPCS Seq # | 000000002503267 |
| Account # | 00000000006549700539 |
| Amount | 0002035808 |
| Ck/Serial # | 000000000000638 |
| Dep CPCS Seq # | |
| Dep Account | |
| R/T Routing Transit | 022607055 |
| Bank # | 0028 |
| TranCode | |
| Exception | |

HARRIS BANK
1 OF 4

# EXHIBIT 12

# LaSalle Bank

ERIK H. LANGELAND P.C.
730 FIFTH AVENUE, 8TH FLOOR
NEW YORK, NY 10019

DATE 4/23/07

637

1-7045/2200
82

PAY
TO THE
ORDER OF James B. Zouras

$ 20,358.08

Twenty Thousand Three Hundred Fifty Eight and 08/100 DOLLARS

GreenPoint Bank

SECOND AVENUE OFFICE #063
39 EAST 24TH STREET, NEW YORK, NY 0000

FOR Ferro vs. Equity One settlement

⑆000637⑆ ⑈226070555⑈ 65 49 70053 9⑈

Acct # 861828025

LASALLE
5 of 6

# EXHIBIT 13

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD.,<br>an Illinois Professional Corporation )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>RYAN F. STEPHAN, JAMES B. ZOURAS, )<br>and STEPHAN & ZOURAS, LLP, an )<br>Illinois Limited Liability Partnership, )<br> )<br>Defendants. ) | No. 07 CH 13552<br><br>Hon. Kathleen Pantle |

### ORDER

This matter comes before the court on Defendants, Ryan F. Stephan, James B. Zouras, and Stephan & Zouras, LPP's, Motion to Dismiss Count III of Plaintiff's Third Amended Complaint ("TAC") and for Sanctions.   Plaintiff, Touhy and Touhy, Ltd., is an Illinois Professional Corporation engaged in the practice of law.  Defendant, Stephan & Zouras, LLP, is an Illinois Limited Liability Partnership formed on March 14, 2007 for the purpose of practicing law.  Defendants Ryan F. Stephan and James B. Zouras are licensed Illinois attorneys who had been employed full time by Plaintiff to practice law on behalf of Plaintiff.  Defendants Stephan and Zouras left Plaintiff's employ to form Stephan & Zouras, LLP. (TAC, ¶¶1-3).

The Complaint alleges that, at various times before leaving Plaintiff's employ, Defendants, without authorization, accessed confidential client data and either downloaded the data or printed it out (TAC, ¶¶11-15). Plaintiff further alleges the following:  Stephan forwarded Touhy firm emails to his personal email account and then deleted these emails from the Touhy firm email system (TAC, III, ¶¶10-28); Stephan and Zouras deleted data from the Touhy firm computers or Touhy firm email containing data relating to several Legal Match contacts (TAC,

III, ¶29); defendants changed the passwords on their Touhy firm desktop computers to make them unavailable to the firm (TAC, III, ¶30); Stephan concealed and changed the password to the Touhy firm's Legal Match account (TAC, III, ¶¶32-33) and; Zouras deleted Touhy firm data from his desktop (TAC, III, ¶34). These actions were taken for Defendants' use and benefit at their new law firm (TAC, ¶7). As a result of Defendants' actions, Plaintiff was forced to quarantine its computers, hire an IT consultant, replace computers and establish new security for the computers (TAC, III, ¶5).

Plaintiff's original complaint alleged it suffered damage within the meaning of the Computer Fraud and Abuse Act because it was forced to quarantine its computers and hire an IT consultant to conduct a forensic analysis of Touhy's computers. ("CFAA"). 18 U.S.C. §1030 (a) (5) (A) (iii). Defendants filed a Motion to Dismiss the original complaint on the basis that the copying of data does not constitute damage under the CFAA. This Court agreed and granted Defendants' Motion to Dismiss and held that to successfully plead "damage" a plaintiff must allege "impairment to the integrity of available data, a program, a system or information." On September 21, 2007, Plaintiff filed a Verified Amended Count III. On September 25, 2007, Defendants filed a second Motion to Dismiss. The Court entered a briefing schedule on October 2, 2007. Plaintiff did not file a response, but did file a Third Amended Complaint on December 5, 2007.

Count III of Plaintiff's Third Amended Complaint alleges a violation of the CFAA, 18 U.S.C. §1030 *et seq.* which provides in pertinent part:

> Whoever...intentionally accesses a protected computer without authorization, and as a result of such conduct causes damage, and

> 18 U.S.C. §1030 (a) (5) (A) (iii)

> By conduct described in clause (i), (ii), or (iii) or subparagraph (A), caused...

2

18 U.S.C. §1030 (a) (5) (B) (i)

Loss to 1 or more person during any 1-year period…aggregating at least $5,000 in value…

18 U.S.C. §1030 (a) (5) (B) (i)

As was noted in this Court's previous order, "damage" is defined under the CFAA as "any impairment to the integrity or availability of data, a program a system or information." 18 U.S.C. §1030(e) (8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §1030(e) (11). (8/20/07 Order, p. 3). This court has already determined that Plaintiff has successfully pled loss, but it is necessary for a plaintiff to plead both damage and loss in order to properly allege a civil CFAA violation. *Garelli Wong & Assocs. v. Nichols*, 2008 U.S. Dist. LEXIS 3288 (D. Ill. 2008).

Defendants again move to dismiss Count III of Plaintiff's Third Amended Complaint contending that Plaintiff has still failed to allege damage, specifically that Defendants permanently deleted data or otherwise rendered it irretrievable and also argue that they had access to the computers and computer systems (Motion, p. 3). Plaintiff contends that the damage resulted when Defendants downloaded confidential information; changed various passwords to access their desktops and the firm's Legal Match account and; deleted other firm emails and data, causing Plaintiff to quarantine its computers and ascertain the confidential data misappropriated by the Defendants.

3

Defendants Motion to Dismiss is filed pursuant to §2-619(a) (9). Plaintiff responded and Defendants replied. For a motion to dismiss under 735 ILCS 5/2-619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion and the motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 277-78 (2003).

Section 2-619(a) (9) allows dismissal when "the claim asserted...is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a) (9). An "affirmative matter" is a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. *Krilich v. Am. Nat'l Bank & Trust Co.*, 334 Ill.App.3d 563, 570 (2002). In ruling on a motion to dismiss under section 2-619, the trial court may consider pleadings, depositions and affidavits. *Id.* Further, if the grounds for dismissal do not appear on the face of the pleading attacked, the party seeking the dismissal must file an affidavit in support of the motion. 735 ILCS 5/2-619(a).

Included in the CFAA definition of "damage" is the word "integrity." The CFAA does not define "integrity," but the dictionary definition is "an unimpaired or unmarred condition: entire correspondence with an original condition: SOUNDNESS." Webster's Third New International Dictionary 1174 (1971). The use of the word "integrity" "contemplates, in [CFAA] context, some diminution in the completeness or usability of data or information on a computer system." *Resdev, LLC v. Lot Builders Ass'n*, 2005 U.S. Dist. LEXIS 19099 (D. Fla. 2005). When presented with these definitions, the Court in *Worldspan L.P. v. Orbtiz, LLC*, found that the mere "taking of information" did not constitute "damage" under the CFAA. *Worldspan L.P. v. Orbitz*,

4

LLC, 2006 U.S. Dist. LEXIS 26153, 14-15 (D. Ill. 2006).  When the 7th Circuit Court was confronted with the situation of someone not only taking data, but deleting it as well, it held:

> Ordinarily, pressing the "delete" key on a computer (or using a mouse click to delete) does not affect the data sought to be deleted; it merely removes the index entry and pointers to the data file so that the file appears no longer to be there, and the space allocated to that file is made available for future write commands. Such "deleted" files are easily recoverable. *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 419 (7th Cir. 2006).

The defendant in that case went one step further and also rendered the data irretrievable by downloading a destructive virus, which was enough to meet the "damage" requirement of the CFAA. *Id.*  The crux of these decisions seems to be that unless there is an allegation that the data is *permanently* gone, no "damage" will be found. (emphasis added).  *Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. LEXIS 53108 (D. Fla. 2006).

In the instant matter, Plaintiff has failed to allege that any of the data taken by the defendants or any of the emails deleted from the Touhy email system are permanently unavailable.  Although Plaintiff attempts to argue in Count III, paragraph 9, that because Defendants are using Touhy information it has caused an irretrievable and complete loss of the data involved, it is simply not enough to allege that a taking of information qualifies as "damage". *Worldspan L.P. at* 14-15).  As was stated in this Court's previous order, Plaintiff's allegations in Count III, paragraph 8, only amount to a "loss" (8/20/07 Order, pp. 3-4).  Plaintiff does get close to properly pleading permanency in Count III, paragraph 7, but falls short by not specifically stating what data "cannot be retrieved".  Paragraph 7 states that paragraphs 10-36 contain the irretrievable data that qualifies as "damage" under the CFAA.  Unfortunately, it is difficult to believe that this data is in fact irretrievable since the plaintiff is able to refer to each incident with specificity, i.e., dates, subject lines, the names of clients included in the emails, settlement and disbursement details, etc.  (TAC, III, ¶¶7, 10-36).  Further, Plaintiff alleges

entitlement to damages for: retrieving deleted files and data which were rendered unavailable by defendants' action; retrieving deleted emails which were rendered inaccessible by defendants' actions; assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon; recovering access to the firm Legal Match account; and; retrieving deleted or inaccessible emails and similar data from the firm email and website system. (TAC, Count III, ¶35 B-D, F-G). Each of these subparagraphs demonstrates the data was in fact retrieved.

Defendant's final contention that plaintiff failed to allege that they were not authorized users fails. The CFAA distinguishes between "without authorization" and "exceeding authorized access," 18 U.S.C. §§ 1030(a)(1), (2), (4), and, while making both punishable, defines the latter as "accessing a computer with authorization and . . . using such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." § 1030(e)(6). As soon as Stephan and Zouras breached their fiduciary duty their agency relationship terminated and with it their authority to access Touhy data, because the only basis of their authority was that relationship. *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420-421 (7th Cir. 2006). "Violating the duty of loyalty, or failing to disclose adverse interests, voids the agency relationship." *State v. DiGiulio*, 172 Ariz. 156, 835 P.2d 488, 492 (Ariz. App. 1992). "Unless otherwise agreed, the authority of the agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal." *Id.*; Restatement, supra, § 112; see also *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, supra, 119 F. Supp. 2d at 1123, 1125; cf. *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 201-02 (2d Cir. 2003) (per curiam); Restatement, supra, § 409(1) and comment b and illustration 2.

6

APR-01-2008 08:45 FROM:JUDGE PANTLE        13126030134          TO:312 849 2021          P.008/009

While it is clear defendants accessed Touhy firm computers without authorization, Plaintiff's attempt to prove "damage" as required by the CFAA again falls short and can only be remedied by pleading facts tending to show that data has been permanently deleted and is completely irretrievable, not just inaccessible or unavailable for a period of time. As Plaintiff has not pled any facts showing damage, Count III is stricken.

Defendants have requested sanctions pursuant to Supreme Court Rule 137. A trial court may impose sanctions against a party or his counsel for filing a motion or pleading that is not well grounded in fact, not supported by existing law, or lacks a good-faith basis for modification, reversal, or extension of law, or is interposed for any improper purpose. *Whitmer v. Munson*, 335 Ill.App.3d 501, 513-14 (2002). The purpose of this Rule is to prevent the filing of frivolous and false lawsuits and the Rule is not intended to penalize litigants and their attorneys merely because they were zealous, yet unsuccessful. *Whitmer* at 514. The Rule is penal in nature and therefore must be strictly construed. *Id.*

This matter concerns an evolving area of law given the increasing use of computers in every facet of business and professional life. Many of the cases which the Court relied upon are federal cases, which are not binding on this court. *Werderman v. Liberty Ventures, LLC*, 368 Ill.App.3d 78, 84 (2006). Thus, it would be inequitable to find that Plaintiffs' position is not warranted by existing law. Moreover, without an evidentiary hearing or trial, it would also be inequitable for the Court to find that Plaintiffs have filed a false pleading.

The Motion for Sanctions is denied.

7

The Motion to Dismiss Count III is granted and Count III is stricken. Plaintiffs have 28 days to amend from the date of this Order. Defendants have 28 days thereafter to answer or otherwise plead.

ENTERED
JUDGE KATHLEEN M. PANTLE-1775
APR 1 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

_____
Judge Kathleen M. Pantle

# EXHIBIT
# 14

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY & TOUHY, Ltd. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No.    07 CH 13552 |
| | ) |
| RYAN STEPHAN, JAMES ZOURAS | ) |
| And STEPHAN & ZOURAS, LLP | ) |
| An Illinois Limited Liability Partnership | ) |
| | ) |
| Defendants. | ) |

**NOTICE OF MOTION** *# 4*

TO:    Bradley K. Staubus
Esposito & Staubus
134 N. LaSalle Street, Suite 500
Chicago, Illinois 60602

Please take notice that on *May 12*, **2008** at *9 30* **a.m./p.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Kathleen Pantle or any other Judge sitting in her stead, in the courtroom usually occupied by him in Room 2410 at the Richard J. Daley Center, Chicago, Illinois, and then and there present the attached **MOTION TO FILE THIRD AMENDED COUNT III UNDER THE COMPUTER FRAUD AND ABUSE ACT.**

_____
One of the Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned, being first duly sworn on oath, states and deposes that a copy of the foregoing was served upon the above-named via: [] hand delivery; [] facsimile; or [X] by depositing a copy in the U.S. Mail on May 5, 2008.

_____

Michael O'Rourke
Myles P. O'Rourke
O'Rourke & Moody
161 N. Clark Street, Suite 2230
Chicago, IL 60601
(312) 849-2020
Attorney No. 44216

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Attorney No. 22505

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| TOUHY & TOUHY, LTD., an Illinois Professional Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 CH 13552 |
| | ) | |
| RYAN F. STEPHAN, JAMES B. ZOURAS and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR LEAVE TO FILE AMENDED COUNT III UNDER THE COMPUTER FRAUD AND ABUSE ACT

NOW COMES the Plaintiff and moves this Honorable Court for leave to file its Verified Third Amended Count III and Amended Affirmative Defenses. In support thereof, Plaintiff states as follows:

1.    This court dismissed Plaintiff's claim under the Computer Fraud and Abuse Act (CFAA) on April 1, 2008 and granted Plaintiff leave to file an amended complaint. In its Memorandum Opinion this court noted that the Plaintiff's claim under the CFAA had properly alleged that the Defendants' had accessed the Plaintiff's computers without authorization. (Memo. Op., p. 6).

2.    Based upon the present state of developing law, this court concluded that it is necessary for the Plaintiff to allege that data are permanently deleted or are permanently gone in order to state a claim under the "damage" provision of the CFAA (Memo. Op., p. 5).

3.      The parties and court have spent a substantial amount of time engaged in motion practice relative to the Plaintiff's claim under the CFAA. The Plaintiff seeks to file an amended claim under the CFAA because it is able to allege, and prove, that much of the data accessed by the Defendants is permanently gone, which allegation this court required as a necessary element of Plaintiff's claim under the CFAA. Id.

4.      In an effort to avoid unnecessary motion practice and to comply with the previous rulings of the court, the Plaintiff has identified in the attached exhibits some of the thousands of documents or data that are permanently unavailable to the Plaintiff thereby causing damage and loss under the CFAA. (Exhibit 1 to 4).

5.      Plaintiff has supported this motion with an affidavit from one of the computer technicians who was involved in the data recovery process at the Touhy firm who has provided sworn testimony that the Touhy firm data accessed by the Defendants is permanently unavailable or permanently inaccessible thereby satisfying the requirement of damage under the CFAA. (Exhibit 1, affidavit of Jim Fuchs).

6.      Mr. Fuchs is a computer consultant with over 20 years experience. He has personally retrieved missing data from the Defendants' Touhy firm desktops. His recovery efforts and data analysis have determined that at least 19,000 files or documents retrieved from the Defendants' computer desktops have been overwritten, corrupted or indecipherable thereby making these data permanently unavailable.

7.      Our recovery process has identified three categories of documents and data on the Touhy firm computer and email system that Defendants concealed and which data were rendered permanently unavailable to the Touhy firm. First, data created, modified, saved or stored on external

2

hard drives which Defendants had connected to the Touhy firm computer system. Second, email communications regarding Touhy firm clients and cases sent and received by Defendants using their personal Yahoo accounts rather that the firm Touhylaw email addresses (rstephan1234@touhylawcom and jzouras@touhylawcom). Third, deleted data which has been recovered but cannot be accessed due to corruption or overwriting. Data falling into any of these three categories is permanently unavailable to the Touhy firm as Mr. Fuchs has verified. An example of a recovered html document that is decipherable is attached as Exhibit 3. Exhibit 4 is an example of a document which was recovered, but indecipherable. Exhibit 4 is the first page of a document that is over 800 pages long when viewed in Word format.

8.    Hundreds or thousands of files and folders were created, modified, saved or stored on external hard drives by Mr. Stephan and Mr. Zouras. In many cases the file name and date of the file can be determined from the Defendants' desktop computers. (Exhibit 2). However, this information only tells us that the document had been accessed using the Touhy firm computer system. Access to these files is now impossible because they are stored on an external hard drive used by the Defendants to copy data, which hard drives Defendants removed from the Touhy firm system. The external hard drives we did identify are now in the possession of Forensicon and each contain approximately 39,000 files and folders of Touhy firm data.

9.    These folders and data were not saved on the Touhy firm computer system by defendants, who were the only persons with possession of these data as of May 21, 2007. Defendants' refusal to return these data to the Touhy firm has made these data permanently unavailable to the Touhy firm as of today's date.

10.    This is not a case in which the Touhy firm has copies of the data the Defendants

3

copied.  The Touhy firm does not have copies of a substantial amount of these data.  For example, the defendants created file folders labeled Setup\2 Class Cases\3 Active\Yang v. NYMC; Setup\2 Class Cases\3 Active\Casey's General Store\Affidavits; Setup\2 Class Cases\3 Active\Borowsky et al v. IBM and a folder entitled David Darwin.  Those folders and the data they contained were created, but not stored, on the Touhy firm system.  The defendants have these, the Touhy firm does not.  They are permanently unavailable.  Deletion or removal of data by the defendants to cover their tracks is a violation of the CFAA.  *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 421 (7TH Cir. 2006)(Company which had no duplicates of data and would have wanted to have these - if only to nail defendant for misconduct).

11.    The defendants were using Touhy firm computers and internet, but communicating on Touhy firm cases using their personal Yahoo email accounts.  The Touhy firm did not have, nor has it ever had, access to the Defendants' Yahoo accounts.  Since Yahoo email is a web-based email system,  the Defendants' Yahoo emails are not stored on the desktop computers but on the Yahoo web system.  The Defendants' Yahoo communications and email  attachments, therefore, are permanently unavailable to the Touhy firm.  The Defendants have previously stated in affidavits that they have never given the passwords or permission to anyone to access their Yahoo accounts, confirming that the Plaintiff cannot access these data.

12.    Finally, defendants have previously objected to the adjectives and verbs which describe were used in our affirmative defenses to describe Defendants' conduct (e.g., secret, concealed, etc.).  After conferring with defense counsel, we will file amended defenses and delete these kind of adjectives or verbs.

WHEREFORE, plaintiff seeks leave to file its Verified Third Amended Count III and Amended Affirmative Defenses.

Respectfully submitted,

_____

One of the Attorneys for Plaintiff

Michael J. O'Rourke
O'Rourke & Moody
161 North Clark Street, Suite 2230
Chicago, Illinois  60601
(312) 849-2020
Attorney No.  44216

Robert Orman
Law Offices of Robert Orman One North
LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Atty No.  22696

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the MOTION TO FILE THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

TIMOTHY J. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.

## **VERIFICATION**

I, Daniel K.. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the MOTION TO FILE THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

DANIEL K. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.

## AFFIDAVIT OF JAMES FUCHS

I the undersigned hereby depose and state that the following information is based upon my personal knowledge. The opinions set forth herein are based on a reasonable degree of professional certainty.

1.      I work in the computer technology field, have worked as a technical consultant for over 20 years. I am familiar with various operating systems including DOS, Windows, Windows 1995, Windows 2000 and Windows XP among others. I have worked with computer storage media including five inch floppy discs, two inch floppy discs, zip discs, CDs, external digital hard drives, backup tapes and other similar media. I have created, modified or installed a variety of programs on computer operating systems for both individual computers and network computers over the past 20 years.

2.      I have installed a variety of database programs including database storage and retrieval systems, and systems designed to store, retrieve, classify and backup data in virtually all forms. These data programs include databases involving web based data including email, word processing documents including Word and WordPerfect, Excel spreadsheets, PDF, JPG, BMP, shortcuts and folders saved or stored on computer desktops, removable media, network systems and web based programs.

3.      I have attempted to retrieve deleted, overwritten or corrupted data off of the Touhy firm desktop used by Ryan Stephan and the Touhy firm desktop used by James Zouras, Dell Dimension and Hewlitt Packard computers.

4.      The data from the Stephan Dell desktop computer was retrieved using a technical recovery program designed to recover deleted emails, in particular .pst files. A second program was used to recover documents, files and folders which had been deleted, overwritten or corrupted. The



PLAINTIFF'S
EXHIBIT

_____

data retrieved from the employment of these recovery software were stored on separate media for review.

5.    In excess of 19,000 documents, files and folder were retrieved from the Stephan Dell desktop, which documents consisted of folders in the following formats: BMP, Word, WordPerfect, recovered text, JPG, HTML, and zip.  Total amount of recovered documents totaled in excess of 19,000.  The total number of Word, WordPerfect and recovered text documents from the Stephan Dell desktop exceeded 1,000 documents.

6.    I performed random samples on the recovered Word, WordPerfect and text documents recovered from the Stephan Dell desktop computer for the purpose of determining which of these recovered documents could be accessed, opened and deciphered.

7.    Much of the data recovered from the Stephan desktop computer cannot be accessed or reviewed because the deletion or overwriting of these data have caused it to be rendered corrupt and indecipherable.  My sampling of this data revealed that over 99 percent of the Word, Word Perfect and text documents are indecipherable.  A sampling of the BMP, JPG, and PDF files reveal that less than one percent are accessible and able to be reviewed.


FURTHER AFFIANT SAYETH NOT


James Fuchs


SUBSCRIBED AND SWORN TO
BEFORE ME THIS 2nd DAY OF
MAY, 2008.


NOTARY PUBLIC

"OFFICIAL SEAL"
Sandy Robinson
Notary Public, State of Illinois
My Commission Expires 27, 2010

**'Recent Documents' on Stephan desktop which are unavailable due to removal of storage device**

      1      Amtrust potentials.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

      2      Bouthner et al v. Amtrust Mortgage Corporation was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

      3      Brandon Farina was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM.

      4      Brian Gagliardi was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:28 PM

      5      CaseLists was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 3/20/2007 10:10 AM

      6      CaseLists (2)  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:40 PM

      7      ElectionForm.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 5:32 PM

      8      ElectionFormCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:24 PM

      9      ElectionFormChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:24 PM



PLAINTIFF'S EXHIBIT

tabbies

2

10    ElectionFormErlandson.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:08 PM

11    ElectionFormJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:20 PM

12    ElectionFormLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:49 PM

13    ElectionFormPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:43 PM

14    email list.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 10:47 AM

15    Email.NewContactInfo.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  3/14/2007 6:06 PM

16    FormClient Letter.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:31 PM

17    FormClient LetterCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:25 PM

18    FormClient LetterGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 1:38 PM

19      FormClient LetterJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:43 PM

20      FormClient LetterLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:29 PM

21      FormClient LetterPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

22      FormClientEmail.doc  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM

23      FormClientEmailChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:12 PM

24      FormClientEmailGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:04 PM

25      FormClientEmailJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

26      FormClientEmailLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:40 PM

27      FormClientEmailPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:45 PM

28    FormCorrespondencereTransfer was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:56 PM

29    Master List of Outside Referrals.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about5/8/2007 9:41 AM

30    MasterEmailList.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about4/21/2007 9:46 AM

31    sz_busicard.pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/4/2007 10:09 AM

32    sz_busicard[1].pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/3/2007 2:58 PM

33    sz_busicardFINAL[1].pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:24 PM

34    sz_logo.gif was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/6/2007 2:58 PM

35    ._sz_letterhead.dot was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 4/4/2007 5:27 PM



PLAINTIFF'S
EXHIBIT
3

hM
zaDPmgwmmgwmmgzNmbNGZszMzZmzMzNmbMzM2Zs0jRmbNGZszZpGjNI0ZpGkTxpE+TxozSNI
njSJ
40ifJ40ifKMnyfKMnyeNJJasQmQjoIPdkSEEG4RCA+raTYSiq/9f9P09O9P077tU9U1W1tU9
bT7V
NO01tbTW09NNNPTTVNPVNNNNNO0001TTCaYQaaaaaaaaYTTTQYTCDQYTQaaZmZmzMz5mbMzM
2ZmZ
szaSrJsCAjUK+E8F6faUVFV///////////36f/9//6f+n9
+nen36d6dp3p6etrap2tretqtqmu
mqappoUcaUmwWNgqmDCDTChS4pbXhhNMLp+mmqetqtra9r2v/a99/ra//
+v///////////
//9Pvv1RFtRERERERxE6QmrEMFQaYTTW0000000001tNO01tNU0+09P0+1tNU7W+
9O1T1T1tf7Xt
e17XX19de//////////6xVKhFIRERERERERERERWmEwmmg0IaaYTTTVNNQmmmmmnpp6ad
ppqm
E001TTW01tNbT009NPTVNU01u09O1T09b1vvTtU11vTXXERERERERERERERERERERERERE
RERE
RYQtCLQtC0GmmgwmE0000Gg00007TTTTTCaaaadpppqqZFNhpdIRERERERERERERERERER
ERER
1kM+kkoQoJV0gkU2SrVJehSGwqjCiU2lL/x/ID1F/4/yA9Rf+P/
+WQppNigzvXIuKZFQp2ICtwIM
o2GWQw5eCIlmVzJAMZ3qIS0y3UMy0R30d3lut/wQwhRA3D6JUHMR2sR1GahSDM0MxkIMFJjI
giqm
FJQgpBWgysRCRBxFYyAxTsoctxsiQcnhPkESpRHHJnMMkM7GGCFKE04i01TQZqBAVSQwoKSs
Kc8E
QlZFrItZBIanYmIQmRhkCMqDJKV3QW6QahB9MMl79Ep11w03CahU8IEkCgnhBrphMJq3WEwi
ECQi
EgxWQ9nZUuqrdBaTSrTa0kH0m0yEI0JMhDBUXbSCBJBQuER4PTRO2icOmzICMkrIIYVMIIIY
TWvS
VJPvXvWgqVJtE4bh5cPVIN6SSqTDQROOk6bSDe3XhJMIEiOEERcH9fS0va78IJ1VuEG90g/P
FLSQ
SXMOjXaTjLyl1pN6dKmgoQdAg5p/r0v1a9Ul1rSfdJ8fbmCJI1GP6TpNq2rcwhnZWvWd8vmg
kg6Q
ddD6rX0KXW163v9fr0l7paT09XVpWq1QtoJ0qdJ+ulVd1/rWjP9K/H/tVS/6dLXX3Xf/SXS/
jil/
/66
+/4v9fX62vt7e630K0k3706809Rbc6ylJVS01VaVi/XroNJf9Juv6vdf/SvVvpKlRFhmjsQQ
d
HCBETiOyfE6E8JEEUbrR1IhxJln+hOml/WTpTqX7ciVKvTo9eUkNJa6IgxpL9O13WvrW7bCe
oTVS
4hwVQiBCj4IMJmjBBqCagiKGXhfF4TUv/rSH+g1XwiHyEH54zM0H/95LILVY/euF6/7hEseq
J3rr
ChEo0kqJO1VEM+U6CZmKpcUE0l9fSC/2kXF/XTxChJf/QbggyGKTs2wiFFCTyQIaM8ZOzqM6
n9JH
NscUQRlLUPolR9oLSVLPtThmhrCD6WgnXCJZpVRO3S6aX//Lz/cQ//+LSChD/
+HYTQZsVNQhpmxQm
cFCYQ/wQbD/SS7sNJdGigvXqaISpMJUgm0Z9U+jP0E2HU4IbNX7rUKk+uZh7S86uRb/1376J
4wid
6zh19E4onHXCJO0TdaoQ4azjr+
27pL1r0jOq0vgoha9LpSc010rdLXWulGCDSfrJAk13/p8gZmZG
GvrZQJpaWHXFBNBBWHUzNBOgn6th0MmyqUn+vptKkl6VaHpJUuEqV9L/6pejOoTpL///htJv
/hX+
Nf4bsIIKl60107SLfSWk/yXNv6TrTq3T6SpVpapV6J2XUksfS9KtL6H1
+q7X/D1f//0174tXS6Rn
WlpV1WlpdpU7D/-uk2cxWqUaxX+9618V9cU10/pSc5Axa/291/r/rf2
+F16T60kul9KlXSthv//e
/VUEkqpdLVL1pUl16rS/XcOv/7/f/6//rSSUUKVaqhWqVL604b+tfpEDVpKqhKta88Dr/X1X
pKtK
uX369/33//+v3f5FQKlr0lS2k1s6XbS/2094v1xCpa3Zqkkt2X16/pelv0//-2~1t2S5KN3
rkv2Jj
CS/hJa68N/19LeqqF9LaCr/Vekv+qr9LF//////S60vSUJUv4QVUqhKvXxw7fr7S9UtExirpj



PLAINTIFF'S
EXHIBIT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| TOUHY and TOUHY, LTD., an Illinois Professional Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. 07 CH 13552 |
| RYAN F. STEPHAN, JAMES B. ZOURAS, and STEPHAN & ZOURAS, LLP, an Illinois Limited Liability Partnership, | ) ) ) ) |
| Defendants. | ) |

## VERIFIED THIRD AMENDED COUNT III

### Violation of the Computer Fraud and Abuse Act
### (All Defendants)

NOW COMES Plaintiff, Touhy and Touhy, Ltd., ("Touhy" or the "Firm"), and in support of its Verified Third Amended Count III alleges as follows:

1.     Plaintiff Touhy, re-alleges as and for paragraph 1 of Count III, paragraphs 1-16 of Count I as though fully set forth herein.

2.     At all times relevant to this Complaint, there was in existence a certain statute, to-wit:  The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 *et. seq.*  The CFAA provides, in relevant part, as follows:

> Whoever … intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage, and …18 U.S.C. §1030 (a)(5)(A)(iii).
>
> by conduct described in clause (i), (ii), or (iii) of subparagraph (A), caused…
> 8 U.S.C. § 1030 (a)(5)(B).
>
> loss to 1 or more person during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only,

1

loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;…18 U.S.C. §1030 (a)(5)(B)(i).

shall be punished as provided in subsection (c) of this section.18 U.S.C. § 1030

(a)the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device;
18 U.S.C. §1030 (e)(1).

the term "protected computer" means…a computer which is used in interstate or foreign commerce or communication…. 18 U.S.C. §1030(e)(2)(B).

the term "**damage**" means any impairment to the integrity or availability of data, a program, a system, or information; §1030(e)(8).

the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service; §1030(e)(10).

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and **injunctive relief or other equitable relief**. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B). Damages for a violation involving only conduct described in subsection (a)(5)(B)(i) are limited to economic damages.  18 U.S.C. §1030(g) (emphasis added).

3.    The Touhy firm computers contain electronic files which files contain data

regarding clients and pending cases throughout the United States, including Ohio, Pennsylvania,

California and Georgia.   Touhy firm computers are also used for e-mail communications

throughout the United States and are "protected computers" as that term is defined by the CFAA.

The use or misuse of this data affects interstate commerce.

4.    Defendants intentionally accessed the Touhy firm computers and email system

and confidential client and firm information without authorization prior to May 12, 2008.

5.      As a result of Defendants' conduct and intentional access of protected computers without authorization, the Touhy firm was damaged by being forced to undertake corrective measures. The Touhy firm was forced to quarantine its computers, hire an IT consultant to ascertain the amount of confidential data misappropriated by Defendants, replace computers and establish security for the computers, which has impaired Touhy's ability to use its computers and cost the Touhy firm more than $5,000 as more fully described herein.

6.      As set forth herein, Defendants' intentional access of protected computers without authorization impaired the integrity of Touhy firm clients and firm data because it prevented the usability of privileged and confidential information and rendered such information permanently unavailable as set forth in paragraphs 7 to 22 and 50 to 57.

7.      While employed by the Touhy firm Defendants misappropriated passwords and sent firm data to their personal email accounts. Certain of these data cannot be retrieved, rendering such data permanently unavailable and causing damage as defined by the CFAA.

8.      The various Touhy firm computer hard drives on its system were given letter designations. Individual desktop hard drives were designated as drive "C"; the office network server drive was designated as drive "F" and the individual desktop DVD/CD drives were designated as drive "D".

9.      Removable storage media or external hard drives which were connected to the Touhy firm computer system, would receive drive designations of "G", "H" or other sequential letters.

10.     Any drive bearing the designation "G" drive on a Touhy firm individual desktop computer is a removable storage media connected to an individual desktop.

3

11.    During various days in May 2007, the "G" drive designations on Stephan and Zouras's Touhy firm individual desktop computers referred to a Western Digital removable storage media external hard drive that Defendants had connected to their individual desktop computers by a USB port.

12.    The defendants had obtained this Western Digital external hard drive ("WD external drive") and connected it to the Touhy firm computer system without the knowledge or consent of the Touhy firm principals.

13.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files at their homes.

14.    None of the data copied onto this WD external drive by defendants were copied for the purpose of Defendants working on these Touhy firm electronic files on defendants' personal computers or the computers of non-employees of the Touhy firm.

15.    On May 18, 2007 Defendants received a delivery of computers purchased from CDW consisting of four HP desktop computers and on HP laptop computer.

16.    Other than the WD external drive,  and on information and belief, Stephan used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

17.    Other than the WD external drive, Zouras used other computers to create, modify, store or save data involving Touhy firm electronic files involving Touhy firm clients, cases, documents or forms, including the computers purchased from CDW.

18.     On and before May 19, 2007 Stephan created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

19.     On and before May 19, 2007 Zouras created and saved all computer related data concerning the formation of the firm StephanZouras, LLP by using the Touhy firm computers or a drive connected to the firm computers.

20.     The documents, files and folders set forth in paragraphs lajds through lajd;jf and contained on Exhibit 1 were data being created, modified or stored on a storage media designated as the "G" drive which media was connected to the Touhy firm desktop used by Stephan on or before May 21, 2007.

21.     At the time of Stephan's departure from the Touhy firm on or about May 21, 2007, no storage media was connected to Stephan or Zouras' Touhy firm desktop computers nor was this data saved in paper form or electronic form on any other Touhy firm electronic media.

22.     On or before May 21, 2007 both Stephan and Zouras had connected and then removed one or more of these electronic media storage devices containing Touhy firm data thereby making one or more of these data permanently unavailable to the Touhy firm.

**Use of Protected Computers by Defendants without Authorization**

23.     Stephan and Zouras's authorization to access, or use, the Touhy firm computers and internet system was revoked by committing one or more of the fiduciary breaches set forth in paragraph 24 to 47. Stephan's fiduciary breach revoked any authorized access to the Touhy firm computers and internet system from April 2006 and thereafter.

24.    Between April 2006 and February 2008 Stephan committed a fiduciary breach by accepting reimbursement for the LegalMatch subscription cost, and then treating the subscription as Stephan's personal LegalMatch account.

25.    On or about December 12, 2006, January 24, 2007 and January 29, 2007 Stephan breached his authorized access to the Touhy firm  computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm prospective client Steven Yang without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

26.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland and Stephan representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

27.    On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland to reach an agreement' concerning Langeland and Stephan representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

28.    On or about December 7, 2006, January 30, 2007, February 20, 2007, March 5, 2007, March 9, 2007, March 14, 2007, March 27, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Stephan was employed at the Touhy firm.

29.     On or about March 29, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using the Touhy firm system to access his personal Yahoo account at rstephan123@yahoocom and communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client Gerald Bouthner without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

30.     On or about February 20, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoo.com to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

31.     On or about January 29, 2007 and January 24, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with Erik Langeland concerning Langeland and Stephan representing the Touhy firm client or case Jameel Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

32.     On and after November 28, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

33.     On January 31, 2007 Stephan breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at rstephan123@yahoocom to contact LegalMatch by email in which email Stephan stated "That $22,000 is a big # right now. I am also going to have to sell this to Jim Zouras". Neither Stephan nor Zouras ever disclosed this communication to the Touhy firm principals while employed by the Touhy firm.

34.     On and after November 3, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by failing to disclose to the Touhy firm principals that he had received a Touhy & Touhy, Ltd. website communication from Steven Yang, had opened a file on November 7, 2006 and signed a firm contract with Yang.

35.     On or about November 7, 2006 Stephan breached his authorized access to the Touhy firm computers by creating or storing data on Stephan's Touhy firm computer desktop or on non-firm storage media concerning Steven Yang and not disclosing the existence of this matter to the Touhy firm principals

36.     On or about December 12, 2006 Stephan breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning representation of Steven Yang by Ryan Stephan and James Zouras and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

37.     That one or more of the documents listed in Exhibits 1 and 2 were made permanently unavailable because these emails were deleted by Stephan from the Touhy firm computers. Despite attempts to recover these emails by employing various electronic software recovery programs this data is permanently unavailable to the Plaintiff and not recoverable by accessing Stephan's desktop, the Touhylaw email system or by employment of data recovery software or technical service assistance.

38.    On and before May 21, 2007 Zouras breached his fiduciary duty by using Touhy firm computers and internet to conduct mapquest searches and legal research as a means of improving the ability of Defendants to contact Touhy firm clients to hire Defendants after Defendants left Touhy firm employment.

39.    On or about February 20, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland to reach a 'global agreement' concerning Langeland, Stephan and Zouras representing Touhy firm cases and clients without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

40.    On February 20, 2007, January 30, 2007 and thereafter, Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland to reach an agreement' concerning Langeland and Zouras representing Touhy firm cases and clients in Amtrust, WFI and Equity One without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

41.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Erik Langeland concerning Langeland and Zouras representing the Touhy firm client Steven Ferko without disclosing this information to the Touhy firm principals while Zouras was employed at the Touhy firm.

42.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at

9

jzouras@yahoo.com to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Marc Borowsky without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

43.    On and after January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with Stephan and Erik Langeland concerning Langeland and Zouras representing the Touhy firm client or case Shabazz without disclosing these communications to the Touhy firm principals while employed by the Touhy firm.

44.    On or about January 24, 2007 Zouras breached his authorized access to the Touhy firm computers and internet system by communicating with Erik Langeland concerning Steven Yang v NYMC and failing to disclose these communications to the Touhy firm principals prior to May 21, 2007.

45.    On May 21, 2007 and prior to this date, Stephan forwarded Touhy firm emails from the Touhy firm email system to his personal Yahoo account involving communications concerning Touhy firm cases, clients and other counsel as set forth on Exhibit 1 attached hereto.

46.    On May 21, 2007 and prior to this date, Stephan did not disclose to the Touhy firm principals that email information had been received at Touhylaw concerning one or more of the individuals set forth on Exhibit 3 attached hereto.

47.    On and after November 28, 2006 Zouras breached his authorized access to the Touhy firm computers and internet system by using his personal Yahoo account at jzouras@yahoocom to communicate with LegalMatch to obtain a subscription to LegalMatch without disclosing these communications to the Touhy firm principals prior to May 21, 2007.

10

### Data that is Permanently Unavailable

48.    Certain security software was installed on the Touhy firm computer server network before May 21, 2007. This security software recorded the computer activity on the Touhy firm desktop computers used by Stephan and Zouras.

49.    The security software recorded screenshots which depict some of the files, folders and documents created, modified, saved or stored on Stephan's and Zouras' Touhy firm computer desktop from the computer event register as set forth in Exhibit 1.

50.    Plaintiff has been able to identify some of the Touhy firm data created, modified, saved or stored on Stephan and Zouras's Touhy firm computer desktops from the computer event registers as set forth in Exhibit 1. Although these file names, dates and path names have been identified, these data cannot be retrieved and are permanently unavailable because of the removal of the storage media by Defendants.

51.    That one or more of the files, folders, documents or data listed are permanently unavailable because the external drives which had been connected by Defendants to the Touhy firm computers were removed by them.

52.    In excess of 400 files or folders were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer identified on Exhibit 1 attached hereto were created, modified, stored or saved on a hard drive or other media by Stephan on or before May 21, 2007.

53.    The files, folders or documents identified on Exhibit 1 attached hereto were created, modified, stored or saved on Stephan's Touhy firm desktop computer as being created or stored by defendants on or about the dates following each file or folder as set forth on Exhibit 3 attached hereto.

54.    Zouras used the Touhy firm computer system to create, modify, store or save numerous client "Election Forms" and letters to Touhy firm clients which data Zouras stored on an external drive.  On and before May 21, 2007 Zouras created these forms and letters for delivery to one or more of the Touhy firm clients listed on Exhibit 2.

55.    One or more of the following files, folders or documents were identified on Stephan's desktop computer activity log as being created, modified or viewed on Stephan's desktop computer on or before May 21, 2007:

    a)    A0039255 G:/Setup/2 Class Cases/3 Active/Casey's General Store

    b)    A0039257 G:/Setup/2 Class Cases/3 Active/Casey's General Store

    c)    A0039284 G:/Setup/2 Class Cases/3 Active/Casey's General Store

    d)    A0039285 G:/Setup/2 Class Cases/3 Active/Casey's General Store

    e)    A0039286 G:/Setup/2 Class Cases/3 Active/Casey's General Store

One of more of these files and folders were removed from the Touhy firm computer system. Despite multiple retrieval efforts these data are permanently unavailable.

**Unrecoverable Data which were Deleted**

56.    In excess of 19,000 documents, files or folders were deleted by Stephan from his Touhy firm desktop on or before May 21, 2007.  Although recovery software has retrieved millions of data bytes, there are 19,839 documents, files and folders which, although recovered, cannot be opened or accessed due to corruption, overwriting or other electronic impediment preventing the Touhy firm from accessing and reviewing these data.

57.    Stephan and Zouras removed one or more of these electronic media storage devices containing Touhy firm data or, on information and belief, stored these data on a web

12

based storage media thereby making one or more of these data permanently unavailable to the Touhy firm.

58.    As a direct and proximate result of the acts of the defendants described herein, one or more of these data are permanently unavailable to the Touhy firm.

## PLAINTIFF'S LOSS UNDER THE CFAA

### Loss – Directing Touhylaw emails to Yahoo and Deletion of Emails

59.    After Stephan forwarded these emails he deleted one or more of them from the TouhyLaw email system.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering these data as set forth below.

60.    While employed by the Touhy firm Stephan received email inquiries through the Touhy & Touhy website at Touhylawcom from the following individuals through the Touhy firm server, computer and internet system concerning cases, clients, counsel or other individuals including Steven Yang; Gerald Bouthner; Casey's General Store; Mary Stecyna; Hector Vargas; David Darwin.

61.    While employed by the Touhy firm Stephan used Touhy firm computers and internet to communicate with the following individuals concerning representation of these individuals which contact had been made through LegalMatch and Findlaw:

    a) Mary Stecyna;

    b) Hector Vargas;

    c) David Darwin;

    d) William Slover;

    e) Christopher Manning; and

13

f) Tracy Kobel.

62.     Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Jules Smith case.

63.     Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the Steve Ferko case.

64.     Stephan and Zouras used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to communicate between themselves and other attorneys in connection with the settlement of the David Darwin case.

65.     Defendants used the Touhy firm computer and internet system to access their personal Yahoo accounts at rstephan123@yahoo.com and jzouras@yahoo.com to commit one or more of the following acts:

a)     Engaged in communications with Erik Langeland, Ken Levinson, John Tostrud and other clients, counsel and individuals.

b)     Agreeing to send Touhy firm cases and fees in Darwin and Smith from the Touhy firm to other counsel.

c)     Agreeing with Erik Langeland to take attorney's fee of approximately $63,750 from the Ferko case and divide these monies.

14

d)      Receiving emails delivered to the Touhy firm email addresses and failing to have pleadings, correspondence and data from being entered in the firm files and database.

e)      Copying Touhy firm data without the consent of the firm or the client onto an external hard drive and copying these data onto defendants' laptop and office server on or about May 19 and 20, 2007.

f)      Deleted emails and data from the Touhy firm computer network in order to prevent the Touhy firm from accessing or performing case work on clients and cases defendants intended to have discharge the Touhy firm.  Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

66.    On and before May 21, 2007 Stephan and Zouras used Touhylaw email and computers to provide other attorneys with Touhy firm client or case information or firm data for the purpose of assisting Touhy firm competitors by referring these matters to other attorneys involving one or more of the following:

        a)      David Darwin;

        b)      Craig Fitzgerald;

        c)      Michael Jibben;

        d)      William Slover;

        e)      Steven Yang;

        f)      Steven Ferko;

        g)      Gerald Bouthner;

        h)      Kim Jones; and

        i)      Kim Marrs.

67. On and before May 21, 2007 Defendants received emails at their personal Yahoo accounts concerning the Darwin case, a LegalMatch client. Although some or all of these emails may be retrievable and therefore not permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

68. On and before May 21, 2007 Stephan stored data relating to the LegalMatch account on a separate secure server to prevent the Touhy firm from accessing this information and to avoid disclosing information to the Touhy firm.

69. On and before May 21, 2007 Stephan used his Yahoo account to contact Julie Reynolds at LegalMatch from his Yahoo account stephan123@yahoo.com which was sent by Stephan from the Touhy firm offices at 161 N. Clark Street, Suite 2210 and from Touhy firm computers on one or more of the following dates: on November 28, 2006, February 4, 2007, February 7, 2007, February 8, 2007, February 10, 2007, February 12, 2007, February 27, 2007, April 12, 2007, April 24, 2007, May 1, 2007.

70. On and before May 21, 2007 Stephan used his Yahoo account at rstephan123@yahoocom to send Zouras copies of his communications with Legalmatch at jzouras@yahoocom on April 4, 2007, April 17, 2007 and other dates. On April 24, 2007 Stephan sent Jacobo Rodriguez at LegalMatch from his Yahoo account rstephan123@yahoocom an email requesting Rodriguez not to give the Touhy firm information to the Legal match account.

71. On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

72. On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to rstephan123@yahoocom, subject:

WFI Mediation  May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

73.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity Mediation, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

74.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: David Rotman, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

75.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Amtrust, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

76.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Equity One -- status of opt -ins, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

77.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Stuart, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

78.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Prep conference: IMF, May 17, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

79.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Mediation with Deborah Haude, Esq.   May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

80.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. Mediation with Deborah Haude, Esq., May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

81.     On and before May 21, 2007  the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Wachovia, May 18, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

82.     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC. May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

83     On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject:

WFI Colorado, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

84.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: Allendorfer, May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

85.    On and before May 21, 2007 the defendant Stephan forwarded Touhy firm emails from the Touhy firm account, Rstephan@touhylaw.com to **rstephan123@yahoocom**, subject: BOCHICCHIO et al v. EQUITY ONE, INC., May 21, 2007 and then deleted these Touhy firm emails from the Touhy firm email system.

86.    Although some or all of these emails in paragraphs 69 through 85 may not be permanently deleted, the Touhy firm incurred loss and expense in recovering this data.

87.    On May 21, 2007 and for months prior to this date, Stephan and Zouras saved electronic files and data on a separate drive or drives which contained Touhy firm client, case information and contacts.  Defendants use of this drive prevented Touhy firm principals from learning of one or more the following clients, cases and other counsel:

     a)     Borowsky v IBM

     b)     Steven Yang NYMC

     c)     Jones v. Casey's General Store

     d)     Gerald Bouthner v. Amtrust

     e)     Shabazz v. Morgan Funding.

88.     Between April 2006 and February 2008 Stephan denied the Touhy firm access to data relating to one or more of the following Legal Match contacts, which clients and individuals are as set forth below.

      a)     Davin Cole

      b)     Peter Conrad

      c)     Lafayette Davis

      d)     Odeh Fanasheh

      e)     Craig Fitzgerald

      f)     Michael Jibben

      g)     Kirk Freundt

      h)     Tiffany Green

      i)     Veola Hankle

      j)     Paula Hardwick

      k)     Octavia Hernandez

      l)     Joseph Jergl

      m)     Tracy Kobel

      n)     Morad Laichev

      o)     Brian Lambert

      p)     Donna Lingafelt

      q)     Erma Lowe

      r)     William Slover

      s)     Gregory Waring

      t)     George Wright

u)     Elicia Zimmerman

89.     Prior to May 21, 2007, Stephan and Zouras changed the passwords on their Touhy firm desktop computers for the purpose of denying the Touhy firm access to these firm computers and the data contained thereon.  Neither Stephan nor Zouras ever disclosed these passwords to the Touhy firm principals.

90.     Prior to May 21, 2007 Stephan did not disclose the password to the LegalMatch account which had been paid for and controlled by the Touhy firm and its agents, thereby preventing the Touhy firm from accessing that account.  Subsequent to May 21, 2007 Stephan changed the password to the LegalMatch account thereby preventing the Touhy firm from accessing that account.

91.     Through May 21, 2007 and prior thereto, Zouras deleted Touhy firm data from his firm desktop computer and from the Touhy firm email system involving Touhy firm cases and clients for the purpose of making these data unavailable to the Touhy firm.

**Touhy Firm Financial Losses**

92.  As a direct and proximate result of the acts of the defendants described herein, the Touhy firm has incurred one or more of the following costs, losses or consequential damages under Section 1030(e)(10):

a)     Cost of computer technicians and consultants to quarantine the Stephan and Zouras firm desktop computers; Cost of computer technicians and consultants to quarantine two lap top computers used by one or more of the Defendants at the Touhy firm;

b)     Cost of computer technicians and consultants to test the Stephan and Zouras computers to run various recovery programs for the purpose of identifying the data which was deleted or inaccessible;

c)      Cost of computer technicians and consultants to restore the deleted data including word processing documents and emails;

d)      Cost of security investigators to open, access, review and restore thousands of documents and files which were deleted or hidden from the Touhy firm desktop computers used by Stephan and Zouras for the purpose of restoring these data and information to its condition prior to Defendants' actions;

e)      Cost of security investigators for the purpose of restoring emails deleted by Stephan and Zouras and having these emails individually reviewed in order to reconstruct these data and information to its condition prior to the actions of the Defendants;

f)      Attorneys' fees and court costs incurred by Plaintiff for the institution of this action and obtaining injunctive relief, including impounding the hardware containing Touhy firm data;

g)      The costs of services rendered by Forensicon for the impoundment and testing of the hardware containing Touhy firm data;

h)      Attorneys' fees, court costs, court reporter transcripts and time expended by Touhy firm personnel in litigating the Rule to Show Cause filed against Defendants in connection with the recovery of the Touhy firm Legal Match account;

i)      The revenue lost as a result of Defendants denying the Touhy firm access to its Legal Match account after May 21, 2007;

j)      The revenue lost by the Touhy firm as a result of revenue lost in connection with attorneys' fees in the cases Steven Ferko, Jules Smith, David Darwin, Christopher Manning, John Huebner and other Touhy firm clients.

k)     Expenditure of time, money, expert fees and attorneys' fees in assessing the extent of the data loss with the data copied and subsequently impounded at Forensicon;

l)     Expenditure of money, expert fees and attorneys' fees in recovering access to the firm LegalMatch account;

m)     Loss of revenue incurred by the Touhy firm and other consequential damages incurred in restoring the system to its condition prior to the offense and resulting from this interruption of service.

93.     These losses and consequential damages exceed $5,000.00.  As described above, Defendants violated both the criminal and civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief, including:

94.     Touhy has no adequate remedy at law.  Money damages alone will not, and cannot, compensate Touhy for the loss of goodwill and business opportunities that it has suffered as a result of Defendants' actions.  Those actions have and will in the future continue to harm Touhy's business relationships.  As a result of Defendants' actions, Touhy has and will have difficulty securing their current and targeted potential clients, which will in turn impact its ability to do business.

95.     Due to overwriting, corruption or removal of media, Touhy firm data accessed or used by Ryan Stephan at the Touhy firm cannot be accessed or reviewed as these data are corrupt and indecipherable.

96.     In excess of 90% of the recovered Word, Word Perfect and text documents from these computers are indecipherable.  Only a small percentage of these data are accessible and able to be reviewed.

Plaintiff Touhy & Touhy, Ltd. demands a jury trial on all matters so triable.

Respectfully submitted,

_____
One of the Attorneys for Plaintiff

Robert Orman
Law Offices of Robert Orman
One North LaSalle Street, Suite 1775
Chicago, Illinois 60602
(312) 372-0515
Attorney No.  22696

Michael O'Rourke
O'Rourke & Moody
161 N. Clark Street, Suite 2230
Chicago, IL 60601
312-849-2020
Attorney No.  44216

## VERIFICATION

I, Timothy J. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

TIMOTHY J. TOUHY, individually and
on behalf of Touhy & Touhy, Ltd.

## VERIFICATION

I, Daniel K. Touhy, under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, certify I have personal knowledge of the facts set forth in the THIRD AMENDED COUNT III and that the same are true and correct, except as to matters herein stated to be on information and belief and as to such matters I certify as aforesaid that I verily believe the same to be true.

DANIEL K. TOUHY

**'Recent Documents' on Stephan desktop which are unavailable due to removal of storage device**

1     Amtrust potentials.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

2     Bouthner et al v. Amtrust Mortgage Corporation was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system in or about May 2007.

3     Brandon Farina was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM.

4     Brian Gagliardi was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:28 PM

5     CaseLists was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 3/20/2007 10:10 AM

6     CaseLists (2)  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:40 PM

7     ElectionForm.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 5:32 PM

8     ElectionFormCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:34 PM

9     ElectionFormChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system



10      ElectionFormErlandson.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 3:08 PM

11      ElectionFormJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:20 PM

12      ElectionFormLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 4:49 PM

13      ElectionFormPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:43 PM

14      email list.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 10:47 AM

15      Email.NewContactInfo.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   3/14/2007 6:06 PM

16      FormClient Letter.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:31 PM

17      FormClient LetterCasale.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 1:25 PM

18      FormClient LetterEnglund.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about   5/9/2007 1:28 PM

19     FormClient LetterJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about  5/9/2007 3:43 PM

20     FormClient LetterLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:29 PM

21     FormClient LetterPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

22     FormClientEmail.doc  was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 5:32 PM

23     FormClientEmailChemi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:12 PM

24     FormClientEmailGagliardi.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:04 PM

25     FormClientEmailJanevski.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:44 PM

26     FormClientEmailLamutis.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:40 PM

27     FormClientEmailPidoto.doc was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 3:45 PM

28     FormCorrespondencereTransfer was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:56 PM

29     Master List of Outside Referrals.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about5/8/2007 9:41 AM

30     MasterEmailList.xls was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about4/21/2007 9:46 AM

31     sz_busicard.pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/4/2007 10:09 AM

32     sz_busicard[1].pdfFINAL.pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/3/2007 2:58 PM

33     sz_busicardFINAL[1].pdf was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/9/2007 2:24 PM

34     sz_logo.gif was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/6/2007 2:58 PM

35     sz_letterhead.dot was stored on the WD external drive by Stephan who removed that drive and data from the Touhy firm computer system, this data being created or modified on the Touhy firm computers on or about 5/8/2007 7:58 PM

a)  Raphael and Magdalena DeLapaz;

b)  Joel Rak;

c)  Scott Baldwein;

d)  Ryan James;

e)  James Chiapetta;

f)  Eric Graf;

g)  Brian Brennan

h)  Raymond Barlow,

i)  Thomas Little;

j)  William Delaney;

k)  Horafi, Inc.;

l)  Leon Livergood estate;

m) Christopher Manning;

n)  Juana Melendez;

o)  Alicia O'Connell;

p)  Charese Patton;

q)  James Peterson;

r)  Peter Schram;

s)  Angela Stachowiak

t)  Nasser Tavakoly



PLAINTIFF'S
EXHIBIT
2





PLAINTIFF'S
EXHIBIT
3

# EXHIBIT
# 15

Order                                              CCG N002-300M-2/24/05 (          )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Touhy and Touhy

v.

Stephan and Zouras etc

No. 07 CH 13552

### ORDER

This matter coming to be heard on Plaintiff's Motion to File 3rd Amended Count, all parties having due notice, and the court fully advised in the premises IT IS HEREBY ORDERED:

(1) Plaintiff granted leave to file its 3rd Amended Count III instanter

(2) Defendants have until June 16, 2008 to answer or otherwise plead.

(3) Plaintiff's granted leave to file amended affirmative defenses by May 27, 2008.

(4) Status date of May 28, 2008 @ 10:30 am to stand.

Atty. No.: 42935

Name: Esposito & Staubus

Atty. for: △'s

ENTERED:

Address: 134 N LaSalle

Dated:

City/State/Zip: Chicago IL 60602

Telephone: 312-346-2766

ENTERED
JUDGE KATHLEEN M. PANTLE-1775
MAY 12 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                    Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**